# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **MICHAEL STOPKA**, **MARILYN STOPKA,** and **CHATEAU ARLINGTON, LLC**, | ) ) ) | |
| Plaintiffs, | ) | Case No. 10 C 6034 |
| | ) | |
| v. | ) | Judge John W. Darrah |
| | ) | |
| **AMERICAN FAMILY MUTUAL INSURANCE COMPANY, INC.**, | ) ) | Magistrate Judge Martin C. Ashman |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Michael and Marilyn Stopka ("the Stopkas"), and Chateau Arlington, LLC

("Chateau Arlington") (together, "Plaintiffs") have sued Defendant American Family Mutual

Insurance Company, Inc. ("American Family") for negligence, breach of contract, and

promissory estoppel related to its handling of the remediation of fire damages to the Stopkas'

home.  Currently before the Court is American Family's motion to compel.  The Court rules on

this motion under District Judge John W. Darrah's referral for a decision pursuant to N.D. Ill.

Rule 72.1.  On June 29, 2011, the Court held a hearing on the motion and found that Plaintiffs'

privilege log was not sufficient to determine if the privileges they asserted could be applied to

the documents Plaintiffs sought to withhold.  The Court ordered Plaintiffs to submit the disputed

documents for an *in camera* review, which they have now done.  Based on the Court's

examination of these materials, it finds that American Family's motion is granted in part and

denied in part.

# I. <u>Background Facts</u>

On September 29, 2003, Chateau Arlington, which is held by Plaintiffs Michael and Marilyn Stopka, obtained title to a piece of real property in Barrington Hills, Illinois on which the Stopkas planned to build a single-family home. In 2006, Chateau Arlington entered an agreement with Augustine Custom Homes, Inc. to construct the home, and Augustine then contracted with various subcontractors, including Complete Flashings, Inc., to complete aspects of the home's construction. According to Plaintiffs, Complete Flashings caused a fire to start on the roof of the building on September 10, 2008 that led to significant fire, smoke, and water damage. Construction then ceased so that remediation work could begin on the damaged portions of the house.

Plaintiffs claim that American Family had issued a $2,000,000 pre-occurrence insurance policy to Complete Flashings as of the date of the fire. Plaintiffs' second amended complaint alleges that American Family communicated directly with the Stopkas and their accountant, Jerry Wolowicki ("Wolowicki"), through its agent Gerald Hayes and agreed to undertake the remediation required to repair the home. Plaintiffs further claim that Mr. Hayes subsequently communicated primarily through Wolowicki, who also acts as the Stopkas' financial advisor. Various contractors and sub-contractors were retained to do the work, and American Family eventually returned control over the construction site to Augustine Homes in November, 2008. American Family also hired a third-party company to conduct indoor air quality surveys to assess the possible presence of mold.

Unhappy with the results of the third-party's efforts, the Stopkas hired their own consultant, who concluded that American Family's remediation work had not been properly

carried out and that additional repairs were necessary. The parties were unable to settle their dispute without litigation, and Plaintiffs brought the instant suit on September 22, 2010 under the Court's diversity jurisdiction. 28 U.S.C. § 1332. American Family served its request for production on Plaintiffs, including a request for "all communications constituting, discussing or related to insurance coverage for damage caused by the subject fire, regardless of the insurer or the type of insurance." (Def's. Mot., Ex. A at ¶ 20). Plaintiffs provided some documents in response to this request, but also submitted a privilege log that identified twenty-two items Plaintiffs claim are protected by the attorney-client privilege, the work product doctrine, and the accountant-client privilege. Plaintiffs have now provided the documents at issue for an *in camera* review to determine of either of these privileges apply. The documents concern communications between the Stopkas, Wolowicki, and attorneys Chris Hennessy and Steven Pearson.

## II.  Legal Standard

When a civil action arises under a court's diversity jurisdiction, a court determines most privileges in accordance with state law. *Budinich v. Beckton Dickinson & Co*., 486 U.S. 196, 198 (1988) ("[S]tate law generally supplies the rules of decision in federal diversity cases . . . ."); *Grochocinski v. Mayer Brown Rowe & Maw LLP*, 251 F.R.D. 316, 321 (N.D. Ill. 2008). In this case, Plaintiffs reside in Illinois, and American Family is located in Wisconsin. The parties assume that Illinois courts would apply Illinois' privilege rules instead of those of Wisconsin. As Illinois appears to have the most significant contacts with the underlying facts of the case, the Court accepts the parties' assumption without further analysis. *See CSX Transp., Inc. v.*

- 3 -

*Lexington Ins. Co.*, 187 F.R.D. 555, 559 (N.D. Ill. 1999) (examining Illinois' choice-of-law rules on discovery issues).

