IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL STOPKA and | ) | |
| MARILYN STOPKA, | ) | |
| | ) | Case No.: 10-CV-6034 |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| AMERICAN FAMILY MUTUAL | ) | |
| INSURANCE COMPANY, INC. | ) | |
| a Wisconsin Corporation, | ) | |
| | ) | |
| Defendant. | ) | |

## ANSWER AND AFFIRMATIVE DEFENSES TO SECOND AMENDED COMPLAINT

NOW COMES the Defendant, American Family Mutual Insurance Company ("American Family"), through its attorneys, Pretzel & Stouffer, Chartered, and as its Answer and Affirmative Defenses to Plaintiff's Second Amended Complaint, states as follows:

### THE PARTIES

1.      Michael Stopka and Marilyn Stopka ("the Stopkas"), a married couple, are residents of Arlington Heights, Illinois.

ANSWER:  American Family lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph One.

2.      Chateau Arlington, LLC ("Chateau Arlington") is an Illinois limited liability company of which Michael Stopka and Marilyn Stopka are the sole members.

ANSWER:    American Family lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph Two.

3.      American Family Mutual Insurance Company, Inc. ("American Family") is a Wisconsin corporation with its principal place of business in Madison, Wisconsin.  Upon information and belief, American Family is licensed to issue policies of insurance including within Illinois.

1

ANSWER:  American Family admits the allegations contained in Paragraph Three.

## Statement of Jurisdiction and Venue

4.    Under 28 U.S.C. § 1332, the Stopkas are citizens of Illinois, and American Family is a citizen of Wisconsin.

ANSWER:  American Family lacks knowledge or information sufficient to form a belief about the truth of the allegations regarding the Stopkas' citizenship.  For purposes of jurisdiction, American Family admits that it is a citizen of the state of Wisconsin.

5.    Thus, diversity of citizenship exists between the Stopkas and American Family.

ANSWER:  The allegations contained in Paragraph Five constitute a legal conclusion, to which American Family need not respond.

6.    As set forth in greater detail below, the matters in controversy exceed the sum or value of $75,000.

ANSWER:  American Family lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 6.

7.    Therefore, under 28 U.S.C. § 1332, this Court has original jurisdiction over the dispute between the parties.

ANSWER:  The allegations contained in Paragraph Seven constitute a legal conclusion, to which American Family need not respond.

8.    Venue is appropriate under 28 U.S.C. § 1391(a)(2), as a substantial part of the events or omissions giving rise to the claim occurred in Barrington Hills, Illinois, which is located within the judicial district of this Court.

ANSWER:  The allegations contained in Paragraph Eight constitute a legal conclusion, to which American Family need not respond.

9.    Venue also is appropriate under 28 U.S.C. § 1391(a)(3) and 28 U.S.C. § 1391(c), as American Family regularly transacts business within the state of Illinois (including the issuing

of policies of liability insurance within Illinois), and made and/or performed services through its agents that are substantially connected to Illinois and which are the subject of the dispute between the parties. American Family is thus subject to the personal jurisdiction of this Court under Illinois long-arm statue, 735 ILCS 5/2-209.

ANSWER: The allegations contained in Paragraph Nine constitute a legal conclusion, to

which American Family need not respond.

## BACKGROUND FACTS

10.     On or about September 29, 2003, Chateau Arlington, LLC obtained by warranty deed the title to real property located at 10 Goose Lake Drive, Barrington Hills, Illinois, 60010 ("the Property").

ANSWER:     American Family lacks knowledge or information sufficient to form a

belief about the truth of the allegations in Paragraph 10.

11     The Stopkas, through and in their capacity as the sole members of Chateau Arlington, LLC, thereafter made plans to demolish to single-family home which then existed on the Property, and construct a new single-family home.

ANSWER:     American Family lacks knowledge or information sufficient to form a

belief about the truth of the allegations in Paragraph 11.

12.     In late 2006, Chateau Arlington, LLC entered into a contract agreement with Augustine Custom Homes, Inc. ("Augustine") for the construction of a 6,000-plus square foot three story custom built single-family home at ("the Residence") to be located on the property at 10 Goose Lake Drive.

ANSWER:  American Family lacks knowledge or information sufficient to form a belief

about the truth of the allegations contained in Paragraph 12.

13.     Augustine subsequently entered into subcontract agreements with several entities, including Complete Flashings, Inc., to complete portions of the construction of the Residence.