The attorney-client privilege promotes open discussions between attorneys and their clients by preventing the disclosure of certain kinds of communications. *Upjohn v. United States*, 449 U.S. 383, 389 (1981). Under Illinois law, the party asserting the privilege carries the burden of demonstrating that it applies. *Pyramid Controls, Inc. v. Siemens Indus. Automations, Inc.*, 176 F.R.D. 269, 271 (N.D. Ill. 1997). To do so, the party must show that "the statement originated in a legal capacity for the purpose of securing legal advice or services, and remained confidential." *Equity Residential v. Kendall Risk Mgt., Inc.*, 246 F.R.D. 557, 563 (N.D. Ill. 2007) (quoting *Caremark, Inc. v. Affiliated Computer Servs., Inc.*, 192 F.R.D. 263, 265 (N.D. Ill. 2000)). Such statements are protected only on a showing that they: (1) were made to an attorney acting in his or her legal capacity; (2) originated in a belief that they would not be disclosed; (3) involved legal advice; and, (4) remained confidential. *Consolidation Coal Co. v. Bucyrus-Erie Co.*, 89 Ill.2d 103, 119, 432 N.E.2d 250 (1982). The protection extends to communications flowing from the client to the attorney, as well as from the attorney to the client. *Equity Residential*, 246 F.R.D. at 563. Communications involving business instead of legal advice are not protected. *See Square D Co. v. E.I. Electronics, Inc*., 264 F.R.D. 385, 391 (N.D. Ill. 2009). The Illinois Supreme Court has made clear that the privilege is to be construed within the narrowest limits possible. *Waste Mgt., Inc. v. Int'l Surplus Lines Ins. Co*., 144 Ill.2d 178, 190, 579 N.E.2d 322 (1991).

By contrast, courts sitting in diversity consider the work product doctrine solely on the basis of federal law. *Abbott Labs. v. Alpha Therapeutic Corp*., 200 F.R.D. 401, 405 (N.D. Ill.

2001).  This privilege protects documents that an attorney or a representative of a party creates in

anticipation of litigation in order to prepare or analyze a client's case.  Fed. R. Civ. P. 26(b)(3);

*Sandra T.E. v. South Berwyn Sch Dist. 100*, 600 F.3d 612, 618 (7th Cir. 2010).  Its protection is

"distinct from and broader than the attorney-client privilege."  *United States v. Nobles*, 422 U.S.

225, 238 n.11 (1975) (citation omitted).  A lawsuit need not be underway for the doctrine to

apply "provided the prospect of litigation [is] not remote."  *Mattenson v. Baxter Healthcare*

*Corp.*, 438 F.3d 763, 768 (7th Cir. 2006).  This protection only prevents the disclosure of

protected documents or communications, however, not the underlying facts.  *See Upjohn*, 449

U.S. at 395-96.

Unlike federal common law, Illinois has also created a statutory accountant-client

privilege.[1]  Like the attorney-client privilege, this privilege also promotes open and forthright

disclosures by individuals using accounting services.  *In re October 1985 Grand Jury No. 746*,

124 Ill.2d 466, 481, 530 N.E.2d 453 (1988) (Clark, J., dissenting).  Four elements are required

for the accountant-client privilege: (1) the communication must originate in a confidence that it

will not be disclosed; (2) the confidentiality element must be essential to maintaining the relation

of the parties involved; (3) the relationship itself must be one that public opinion believes should

be protected; and, (4) disclosing the communication would injure the relationship between the

parties involved more than the underlying litigation would be benefitted by its disclosure.  *Id*. at

475; *Zepter v. Dragisic*, 237 F.R.D. 185, 189 (N.D. Ill. 2006) (citation omitted).  The

---

[1]  "A licensed or registered certified public accountant shall not be required by any court
to divulge information or evidence which has been obtained by him in his confidential capacity
as a licensed or registered certified public accountant.  This Section shall not apply to any
investigation or hearing undertaken pursuant to this Act."  225 ILCS 450/27.

accountant-client privilege does not extend to communications that are disclosed to third parties unless those parties have a common interest with the disclosing party. *Id.*

### III.  Discussion

The twenty-two documents in Plaintiffs' privilege log involve email communications between a variety of individuals related to American Family's handling of the remediation of the Stopkas' home. The individuals sending and receiving the emails vary, but all the messages contain one common element: the Stopkas' accountant, Jerry Wolowicki, was either the recipient, directly or by carbon copy, or the sender of them. All but five of the emails also involve at least one of the Plaintiffs' attorneys. Setting aside the colorful, and altogether unhelpful, expressions of indignation each side directs at the other's alleged perfidy, the main points of dispute are whether Wolowicki's participation in the communications gives rise to the accountant-client privilege, and whether the communications are protected by the attorney-client privilege or the work product doctrine.