ANSWER:  American Family lacks knowledge or information sufficient to form a belief

about the truth of the allegations contained in Paragraph 13.

14.     Construction commenced on the Residence in Spring 2007.

ANSWER:  American Family lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 14.

15.     By September 2008, construction of the Resident was significantly advanced, with the exterior structure (including the roof) erected, and a large portion of the custom interior finishes well underway.

ANSWER:  American Family lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 15.

## The Fire At The Residence

16.     On September 10, 2008, during the course of performing certain gutter installation work adjacent to the roof of the Residence, an employee of Complete Flashings, Inc. started a fire on the roof while using a blow torch.

ANSWER:     American Family admits only that on September 10, 2008, a fire started in the area where an employee of Complete Flashings, Inc. was performing work at the Stopkas' home.

17.     The fire quickly spread uncontrolled across and under the entire roof of the Residence, consuming a substantial amount of the roof, attic, and portions of the third floor.

ANSWER:  American Family lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 17.

18.     On information and belief, personnel from 22 fire departments responded to the fire, and used tens of thousands of gallons of water to extinguish the blaze.

ANSWER:  American Family lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 18.

19.     The fire caused significant destruction of many structural components of the building's roof and upper floors, and fire-related damage to other components not consumed in the fire.  In addition, fire suppression efforts introduced a tremendous amount of water onto building materials within the home, including those not directly impacted by the combustion

itself.

ANSWER: American Family admits only that the fire caused damage to the Stopkas' home which was under construction at the time of the fire. American Family denies that the allegations contained in Paragraph 19 accurately describe the extent of the damage caused by the fire.

20.    In addition to those structural components of the Residence which were destroyed by fire, damage to the Residence included the presence of soot, char, and other contaminants from the burning of building materials, and also water-soaked building materials.

ANSWER:   American Family admits only that the fire caused damage to the Stopkas' home which was under construction at the time of the fire. American Family denies that the allegations contained in Paragraph 20 accurately describe the extent of the damage caused by the fire.

21.    Due to the condition of the structure after the fire and the near-complete destruction of its roof and risk to its structural integrity, all construction efforts to complete the Residence ceased.

ANSWER:   American Family lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 21.

### American Family's Actions After The Fire

22.    Upon information and belief, American Family issued a liability policy to Complete Flashings, Inc., covering the time period of the fire.

ANSWER: American Family admits that it issued two liability policies to Complete Flashings, Inc., which were in effect on the date of the fire.

23.    Upon information and belief, the American Family policy had per-occurrence limits of $2,000,000.

ANSWER:   American Family admits that it issued two liability policies to Complete

Flashings, Inc., which were in effect on the date of the fire.  Each policy had limits of $1,000,000.

24.    After the fire was extinguished, American Family, through its agent, Gerald Hayes, communicated directly with the Stopkas and the Stopkas' accountant, Jerry Wolowicki, regarding American Family's willingness to undertake and direct the repair of all fire related damage at the Residence on behalf of American Family's insured, Complete Flashings.

ANSWER: American Family admits that its adjuster, Gerald Hayes, communicated with Michael Stopka and Jerry Wolowicki after the fire.  American Family denies that it directed and controlled the repairs of the Plaintiff's Home or that it advised Mr. Stopka and Mr. Wolowicki of this.

25.    At a meeting at the project on September 11, 2008, Mr. Hayes advised Mr. Stopka, in the presence of Mr. Wolowicki and others, that American Family would direct and control the remediation process and do what was necessary to restore the home to its pre-fire condition.

ANSWER:    American Family denies the allegations contained in Paragraph 25.

26.    According to American Family's own contemporaneous internal documents, Mr. Hayes "took control of the claim" based upon the "clear liability" of Complete Flashings, Inc.

ANSWER:    American Family objects to the allegations contained in Paragraph 26 because the quoted document speaks for itself and Plaintiffs fail to fully and accurately quote the entire document.  Further answering, American Family denies that it directed or controlled the remediation process.

27.    Also according to American Family's contemporaneous internal documentation, American Family agreed to "pay for the loss" suffered by the Stopkas.

ANSWER:    American Family objects to the allegations contained in Paragraph 26 because the quoted document speaks for itself and Plaintiffs fail to fully and accurately quote the entire document.  Further answering, American Family denies that it agreed to pay for the

6

Stopkas' loss.