#### A.      The Work Product Doctrine

Plaintiffs claim that six of the twenty-two entries in their privilege log are protected by the work product doctrine. For its part, American Family has overlooked this privilege by mistakenly claiming that Plaintiffs did not assert it in their privilege log. Plaintiffs' response brief notes that the privilege was asserted for six documents, but American Family again overlooks this clarification in its reply brief and appears to have abandoned any argument it might have raised on this issue. The Court's own review of the items submitted for an *in camera*

review shows that each of the emails at issue was created just before or soon after this action was filed, and each falls within the scope of the privilege. Accordingly, the Court finds that American Family has waived any objection to Plaintiffs' reliance on the work product doctrine and that the six documents are protected from discovery. These include: (1) STP-PRIV004-005; (2) STP-PRIV0012; (3) STP-PRIV0013; (4) STP-PRIV0026; (5) STP-PRIV0032; and, (6) STP-PRIV0033.

### B.     The Accountant-Client Privilege

Unlike the attorney-client privilege, which belongs to the client but can be asserted by an attorney on the client's behalf, *In re Marriage of Decker*, 153 Ill.2d 298, 313, 606 N.E.2d 1094 (1992), Illinois' accounting privilege "inures *only* to the accountant. It cannot be raised or claimed by the client."[2] *Western Employment Ins. Co. v. Merit Ins. Co.*, 492 F. Supp. 53, 55 (N.D. Ill. 1979) (emphasis added); *see also Baylor v. Mading-Dugan Drug Co.*, 57 F.R.D. 509, 510 n.2 (N.D. Ill. 1972). Unfortunately, Plaintiffs present no argument on why this clear rule of law does not prevent them from invoking the accounting privilege. Wolowicki is the accountant in this case, and Plaintiffs do not claim that he has asserted the privilege. Clearly, he is not doing so in this proceeding. Plaintiffs do not contend that they are asserting it on his behalf or, for that matter, that they would have the right to do so under Illinois law. Thus, Plaintiffs cannot rely on a privilege that belongs to their accountant to protect documents that they themselves possess. *See Western Employment* , 492 F. Supp. at 55 (protecting documents held by an accountant but

---

[2] Similar statutes in many states make the client the holder of the privilege. *See FMC Corp. v. Liberty Mut. Ins. Co.*, 236 Ill.App.3d 355, 357 n.1, 603 N.E.2d 716 (Ill.App.Ct. 1992).

ordering a non-accountant to produce the same documents).  Plaintiffs state, without explanation, that the documents are actually held by Wolowicki.[3]  But as they have no right to assert the privilege on their own behalf at all, Plaintiffs cannot rely on it to protect documents held by someone else.  Accordingly, the Court finds that Plaintiffs have not shown why the accounting privilege applies to the items in their privilege log.

Even if they could invoke the privilege on Wolowicki's behalf, Plaintiffs make no argument as to how it would cover any of the emails in their privilege log.  Illinois courts have not clearly set forth the burden of proof for showing that the accounting privilege applies, but this Court sees no reasonable basis why it should not be the same as that for the attorney-client privilege.  This accords with the willingness of other courts to rely on the State's attorney-client privilege as a means of interpreting the Illinois accountant statute.  *See, e.g., Pepsico, Inc. v. Baird, Kurtz & Dobson LLP*, 305 F.3d 813, 816 (8th Cir. 2002).  In Illinois, the party claiming the attorney-client privilege has the burden of coming forward with evidence that establishes its existence.  *Pyramid Controls*, 176 F.R.D. at 271.  "It is also well established that to simply assert the existence of an attorney-client privilege is insufficient to demonstrate that one is entitled to its protection."  *Johnson v. Frontier Ford, Inc.*, 68 Ill.App.3d 315, 319, 386 N.E.2d 112 (Ill.App.Ct. 1979).  Plaintiffs' response does not meet this burden for the accounting privilege.  Notably, it does not address any of the specific items in the privilege log, and the log's descriptions are themselves insufficient to show how the elements of the accounting privilege

---

[3]  The Court notes that most of the emails in Plaintiffs' privilege log include either Michael or Marilyn Stopka as a sender or recipient.  Plaintiffs admit that they have already produced hundreds of pages of email communications, and it is unclear why they do not possess the sixteen emails in the privilege log to which they were a party.

apply to the emails.  The Court recognizes that Plaintiffs are hampered to some degree by the need not to disclose what they believe to be confidential information in the individual emails. That is always the case, however, when a party submits a privilege log, and it does not exempt the party claiming a privilege from making at least some reference to the items its seeks to protect.