28.    Within a day of the fire, American Family retained a contractor to have a temporary roof installed over the fire-damaged area.   Ultimately Mr. Hayes retained both a general contractor, Miner and East, Inc., and an engineer, Engineering Systems, Inc. ("ESI"), to complete post-fire inspection, remediation, and construction, in order to restore the Residence to its pre-fire condition.

ANSWER: American Family admits that it retained Engineering Systems, Inc. and Miner

& East, Inc. to participate in the post-fire remediation process at the Stopkas' home, but denies

the remainder of Paragraph 28.

29.    Miner and East, Inc., was retained by American Family to perform both remediation and construction services.   Miner and East, Inc., in turn, contracted with other entities to complete demolition of the fire-damaged components of the residence.

ANSWER:    American Family admits only that it retained Miner & East, Inc. to

participate in the post-fire remediation process at the Stopkas' home.   American Family denies

that the allegations contained in Paragraph 29 accurately state the scope of Miner & East's work.

30.    ESI was retained by American Family to determine the extent of structural damage caused by the fire, but was not retained to address water or smoke damage issues with the Residence.

ANSWER:   American Family admits only that it retained Engineering Systems, Inc. to

participate in the post-fire remediation process at the Stopkas' home.   American Family denies

that the allegations contained in paragraph 30 accurately state the scope of Engineering Systems,

Inc.'s work.

31.    From mid-September 2008, to early November 2008, American Family, through its designated contractor and engineer, exercised complete control over the construction site and over the remediation process.   All investigation, remediation, and construction efforts by Miner and East, Inc. and ESI were completed at the direction of American Family.

ANSWER: American Family denies the allegations contained in Paragraph 31.

32.    Both Miner and East and ESI took their direction solely from American Family

and were paid directly by American Family.

      <u>ANSWER:</u>    American Family denies the allegations contained in Paragraph 32.

      33.    Even after November 2008, when American Family had returned control over the construction site to Augustine, American Family continued to retain contractors to complete remediation work at the site with those contractors taking their direction solely from American Family and being paid directly by American Family.

      <u>ANSWER:</u>    American Family denies the allegations contained in Paragraph 33.

### Ongoing Problems At The Residence

      34.    Also during the relevant post-fire time period, American Family retained Environmental Group Services, Ltd. ("EGSL") to conduct several indoor air quality surveys to assess the potential mold presence due to the substantial water intrusion.

      <u>ANSWER:</u> American Family admits that it retained Environmental Group Services, Ltd.

to conduct indoor air quality surveys at the Stopkas' home as part of the remediation process.

      35.    On September 25, 2009, EGSL issued a report claiming that the air within the Stopka Residence "should not be a concern." However, EGSL neither investigated nor opined regarding the presence of soot and char from the burning of building materials and the odors caused by the presence of those residual contaminants.

      <u>ANSWER:</u> American Family admits that Environmental Group Services, Inc. issued a

report dated September 25, 2009, which speaks for itself. American Family denies the remaining

allegations contained in Paragraph 35.

      30.    Upon information and belief, American Family never directed either ESI or EGSL to conduct an inspection and assessment of the presence of soot and char from the burning of building materials, and the odors caused by such residual contaminants within the Residence.

      <u>ANSWER:</u> American Family denies the allegations contained in Paragraph 36.

      37.    After American Family's efforts ended, the Stopkas continued to notice problems within the Residence, including the pervasive odor of smoke in certain rooms in the home and ongoing concern over potential mold growth.

ANSWER: American Family lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 37.

38.    In order to more fully understand the scope of these ongoing issues, the Stopkas retained Forensic Analytical Consulting Services ("FACS") to conduct an investigation of the environmental health conditions related to potential mold, smoke, and fire damage.

ANSWER: American Family lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 38.

39.    FACS conducted an evaluation of the Stopka Residence and of the remediation work performed at the direction of American Family. In a report issued on May 10, 2010, FACS preliminarily concluded that the remediation completed at the direction of American Family was not conducted properly, and that additional investigation and remedial work was necessary.

ANSWER: American Family admits that Forensic Analytical Consulting Services issued a report dated May 10, 2010, which speaks for itself. American Family lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 39.

40.    In particular, FACS concluded (among other things) that residual contaminants and odors from the burning of building materials were still present in the home, that the home experienced post-fire water intrusion from an unidentified source which resulted in mold growth, and that the structure was simply not properly and thoroughly cleaned after the fire. FACS made specific recommendations for investigation and remediation that was required within the Residence.