The accounting privilege only protects "accounting services involving opinions on financial statements" and does not extend to nonfinancial services.  *Pepsico*, 305 F.3d at 816. American Family vigorously argues that the privilege log fails to show how any of the emails at issue here fall within this protected category.  Plaintiffs' response directs the Court's attention to portions of Mr. Stopka's deposition testimony in which Stopka stated that Wolowicki performed services for him that could be interpreted to give rise to the accounting privilege.  However, the fact that Wolowicki had some duties that would fall within the accounting privilege does not show, at least standing alone, that everything connected with Wolowicki is necessarily privileged.  The relevant issue is not the general nature of Wolowicki's work but whether the specific documents in the privilege log involve activities that are protected.  Without discussing how any of the emails in the privilege log concern protected financial services, Plaintiffs fail to carry their burden of showing how the accounting privilege applies.  Accordingly, American Family's motion is granted on the accountant-client issue.

### C.      The Attorney-Client Privilege

Plaintiffs also rely on the attorney-client privilege to protect all the items in their privilege log, which includes some emails in which an attorney was not a party to the message in

question, and many more involving an attorney.[4]  As noted above, Wolowicki was a sender or a

recipient for all of them.  American Family contends that the absence of an attorney as a party to

some of the emails necessarily means that the privilege does not apply to those documents.

Plaintiffs appear to assume that the fact that an attorney sent or received the remaining emails

means that the privilege does apply to them, though Plaintiffs do not directly argue this point.

For the reasons discussed below, both of these arguments fail to grasp how the attorney-client

privilege applies under Illinois law.


       1.       <u>The Non-Attorney Emails</u>

      The first category of documents involves emails between Wolowicki and either Michael

or Marilyn Stopka.  As the privilege log states, and the documents themselves confirm, each of

these emails involves some form of communication Wolowicki made to the Stopkas concerning

a prior conversation he had with one of Plaintiffs' attorneys.  Based on the absence of an attorney

as a direct participant in the emails, American Family contends that the attorney-client privilege

cannot be applied to these documents at all.

      The Court finds this argument unpersuasive as an absolute rule.  The fact that an email

may not involve an attorney as a direct sender or recipient does not necessarily mean that the

attorney-client privilege cannot apply.  This Court has already found that "the claim that the

privilege cannot extend to communications between non-lawyers is false" under federal law,

*Heriot v. Byrne*, 257 F.R.D. 645, 666 (N.D. Ill. 2009), and neither party has shown why Illinois

---

[4]  The Court does not consider here those documents already found to be privileged under
the work product doctrine.

courts would not reach a similar result.[5]  It is well established in this State that "in some

instances the attorney-client privilege attaches to communications made between a client and a

non-lawyer."  *Exline v. Exline*, 277 Ill.App.3d 10, 13, 659 N.E.2d 407 (Ill.App.Ct. 1995)

(addressing communications between an insurer and an insured).

The Court need not determine whether Illinois courts would reach the same result as this

Court did in *Heriot*, however, because even if the privilege extends to communications between

non-attorneys, Plaintiffs have not shown why it would apply to the documents at issue here.

Like federal law, Illinois' attorney-client privilege extends only to communications made in

confidence that either seek or give legal advice.  *Lama v. Preskill*, 353 Ill.App.3d 300, 305, 818

N.E.2d 443 (Ill.App.Ct. 2004) ("The attorney-client privilege protects communication made in

confidence by a client to a professional legal advisor where the client seeks legal advice from

that advisor."); *People v. Harris*, 211 Ill.App.3d 670, 675, 570 N.E.2d 593 (Ill.App.Ct. 1991).

Plaintiffs argue at some length that Wolowicki's participation in the emails did not waive the

attorney-client privilege, but they present no argument as to why the privilege applies to the non-

attorney emails in the first instance.  These include:

---

[5]  Unlike federal courts, Illinois courts recognize the control group test for privileged
communications.  This protection extends to employees who act in an "advisory role to top
management."  *Archer Daniels Midland Co. v. Koppers Co., Inc*., 138 Ill.App.3d 276, 279, 485
N.E.2d 1301 (Ill.App.Ct. 1985).  Wolowicki might be construed to fall within this category, as
he was employed by the officers of Chateau Arlington to provide them advice on matters relating
to the Stopka's home.  Based on the parties' limited presentation of the facts, the corporation
itself appears to have owned the home.  As the parties have not addressed this issue, however,
the Court does not reach it.

*STP-PRIV0001*: This message from Wolowicki to the Stopkas refers to an "agreement" that attorney John O'Connor stated would be sent to Wolowicki and the Stopkas later the same evening. Plaintiffs do not state what the agreement refers to, whether its terms were intended to be confidential, or why O'Connor's statement to Wolowicki that the agreement would be forwarded several hours later involves legal advice or a confidential communication. The agreement is not part of the email, and nothing in STP-PRIV0001 itself reveals any legal advice or suggests that the parties intended the communication to be confidential. In the absence of any explanation by Plaintiffs, the Court finds that they have not shown why this email is protected.