ANSWER: American Family admits that Forensic Analytical Consulting Services issued a report dated May 10, 2010, which speaks for itself. American Family lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 40.

41.    As set forth within the FACS report, the Residence requires additional significant investigative and remedial work to be performed to restore it to its pre-fire condition.

ANSWER:   American Family admits that FACS issued a report dated May 10, 2010, which speaks for itself.  American Family lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 41.

42.   In addition to the estimated costs associated with completing additional investigative and remedial work to address American Family's failures, Plaintiffs have incurred other costs and expenses, including those associated with the delay in the completion of the project and the investigation of their fire-related damages.  Plaintiffs continue to incur costs and damages related to the delays associated with the completion of the Residence.

ANSWER:   American Family lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 42.

43.   All costs incurred by the Stopkas and Chateau Arlington, including those yet to be incurred in the form of additional investigation and remediation, are directly related to the decision of American Family to repair rather than demolish the remaining post-fire structure and to direct and control the remediation efforts.

ANSWER:   American Family denies the allegations contained in Paragraph 43.

44.   Plaintiffs have already incurred costs in excess of $650,000 which are properly the responsibility of American Family.

ANSWER:   American Family lacks knowledge or information sufficient to form a belief about the truth of the allegations regarding the Stopkas' costs as contained in Paragraph 44.  American Family denies the remaining allegations contained in Paragraph 44.

## FIRST CLAIM
### Breach of Contract

45.   The Stopkas incorporate paragraphs 1 through 44 above as though fully set forth in this Paragraph.

ANSWER: American Family incorporates its answers to Paragraphs one through 44 as its answer to Paragraph 45 as if fully set forth herein.

46.   After the fire caused by its insured, American Family made an offer to the Plaintiffs to direct and control the remediation efforts in order to restore the Residence to its pre-fire condition.

10

ANSWER: American Family denies the allegations contained in Paragraph 46.

47.    The Plaintiffs accepted the offer of American Family based solely on the representations of American Family that the Residence would, in fact, be returned to its pre-fire condition.

ANSWER:  American Family denies the allegations contained in Paragraph 47.

48.    As consideration for American Family's offer to restore the Residence to its pre-fire condition, the Plaintiffs did not immediately pursue legal remedies against either Complete Flashings, Inc. or American Family for the fire which was unquestionably caused by Complete Flashings and for which American Family had assumed liability.

ANSWER:    American family lacks knowledge or information sufficient to form a

belief about the truth of the allegations regarding why the Stopkas did not immediately pursue

legal remedies against either American Family or Complete Flashings.  American Family denies

the remaining allegations in Paragraph 48.

49.    American Family breached its contract with the Plaintiffs in one or more of the following ways:

(a)    Failing to properly direct and control the remediation efforts;

(b)    Failing to properly assess the Residence for the presence of soot and char contamination;

(c)    Failing to perform or to have performed a thorough and detailed cleaning of the Residence, including cleaning to eliminate soot and char deposits;

(d)    Failing to retain a qualified inspector to address smoke damage issues as would be necessary and appropriate under the circumstances;

(e)    Failing to remove or to have removed all fire-damaged building materials;

(f)    Failing to engage an appropriately qualified environmental health professional to conduct a thorough investigation of the Residence.

ANSWER: American Family denies the allegations contained in paragraph 49, including

11

subparagraphs (a) through (f).

50.     As a direct result of American Family's breach of its agreement with the Plaintiffs, the Plaintiffs incurred costs to investigate, evaluate, and remediate the Residence. In addition, the Plaintiffs incurred and continue to incur further costs and damages associated with the delay to the completion of construction of the Residence.

ANSWER: American Family denies the allegations contained in Paragraph 50.

51.     As a direct result of American Family's breach of its agreement, the Stopkas have suffered damages in an amount to be proven at trial.

ANSWER: American Family denies the allegations contained in Paragraph 51.

WHEREFORE, the Defendant, American Family Mutual Insurance Company, denies that

the Plaintiffs are entitled to any relief whatsoever and requests judgment in its favor.

## SECOND CLAIM
### Negligence

52.     The Stopkas incorporate paragraphs 1 through 44 above as though fully set forth in this Paragraph.

ANSWER:  American Family incorporates its answers to Paragraphs one through 44 as

its answer to Paragraph 52 as if fully set forth herein.