*STP-PRIV0003*: The second email states that Wolowicki spoke with O'Connor concerning changes to a "waiver" – which is not explained – and that Wolowicki was attempting to contact American Family's agent, Gerald Hayes, to arrange for those changes to be made. This email does not reveal the substance of any legal advice, and by stating that Wolowicki would forward the waiver changes to Hayes, Wolowicki plainly indicated that his discussion with O'Connor was not intended to be confidential. In order for the attorney-client privilege to apply, a party must show that the communication was not intended to be disclosed. *Consolidation Coal*, 89 Ill.2d at 119, 432 N.E.2d at 257. Accordingly, this email is not privileged.

*STP-PRIV007*: This communication involves a message from Wolowicki to Mr. Stopka asking for his thoughts on an attached message from Plaintiffs' attorney Chris Hennessy. Hennessy underlying message to Wolowicki merely states that an environmental consultant would be available to test the Stopkas' home on a certain date and that Hennessy would make sure that someone named Todd Augustine would also be present at the site. As

noted earlier, Augustine Homes, which is a third-party defendant in this case, constructed the home for the Stopkas, and the Stopkas undertook their own environmental assessment of American Family's remediation efforts before filing this suit. Plaintiffs provide no explanation of why this message involves confidential legal advice or who Todd Augustine is. The Court will not speculate on his relation to Augustine Homes, but the fact that Hennessy intended to communicate his message, which does not involve any legal advice, to a third-party shows that no confidentiality was intended. Thus, the Court finds that STP-PRIV0007 is not privileged.

*STP-PRIV0034*: The final email involves a message from Wolowicki to Stopka stating, "Mike – have you received the letter from Pearson?" The privilege log identifies Pearson as attorney Steven Pearson, one of Plaintiffs' attorneys. Here, once more, the Court has no information concerning the underlying letter referred to, which may or may not have involved confidential legal advice. Wolowicki's email itself does not reveal the substance of any such advice, and the mere reference to an unidentified letter is insufficient for Plaintiffs to invoke the attorney-client privilege.

For these reasons, the Court finds that STP-PRIV0001, STP-PRIV0003, STP-PRIV0007, and STP-PRIV0034 are not protected by the attorney-client privilege. American Family's motion is granted as it relates to these entries in Plaintiffs' privilege log.

2.      The Attorney Emails

The remaining emails in Plaintiffs' privilege log involve a communication either sent to or by one of Plaintiffs' attorneys to Wolowicki and/or the Stopkas. The Court notes that Plaintiffs have not presented any argument supporting the privilege's application to any specific

item in their privilege log.  Instead, Plaintiffs appear to assume that the participation of one of

their attorneys in the various messages is sufficient, without more, to establish that the

attorney-client privilege applies. This is not the case under either Illinois or federal law because

"[s]imply funneling communications past an attorney will not make them privileged." *Equity

Residential*, 246 F.R.D. at 563.  Each document must show all the hallmarks of the privilege, as

described above.  *See Consolidation Coal*, 89 Ill.2d at 119, 432 N.E.2d at 257.

The bulk of the parties' arguments concerns whether Wolowicki acted as Plaintiffs' agent

and, assuming that he was, whether his participation in the emails waived the attorney-client

privilege.  In support, both sides discuss at some length this Court's decision in *Heriot v. Byrne*,

*supra*, as well as caselaw from the Second, Seventh, and Eighth Circuits.  The relevant issue,

however, is not this Court's prior interpretation of federal law, but how Illinois courts would

construe these matters.

In Illinois, privileges can be waived under certain circumstances, just as they can under

federal law.  *Fischel & Kahn, Ltd. v. van Straaten Gallery, Inc.*, 189 Ill.2d 579, 585, 727 N.E.2d

240 (2000).  This includes circumstances in which otherwise privileged communications are

disclosed to third parties.  *People v. Doss*, 161 Ill.App.3d 258, 261, 514 N.E.2d 514 (Ill.App.Ct.

1987).  However, when the third party is an agent of the client, no waiver occurs.  Illinois

Supreme Court Rule 201(b)(2), which concerns discovery and privilege, states that the

attorney-client privilege protects "communications between a party *or his agent* and the attorney

for the party[.]" 134 Ill.2d R. 201(b)(2) (emphasis added).  Accordingly, Illinois courts have

repeatedly found that:

> [w]hen an agent communicates with the principal's attorney, the agent speaks as
> the client, or principal, and his or her communications are protected to the same

extent as though the principal was speaking. . . . Generally, communications made to a legal advisor through one serving as an agent of the client will be privileged.