53.     When American Family elected to direct and control the remediation efforts of the Residence after the fire caused by its insured, American Family undertook a duty to the Plaintiffs to ensure that the remediation was performed properly and in accordance with applicable industry standards.

ANSWER: American Family admits only those duties imposed by law and denies that

the allegations contained in Paragraph 53 accurately set forth its duty.

54.     American Family breached its duties to the Stopkas in one or more of the following ways:

(a)     Negligently failing to properly direct and control the remediation efforts;

(b)     Negligently failing to properly assess the Residence for the presence of soot and char contamination;

12

(c)     Failing to perform or to have performed a thorough and detailed cleaning of the Residence, including cleaning to eliminate soot and char deposits;

(d)     Negligently failing to retain a qualified inspector to address smoke damage issues as would be necessary and appropriate under the circumstances;

(e)     Negligently failing to remove or to have removed all fire-damaged building materials;

(f)     Negligently failing to engage an appropriately qualified environmental health professional to conduct a thorough investigation of the Residence.

ANSWER:  American Family denies the allegations contained in Paragraph 54, including subparagraphs (a) through (f).

55.     As a direct result of American Family's negligence, the Stopkas incurred costs to investigate, evaluate, and remediate the Residence. In addition, the Stopkas incurred and continue to incur further costs and damages associated with the delay to the completion of construction of the Residence.

ANSWER: American Family denies the allegations contained in Paragraph 55.

56.     As a direct result of American Family's negligence, the Stopkas have suffered damages in an amount to be proven at trial.

ANSWER: American Family denies the allegations contained in Paragraph 56.

WHEREFORE, the Defendant, American Family Mutual Insurance Company, denies that the Plaintiffs are entitled to any relief whatsoever and requests judgment in its favor.

### THIRD CLAIM
**Declaratory Judgment**

57.     The Stopkas incorporate paragraphs 1 through 39 above as though fully set forth in this Paragraph.

ANSWER:  American Family incorporates its answers to paragraphs one through 39 as its answer to Paragraph 57 as if fully set forth herein.

58.     Upon information and belief, American Family issued a liability policy to

13

Complete Flashings, Inc., covering the time period of the fire, with per-occurrence limits of $2,000,000.

ANSWER:    American Family admits that it issued two liability policies to Complete

Flashings, Inc., which were in effect on the date of the fire.    Each policy had limits of

$1,000,000.

59.    Although Complete Flashings, Inc. was negligent in the performance of its construction work which caused the fire, American Family by virtue of directing and controlling the post-fire investigation, remediation, and construction efforts not only assumed all of the liability of Complete Flashings for fire and damage, but also engaged in its own separate conduct, independent of the conduct of its insured, including but not limited to the decision to attempt to remediate the fire-damaged home rather than demolish it.

ANSWER: American Family denies the allegations contained in Paragraph 59.

60.    By December 2009, American Family claimed that the costs of the remediation work was approaching $2,000,000, and offered to the Stopkas a check for the minimal remaining balance of the American Family policy in exchange for a full release of Complete Flashings, Inc. and of American Family despite the ongoing problems at the Residence.

ANSWER:    American Family admits that the limits of its policies issued to Complete

Flashings are close to being exhausted.    American Family admits that it offered the Stopkas a

sum of money to resolve the claim and forwarded releases to them for signature.    American

Family denies the remaining allegations contained in Paragraph 60.

61.    American Family assumed all liability on the part of Complete Flashings, without limitation, for the fire and related damage to the Residence.

ANSWER:    American Family denies the allegations in Paragraph 61.

62.    Furthermore, American Family independently elected to direct and control the post-fire remediation efforts, including the directions American Family provided to contractors it retained.

ANSWER:    American Family denies the allegations in Paragraph 62.

63.    An actual controversy exists between the Plaintiffs and American Family regarding whether American Family's liability to the Plaintiffs is restricted or limited to the pre-

occurrence limits of the American Family policy or policies issued to Complete Flashings, Inc.

ANSWER: American Family denies the allegations contained in Paragraph 63.

64.    Pursuant to 28 U.S.C. § 2201(a), in a case of actual controversy, the Court may "declare the rights and other legal relations of any interested party seeking declaration."

ANSWER:    The allegations in Paragraph 64 constitute a legal conclusion to which American Family need not respond.