*Lama*, 353 Ill.App.3d at 306, 818 N.E.2d at 449. *See also Doss*, 161 Ill.App.3d at 261, 514 N.E.2d at 505 ("The presence of an agent of the client in furtherance of the client's business . . . does not destroy the privilege."); *In re Marriage of Johnson*, 237 Ill.App.3d 381, 393, 604 N.E. 378 (Ill.App.Ct. 1992) ("Matters which the client intends his attorney to disclose to a third person (who is not the agent of either the client or the attorney) are not privileged.").  As always, such statements must be made for the purpose of legal advice and must be understood to be confidential in order to be privileged. *Id.* at 392-93.

Relying on the Second Circuit's decision in *United States v. Kovel*, 296 F.2d 918 (2d Cir. 1961), American Family contends that Wolowicki's participation in the communications at issue will not waive the attorney-client privilege only if his presence was somehow *necessary* to Plaintiffs for the purpose of obtaining legal advice.  This Court cited *Kovel* in its discussion in *Heriot*, *supra*, though the Court noted that *Kovel* also covers situations in which a third-party's participation was useful, not merely necessary. *See Heriot*, 257 F.R.D. at 666-67.  As shown below, the record shows that the Stopkas relied on Wolowicki to a remarkable degree in handling almost all issues concerning American Family and Plaintiffs' own attorneys, and the Court finds that, insofar as the standard cited by American Family even applies to Illinois law, Wolowicki meets it under these facts.  American Family also makes much over *Heriot*'s language that an agent must assist a principal with legal affairs before the attorney-client privilege can attach to a communication.  Although true, this argument merely restates the fundamental rule under Illinois law that the privilege only applies to communications involving legal advice, whether they are communicated directly between an attorney and a client or

between an attorney and a client's agent.  *See In re Marriage of Johnson*, 237 Ill.App.3d at 392-93, 604 N.E.2d. at 387.

a.      Agency

The first question, therefore, is whether Wolowicki acted as Plaintiffs' agent in matters that relate to the communications included in the privilege log.  Plaintiffs contend that he was; American Family argues he was not; but neither side addresses what actually constitutes an agent under Illinois law.  "An agent is one who, acting under authority from another, transacts business for him, and a true agency requires that the agent's function be the carrying out of the principal's affairs."  *Lang v. Consumers Ins. Serv., Inc*., 222 Ill.App.3d 226, 232, 583 N.E.2d 1147 (Ill.App.Ct. 1991).  Agency need not be expressed directly but can be implied from the specific circumstances at issue.  *Mitchell Buick & Oldsmobile Sales, Inc. v. Nat'l Dealer Servs., Inc*., 138 Ill.App.3d 574, 582, 485 N.E.2d 1281 (Ill.App.Ct. 1985).  The scope and extent of an agency relationship is a function of the agreement or intent between the agent and principal, and the party claiming agency must prove such a relationship by a preponderance of the evidence.  *Curto v. Illini Manors, Inc*., 405 Ill.App.3d 888, 892, 940 N.E.2d 229 (Ill.App.Ct. 2010).  This can be shown by reference to the parties' intent, situation, and acts, and must be traced to the principal, if only by means of circumstantial evidence.  *Lang*, 222 Ill.App.3d at 232, 583 N.E.2d at 1152.

Plaintiffs argue that Wolowicki was both their accountant as well as their financial advisor and that he served as "the central cog" in their communications with American Family. The Court's examination of various non-privileged emails, as well as the deposition testimony of Michael Stopka, confirms this characterization of the role Wolowicki played in the events that

ensued after the home was damaged in September, 2008. An Initial Investigation Report filed by American Family's adjuster, Gerald Hayes, shows that Wolowicki was already present at the homesite when Hayes arrived on the day of the fire and that Hayes spoke to both Stopka and Wolowicki. Although Plaintiffs have not provided a clear picture of Wolowicki's function, the Court can infer from the record that Wolowicki played at least as large a role in communicating with American Family and Plaintiffs' attorneys as Stopka himself did. Indeed, Stopka appears to have handed over to Wolowicki a considerable portion of the responsibility for resolving issues related to the home. Hayes and Wolowicki, for example, had a series of communications and meetings concerning American Family's handling of the insurance payout that extended from an October 30, 2008 email concerning claims submitted to the insurance company through January 6, 2010. The two met in Wolowicki's office on August 21, 2009 to discuss American Family's proposed $1,659,380 payout, and they exchanged a number of follow-up emails concerning payment, the liability policy, and what appears to have been a release of liability. (Pltf's. Resp. at Ex. D). These communications were made directly between Hayes and Wolowicki, with Stopka included only as a carbon copy recipient.