65.    Plaintiffs therefore seek a declaration that American Family's liability is not restricted by the $2,000,000 combined per-occurrence limits of the American Family policy or policies issued to Complete Flashings, Inc. and that American Family has liability to Plaintiffs for its own independent acts of negligence in connection with its direction and control of the remediation efforts following the fire at the Residence.

ANSWER:    American Family denies the allegations contained in Paragraph 65.

WHEREFORE, the Defendant, American Family Mutual Insurance Company, denies that

the Plaintiffs are entitled to any relief whatsoever and requests judgment in its favor.

## FOURTH CLAIM
### Promissory Estoppel (Pleading In The Alternative To First Claim)

66.    The Stopkas incorporate paragraphs 1 through 44 above as though fully set forth in this Paragraph.

ANSWER:    American Family incorporates its answers to paragraphs one through 44 as

its answer to Paragraph 66 as if fully set forth herein.

67.    After the fire caused by its insured, American Family, by and through its agent and representative, Mr. Hayes, made an unambiguous promise to the Stopkas that American Family would undertake to restore the Residence to its pre-fire condition.

ANSWER:    American Family denies the allegations contained in Paragraph 67.

68.    In fact, on September 11, 2008, and on several occasions thereafter, Mr. Hayes promised the Plaintiffs that American Family would return the home to the condition it was in "five minutes before the fire started."

ANSWER:    American Family denies the allegations contained in Paragraph 68.

69.    The Plaintiffs relied on the promise of American Family and the numerous reiterations of that promise by Mr. Hayes that the residence would, in fact, be returned to its pre-fire condition.

ANSWER:    American Family lacks knowledge or information sufficient to form a

belief about the truth of the allegations contained in Paragraph 69.

70.    It was both reasonable and foreseeable to American Family that the Plaintiffs would rely on the promise that American Family made, considering the clear liability of American Family's insured in causing the fire

ANSWER:    American Family denies the allegations contained in Paragraph 70.

71.    To the detriment of the Plaintiffs, American Family breached its promise to the Stopkas in one or more of the following ways:

(a)    Failing to properly direct and control the remediation efforts;

(b)    Failing to properly assess the Residence for the presence of soot and char contamination;

(c)    Failing to perform or to have performed a thorough and detailed cleaning of the Residence, including cleaning to eliminate soot and char deposits;

(d)    Failing to retain a qualified inspector to address smoke damage issues as would be necessary and appropriate under the circumstances;

(e)    Failing to remove or to have removed all fire-damaged building materials;

(f)    Failing to engage an appropriately qualified environmental health professional to conduct a thorough investigation of the Stopka Residence.

ANSWER:    American Family denies the allegations contained in Paragraph 71,

including subparagraphs (a) through (f).

72.    As a direct result of American Family's breach of its promise to the Plaintiffs, the Plaintiffs incurred costs to investigate, evaluate, and remediate the Stopka Residence.    In addition, the Plaintiffs incurred and continue to incur further costs and damages associated with the delay to the completion of construction of the Residence.

ANSWER:    American Family denies the allegations contained in Paragraph 72.

16

73.    As a direct result of American Family's breach of its promise, the Stopkas have suffered damages in an amount to be proven at trial.

ANSWER:    American Family denies the allegations contained in Paragraph 73.

WHEREFORE, the Defendant, American Family Mutual Insurance Company, denies that the Plaintiffs are entitled to any relief whatsoever and requests judgment in its favor.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

Plaintiffs' Complaint fails to state a claim upon which relief can be granted.

### Second Affirmative Defense

Plaintiffs have failed to mitigate their alleged damages.

### Third Affirmative Defense

Plaintiffs' claims are barred, in whole or in part, by the principles of waiver, ratification and/or estoppel.

### Fourth Affirmative Defense

Plaintiffs' claimed injuries, damages and/or losses, if any, were proximately caused, in whole or in part, by the Plaintiffs' own negligent acts and/or omissions, and therefore, any recovery is barred or reduced in proportion to Plaintiffs' fault pursuant to 735 ILCS 5/2-1116.

### Fifth Affirmative Defense

The contributory fault of the Plaintiffs was the sole proximate cause of Plaintiffs' alleged damages. The Plaintiffs were at least in excess of fifty-one percent (51%) at fault in proximately contributing to the Plaintiffs' damages, and therefore, Plaintiff is barred from recovery pursuant to 735 ILCS 5/2-1116.