Stopka's testimony also supports a conclusion that Plaintiffs intended Wolowicki to act on their behalf in both financial and legal issues. For example, when pressed on matters related to both the insurance company's review of claims, as well as legal advice given by Stopka's attorney, Stopka disavowed any personal knowledge and referred the questioner to Wolowicki. (*Id*. at Ex. B, 74-75, 103). Stopka also testified that on the day of the fire "I said, 'Jerry, just take care of the situation for me.' I mean, he'll state he'll do anything." (*Id*. at 80). Stopka allowed Wolowicki to conduct discussions concerning the insurance settlement, to determine which

attorney to work with in settling the claims, to meet with attorneys, and to write official letters on behalf of the Stopkas. (*Id*. at 106, 116, 124).

This testimony strongly indicates that Plaintiffs not only considered Wolowicki to be their agent and held him out to be so to others, they relied heavily on his advice and judgment. American Family itself appears to have recognized Wolowicki's role as an agent because, in denying that his role gave rise to the accountant-client privilege, it conceded that "[h]e was really acting as the Stopkas' agent."[6] (*Id*. at Ex. E). In the absence of any significant counter-argument by American Family, the Court finds that this evidence is sufficient to show that Wolowicki functioned as the Stopkas' agent concerning both the financial and legal aspects of claims related to American Family. Accordingly, the Court finds that his participation in the emails does not function as a waiver of the attorney-client privilege for those emails where the privilege applies to the communications at issue.

b.        The Application of the Privilege

Having spent their ammunition on the agency and waiver issues, neither party discusses the remaining emails in Plaintiffs' privilege log, assuming instead that the privilege applies but either is, or is not, waived by Wolowicki's participation. To some degree, American Family is unable to do otherwise because its arguments are necessarily limited to the information provided

---

[6] American Family states in its reply that this does not indicate an agreement with Plaintiffs' argument because Plaintiffs had not yet produced their privilege log. The log, however, is not determinative on this issue, which depends on the nature of the relationship between Plaintiffs and Wolowicki at the time the emails in the privilege log were generated. The Court recognizes that American Family disagrees that Wolowicki was Plaintiffs' agent, and its finding is based on the evidence surrounding the events at issue, not on American Family's comment noted above.

by Plaintiffs' privilege log. Accordingly, the Court undertakes its own examination of the emails and finds that the attorney-client privilege applies to some, but not all, of them.

*STP-PRIV0002*: This email was sent from attorney O'Connor to Mr. Stopka and was carbon copied to Wolowicki. It provides legal advice on matters relating to issues that would later become integral to this lawsuit and is protected from discovery.

*STP-PRIV0006*: This email from Wolowicki to O'Connor concerns changes to a release agreement between the Stopkas and American Family. The email notes that the changes were requested by American Family's adjustor, Gerald Hayes, and were being forwarded to O'Connor at Hayes' request. As such, the message shows that the communication was not intended to be confidential. Indeed, Wolowicki asked O'Connor to forward the changes that O'Connor made to the agreement to Hayes himself. The lack of confidentiality means that the attorney-client privilege does not apply to this communication.

*STP-PRIV0008*: This email from attorney Hennessy to Stopka tells Stopka that Hennessy has received a bill from the environmental consultant discussed above and recommends that Stopka pay it. Nothing suggests that this communication involves confidential legal advice or anything more than a routine payment of bills. Accordingly, it is not privileged.

*STP-PRIV0009-0010*: These pages include an email string in which attorney Hennessy forwarded to Plaintiffs a message from their external environmental consultant. Hennessy's message states only that the report is attached to the email and that Plaintiffs can contact him after reviewing it. Neither the consultant's email to Hennessy, nor Hennessy's email to Plaintiffs, involves legal advice, and they are not protected by the attorney-client privilege.

Insofar as these documents include the consultant's report itself, Plaintiffs fail to show why it should be protected from discovery. First, Plaintiffs do not claim that the report is privileged; the privilege log refers only to the emails related to a "review of the environmental consultant report," not to the report itself. Second, Plaintiffs neither explain what role the consultant played in this matter nor make any reference in their brief to the underlying report. Assuming for the sake of argument that the investigator was a consulting expert, Illinois courts have rejected the application of the attorney-client privilege to a report submitted to a corporations' counsel, absent a showing that the consultant falls within the company's control group. *Midwesco-Paschen Joint Venture for Viking Projects v. IMO Inds., Inc.*, 265 Ill.App.3d 654, 668-69, 638 N.E.2d 322 (Ill.App.Ct. 1994). Whether *Midwesco-Paschen* applies here is speculative because Plaintiffs have not explained what role the environmental investigator plays in this case, what the report contains, or why the privilege applies. Accordingly, Plaintiffs have failed to carry their burden of showing why the report and the emails referencing it are protected by the attorney-client privilege.

*STP-PRIV0011*: This email from Wolowicki to attorney Steve Pearson notes that it is sent with an attachment that includes the certificates of insurance issued by American Family. As documents generated by American Family and presumably already available to it, the certificates are not confidential, and nothing in Wolowicki's message is intended to obtain legal advice. No privilege applies to this email.