### Sixth Affirmative Defense

American Family did not cause any injury or damage to the Plaintiffs. Any alleged fault on the part of American Family should be considered in the context of fault of any and all tortfeasors who proximately caused Plaintiffs' injury pursuant to 735 ILCS 5/2-1117. Alternatively, American Family did not cause any injury to Plaintiffs and any alleged fault on the

part of American Family is less than twenty-five percent (25%) of the total fault which proximately caused injury and American Family is therefore only severally liable, pursuant to 735 ILCS 5/2-1117.

## Seventh Affirmative Defense

Plaintiffs' alleged injuries or damages were caused in whole or in part by persons, firms, corporations, or entities other than American Family or non-parties over whom American Family has no control and such conduct either bars or comparatively reduces any possible recovery by the Plaintiffs.

## Eighth Affirmative Defense

Plaintiffs' alleged injuries or damages were the result of intervening or superseding acts or omissions of persons, firms, corporations or entities other than American Family.

## Ninth Affirmative Defense

1.      That the American Family policy of insurance number 12 X95476-02 (hereinafter "Policy No. 12 X95476-02"), bears a Declarations page which states, in part, that the "Limits of Insurance" for "Each Occurrence" is $1,000,000.

2.      That Policy No. 12 X95476-02, Section I - Coverages, states in part as follows:

COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1.      Insuring Agreement

        a.      We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1)     The amount we will pay for damages is limited as described in Section III - Limits Of Insurance; and

(2)     Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages A and B.

3.      That Policy No. 12 X95476-02, SECTION III - LIMITS OF INSURANCE, states in part as follows:

1.      The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

a.      Insureds

b.      Claims made or "suits" brought; or

c.      Persons or organizations making claims or bringing "suits",

*          *          *

5.      Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

a.      Damages under Coverage A; and

b.      Medical expenses under Coverage C because of all "bodily injury" and "property damage" arising out of anyone "occurrence"

4.      That Policy No. 12 X95476-02 defines an "occurrence" as meaning "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." See, Section V - Definitions, number 13.

5.      That pursuant to Endorsement, Policy No. 12 X95476-02, states in part as follows:

B.   Following are two changes/additions to the SECTION 11/ LIMITS OF INSURANCE in the COMMERCIAL GENERAL LIABILITY COVERAGE FORM:

8.   Subject to paragraph 2. in SECTION 11/ - LIMITS OF INSURANCE section of the COVERAGE FORM, the most we will pay because of all "property damage" to personal property in the care, custody or control of the insured is the Aggregate amount shown in the SCHEDULE above.

9.   "Subject to paragraphs 5. and 8. in Section 11/ LIMITS OF INSURANCE section of the COVERAGE FORM, the most we will pay because of all property damage to personal property in the care, custody or control of the insured arising out of anyone occurrence is the occurrence amount shown in the SCHEDULE above.

6.   That pursuant to the afore-described terms and provisions of Policy No. 12 X95476-02, American Family's total liability under Policy No. 12 X95476-02 for the alleged claims of the Stopkas upon American Family's insured Complete Flashings, Inc., was limited to the total sum of $1,000,000.00.

7.   That the per occurrence limit of $1,000,000 under Policy No. 12 X95476-02, has been fully exhausted via payments made by American Family on behalf of its insured Complete Flashings, Inc.

8.   That due to the full and complete exhaustion of per occurrence limits under Policy No. 12 X95476-02, American Family has no further obligations of any type under Policy No. 12 X95476-02, with respect to the Stopka claim against Complete Flashings, Inc.

**Tenth Affirmative Defense**

1.      That the American Family Commercial Liability Umbrella policy of insurance number 12x9547606 (hereinafter "the Umbrella Policy"), bears a Declarations page which states, in part, that the "Limits of Insurance" for "Each Occurrence" is $1,000,000.

2.      That the Umbrella Policy, Section I - Coverages, states in part as follows:

COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1.      Insuring Agreement

a.      We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking damages for such "bodily injury" or "property damage" when the "underlying insurance" does not provide coverage or the limits of "underlying insurance" have been exhausted. When we have no duty to defend, we will have the right to defend, or to participate in the defense of, the insured against any other "suit" seeking damages to which this insurance may apply. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. At our discretion, we may investigate any "occurrence" that may involve this insurance and settle any resultant claim or "suit", for which we have the duty to defend. But:

(1)      The amount we will pay for the "ultimate net loss" is limited as described in Section III - Limits Of Insurance; and

\*          \*          \*

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages A and B.