*STP-PRIV0014*, *STP-PRIV0015-0025*, & *STP-PRIV0027*: These sets of documents include a retention agreement between Plaintiffs and their attorney as well as various emails forwarding the agreement to one person or another. The emails themselves are not privileged

because they clearly show that no legal advice was sought or given as part of signing the fee agreement. Instead, the emails concern mundane issues regarding the agreement's execution, the availability of Plaintiffs, and the fact that Mrs. Stopka had recently undergone a surgical procedure.

As before, moreover, Plaintiffs make no argument as to why the agreement itself is protected by the attorney-client privilege. "It is well-recognized that information regarding a client's fees generally is not a 'confidential communication' between an attorney and client, and thus is not protected by the attorney client privilege." *People ex rel. Ulrich v. Stukel*, 294 Ill.App.3d 193, 203, 689 N.E.2d 319 (Ill.App.Ct. 1997) (quoting *Matter of Grand Jury Proceeding, Cherney*, 898 F.2d 565, 567 (7th Cir. 1990)). In the absence of any evidence of legal advice, documents relating to the payment of fees are only incidental to the attorney-client relationship. *Id*.

*Stukel* involved billing vouchers instead of a retention agreement, but the Court believes that similar reasoning applies here. Few Illinois cases address this issue directly, but *Stukel*'s reliance on federal caselaw suggests that Illinois courts would follow federal rules on the protection of litigation agreements. Generally, such agreements are not covered by the attorney-client privilege unless they disclose confidential communications between the parties who have executed the agreement. *See*, *e.g.*, *Cars R Us Sales and Rentals, Inc. v. Ford Motor Co*., No. 08 C 50270, 2009 WL 1703123, at *3 (N.D. Ill. June 18, 2009); *Bailey v. Meister Brau, Inc*., 55 F.R.D. 211, 214 (N.D. Ill. 1972) (stating that a "retainer agreement . . . is not itself a confidential communication"); *United States v. Cedeno*, 496 F. Supp.2d 562, 567 (E.D. Pa. 2007) (finding that fee agreements between attorneys and defendants are not privileged). The

Court's review of the documents shows that they contain only routine, non-privileged facts defining the parties' agreement and that no legal advice was provided. Accordingly, Plaintiffs have not shown any basis for determining that the attorney-client privilege applies to the retainer agreement.

*STP-PRIV0028 & STP-PRIV0029*: The privilege log states that these two emails concern a follow up to an earlier email. Plaintiffs provide no explanation of what that underlying message concerned or why these communications, which merely confirm that a prior message was sent, are protected.

*STP-PRIV0030*: This email sent from Wolowicki to Plaintiffs' attorney states that it is sending "contact information" about Mr. Stopka's insurance agent as well as "miscellaneous paperwork." No specific information concerning these references is provided in the email, and Plaintiffs have not argued that the email involves legal advice. Thus, the privilege does not apply.

*STP-PRIV0031*: Here, Wolowicki forwarded the insurance policy covering the Stopkas' home to Plaintiffs' attorneys. Again, no legal advice is sought in the email itself, and Plaintiffs have presented no argument as to why the insurance agreement should be protected. Indeed, like the environmental report discussed above, Plaintiffs brief omits any reference to the insurance agreement. "The party claiming the attorney-client privilege bears the burden of presenting factual evidence that establishes the privilege." *Pietro v. Marriott Senior Living Servs., Inc*., 348 Ill.App.2d 541, 551, 810 N.E.3d 217 (Ill.App.Ct. 2004). In the absence of any explanation by Plaintiffs, the Court finds that they have not shown why the agreement should be protected.

American Family's motion is denied on STP-PRIV0002 and granted concerning STP-PRIV0006, STP-PRIV0008, STP-PRIV0009-0010, STP-PRIV0011, STP-PRIV0014, STP-PRIV0015-0025, STP-PRIV0027, STP-PRIV0028, STP-PRIV0029, STP-PRIV0030, and STP-PRIV0031.

### IV.  Conclusion

For the reasons stated above, American Family's motion to compel [Dckt. 35] is granted in part and denied in part.  Within twenty-one days of the entry of this Order, Plaintiffs shall produce the following items included in their privilege log:  STP-PRIV0001, STP-PRIV003, STP-PRIV0006, STP-PRIV0007, STP-PRIV0008, STP-PRIV0009-0010, STP-PRIV0011, STP-PRIV0014, STP-PRIV0015-0025, STP-PRIV0027, STP-PRIV0028, STP-PRIV0029, STP-PRIV0030, STP-PRIV0031, and STP-PRIV0034.

**ENTER ORDER:**

**MARTIN C. ASHMAN**
United States Magistrate Judge

**Dated:**  August 30, 2011.