3.　　That the Umbrella Policy, SECTION III - LIMITS OF INSURANCE, states in part as follows:

    1.　　The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

        a.　　Insureds

        b.　　Claims made or "suits" brought, or the number of vehicles involved; or

        c.　　Persons or organizations making claims or bringing "suits",

*　　　*　　　*

    3.　　Subject to Paragraph 2. above, the Each Occurrence Limit is the most we will pay for the sum of all "ultimate net loss" under Coverage A because of all "bodily injury" and "property damage" arising out of anyone "occurrence",

4.　　That the Umbrella Policy defines an "occurrence" as meaning "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." See, Section V - Definitions, number 13.

5.　　That the Umbrella Policy defines "ultimate net loss" as meaning "the total sum, after reduction for recoveries or salvages collectible, that the insured becomes legally obligated to pay as damages' by reason of settlement or judgments or any arbitration or other alternate dispute method entered into with our consent or the "underlying insurer's" consent." " See, Section V - Definitions, number 23.

6.　　That pursuant to the afore-described terms and provisions of the Umbrella Policy, American Family's total limit of liability under the Umbrella Policy for the alleged claims of the

Stopkas upon American Family's insured Complete Flashings, Inc., is limited to the total sum of $1,000,000.00.

7.     That American Family has made payments in excess of $1,000,000.00 on behalf of its insured Complete Flashings, Inc., for the alleged claims of the Stopkas, thereby partially exhausting the Umbrella Policy per occurrence limit of $1,000,000.

8.     That on behalf of its insured, Complete Flashings, Inc., American Family has tendered the remaining unexhausted limits of the Umbrella Policy to the Stopkas for the alleged claims of the Stopkas against Complete Flashings, Inc.

9.     That the afore-described tender was rejected and refused by the Stopkas.

10.     That the total sum of the afore-described payments made under the Umbrella Policy and the tender of remaining unexhausted per occurrence limits of the Umbrella Policy totaled $1,000,000.00, thereby constituting the full limit of liability under the Umbrella Policy. Said total would have fully and completely exhausted the per occurrence limits of the Umbrella Policy, resulting in American Family having no further obligations of any type under the Umbrella Policy with respect to the Stopka claims against Complete Flashings, Inc.

WHEREFORE, the Defendant, American Family Mutual Insurance Company, states that the Plaintiffs are affirmatively barred from recovering any amount whatsoever.

Dated: October 13, 2011

                              Respectfully submitted,

                              PRETZEL & STOUFFER, CHARTERED

                              By: _____ /s/ Edward B. Ruff, III

24

Edward B. Ruff (#6181332)
Suzanne M. Crowley (#6194835)
Michael A. Clarke (#06197032)
Pretzel & Stouffer, Chartered
One South Wacker Drive, Suite 2500
Chicago, IL 60606-4673
(312)346-1973
*Attorneys for American Family Mutual Insurance*

25

## CERTIFICATE OF SERVICE

The undersigned certifies that Defendant's **ANSWER AND AFFIRMATIVE DEFENSES TO SECONDAMENDED COMPLAINT** was filed electronically this 13th day of **October, 2011**. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's electronic system.

ATTORNEY FOR PLAINTIFF
Steven D. Pearson
Christopher S. Hennessy
Meckler Bulger Tilson Marick & Pearson LLP
123 N. Wacker Drive, Suite 1800
Chicago, IL 60606
(312)474-7900
chris.hennessy@mbtlaw.com
steve.pearson@mbtlaw.com

Attorney for Augustine Custom Homes, Inc.
John M. McGuirk
Hoscheit, McGurik, McCracken & Cuscaden PC
1001 East Main Street, Suite G
St. Charles, IL 60174
(630)513-8700
jmc@hmcpc.com


                    /s/ Edward B. Ruff, III
                    Suzanne M. Crowley (IL Bar No. 6182765)
                    Edward B. Ruff, III (IL Bar No. 6181332 )
                    Michael A. Clarke (IL Bar No. 06197032)
                    Pretzel & Stouffer, Chartered
                    One South Wacker Drive - Suite 2500
                    Chicago, Illinois 60606
                    Telephone:    (312) 578-7686
                    Fax:          (312) 346-8242
                    E-Mail: scrowley@pretzel-stouffer.com
                    *Attorneys for American Family Mutual Insurance Company*