**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MICHAEL STOPKA, MARILYN STOPKA, and CHATEAU ARLINGTON, LLC, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | Case No.: 10-CV-6034 |
| | ) | Judge Darrah |
| AMERICAN FAMILY MUTUAL INSURANCE COMPANY, INC. a Wisconsin Corporation, | ) ) ) | Magistrate Ashman |
| | ) | |
| Defendant. | ) | |

**DEFENDANT AMERICAN FAMILY MUTUAL INSURANCE COMPANY'S**
**MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION**
**FOR SUMMARY JUDGMENT**

NOW COMES the Defendant, American Family Mutual Insurance Company ("American

Family"), through its attorneys, Pretzel & Stouffer, Chartered, pursuant to Rule 56 of the Federal

Rules of Civil Procedure and respectfully requests this Honorable Court award summary

judgment in favor of American Family and against Plaintiffs Chateau Arlington, LLC, Marilyn

Stopka and Michael Stopka (hereinafter collectively the "Stopkas") on all counts of theSecond

Amended Complaint.  In support thereof, American Family states as follows:

**ARGUMENT**

**I.    Standard of Review**

A motion for summary judgment should be granted when the pleadings, depositions, and

admissions on file disclose that there is no genuine issue of material fact, and that the moving

party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c).  The moving party is entitled

to judgment as a matter of law if the nonmovant fails to make a sufficient showing of an element

of its case with respect to which it has the burden of proof.  *Celotex v. Catrett*, 477 U.S. 317, 325

(1986). Once the moving party shows that there is no genuine issue of material fact, the burden shifts to the nonmoving party to designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 323. The mere existence of a scintilla of evidence in support of plaintiff's position is not sufficient to create a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## II. The Stopkas' First Claim – Breach of Contract Fails Due to a Lack of a Meeting of the Minds and a Want of Consideration.

In order to prevail on an action for breach of contract, Illinois requires a plaintiff to prove: "(1) the existence of valid and enforceable contract; (2) performance by the plaintiff; (3) breach of the contract by the defendant; and (4) resultant injury to the plaintiff." *Gonzalzlez v. Am. Exp. Credit Corp.*, 733 N.E.2d 345, 351 (Ill. App. Ct. 2000). The Stopkas allege that they entered into an oral contract with American Family whereby American Family would directed and control remediation efforts and restore the Residence to its pre-fire condition. (Dkt. # 34, 2d. Am. Compl. ¶¶ 46.) The Stopkas further allege that in consideration for this agreement, they offered to not immediately pursue legal remedies against Complete Flashings, Inc. or American Family. (Dkt. #34, 2d Am. Compl. ¶ 48.) In this case, the the evidence illustrates that there was never a meeting of the minds with respect to the terms of the alleged contract and there was no bargained for consideration.

In order for an oral contract to exist, the parties must have a meeting of the minds with respect to its terms and must have intended to be bound thereby. *Podolsky v. Alma Energy Corp.*, 143 F.3d 364, 369 (7th Cir. 1998). Basic contract law requires the terms to be definite and certain. *Midland Hotel Corp. v. Reuben H. Donnelley Corp.*, 515 N.E.2d 61, 65 (Ill. 1987); *Trittipo v. O'Brien*, 561 N.E.2d 1201, 1207 (Ill. App. Ct. 1990). Not only must the terms be

2

definite and certain,[1] there must be a meeting of the minds with respect to the terms of the contract. *Lampe v. O'Toole*, 685 N.E.2d 423, 425 (Ill. App. Ct. 1997). Accordingly, in situations where it appears that the language used or the terms proposed are understood differently by the parties, there is no meeting of the minds and no contract exists. *Trittipo*, 561 N.E.2d at 1207 (citing *Vandevier v. Mulay Plastics, Inc.* 482 N.E.2d 377 (Ill. App. Ct. 1985)). Almost 80 years ago, the Illinois Appellate Court explained:

> It is not enough that the parties, circumstances, and possible considerations are present at the same time and place, to make a contract. There must be a common definite meeting of intent of two parties, in selecting or accepting from the elements of the contract present, those items essential to a complete contract, as their contract.
>
> \* \* \*
>
> A feeling of certainty even, in the mind of the observer, that a party in position to contract would surely agree to terms present in the situation disclosed, does not evoke a contract from a plausible situation to contract. The agreement must actually be made by the parties to the alleged contract. It must be shown that those parties selected and concurred in the terms of the contract, or no contract exists.

*Bartlett v. Lauff*, 271 Ill.App. 551, 554 (Ill. App. Ct. 1933). Here, the burden is on the Stopkas to demonstrate sufficent definiteness to render the contract enforceable. *Wait v. First Midwest Bank/Danville*, 491 N.E.2d 795, 801 (Ill. App. Ct. 1986).

In addition to the requirement that a contract's terms be definite, consideration supporting the purported contract must be bargained for. *Am. Airlines, Inc. v. Department of Revenue*, 319 N.E.2d 28, 32 (Ill. 1974). A performance or promise does not constitute consideration unless bargained for by the parties. *City Nat'l Bank v. Russell*, 615 N.E.2d 1308, 1312 (Ill. App. Ct. 1993) ("However, the mere fact that the creditor eventually did forbear is not consideration unless the forbearance was pursuant to an agreement between the parties for such forbearance.");

---

[1] Contract terms are ambiguous if they can be reasonably interpreted in more than one way due to lack of indefiniteness of the language or the potential for double meanings. *William Blair & Co., LLC v. FI Liquidation Corp.*, 830 N.E.2d 760, 769 (Ill. App. Ct. 2005).

*Garber v. Harris Trust & Sav. Bank*, 432 N.E.2d 1309, 1313 (Ill. App. Ct. 1982); *First Nat'l Bank v. Chapman*, 366 N.E.2d 937, 941 (Ill. App. Ct. 1977) ("The mere fact that the bank did in fact forbear is insufficient consideration if such forbearance was not pursuant to an agreement between the parties for such forbearance").

In this case, the Stopkas have failed to establish a meeting of the minds, that terms to the purported contract are definite and certain, and that the "consideration" for the alleged contract was bargained for. Primarily, it is important to note that on numerous occasions, Mr. Stopka and his agent Mr. Wolowicki testified that they never entered into a contract with American Family to pay beyond its $2,000,000 policy limits. Mr. Stopka testified:

> Q:   Mr. Hayes never stated that American Family would pay beyond their limits of $2 million, correct?
>
> A:   He never mentioned anything ever about the $2 million, so the answer is yes. He never said it because it never came up ever.

(American Family's Statement of Facts (hereinafter "SOF") ¶ 28.) Mr. Wolowicki similarly testified:

> Q:   Did you enter into any contract with American Family on behalf of the Stopkas related to the fire of September 10, 2008?
>
> A:   No.

(SOF ¶ 26.)

> Q:   The first premise was there's no oral agreement or contract indicating between you and Mr. Hayes from American Family that if the Stopkas don't sue Complete Flashings, American Family will pay beyond two million dollars. And you said there was no such agreement; do you recall that discussion?
>
> A:   Yes.
>
> Q:   I'm going to ask you the same as it relates to American Family now. Similarly, there was no oral contract or agreement between the Stopkas where you said we won't sue American Family if American Family agrees to pay greater than its two million dollar policy limits, true?

4

A:     Nothing was finalized, true.

(SOF ¶¶ 34; *see also* SOF ¶¶ 25-33; 35-36.)

Additionally, the terms of the alleged contract are so indefinite as to preclude the Court

from finding the existence of a contract.  Specifically, the alleged contract fails to address the

limits of American Family's liability with respect to its response to the Fire.  It is important to

remember that American Family is an insurance company and responded to the Fire based on a

claim made under the policies issued to its insured Complete Flashings.  The Stopkas are not

parties to that insurance agreement.  Those policies carry an aggregate limit of two million

dollars.  (SOF ¶ 9.)  The Stopkas knew both that American Family was an insurance company

and that its policy was limited to two million dollars.  (SOF ¶¶ 21-22.)    Notwithstanding the

awareness of the policies and their limits, the Stopkas and American Family never discussed

waiver of the two million dollar policy limit.  (SOF ¶¶ 28, 31, 35-36.)  Mr. Wolowicki testified:

> Q:     So, you cannot definitively state and you're not going to state in court in
> 2008 we had this discussion, and Mr. Hayes agreed to pay on behalf of
> American Family specifically using words beyond two million dollar
> policy limits, true?
>
> A:     That statement I could not make.
>
> Q:     You are saying some time in mid 2009 to fall of 2009 he specifically said
> those words, is that what you're saying?
>
> A:     Specifically said those words?
>
> Mr. Ruff:     Yes.
>
> The Witness:  No.
>
> Q:     So, Mr. Hayes never said that American Family would pay beyond its two
> million dollar policy limit, true?
>
> A:     Those words, true.

(SOF ¶ 32; *see also* SOF ¶ 29.)

Simply put, the parties never discussed the key portion of the alleged contract that the Stopkas are trying to enforce, that American Family would waive its policy limits, and therefore it never became part of any alleged contract. Thus, there was no meeting of the minds and the Stopkas are unable to establish the requirement elements of the alleged contract.

In addition to a lack of a meeting of the minds with respect to American Family's potential liability, the "consideration" allegedly offered by the Stopkas was not bargained for. In the Second Amended Complaint, the Stopkas allege that "[a]s consideration for American Family's offer to restore the Residence to its pre-fire condition, the Plaintiffs did not immediately pursue legal remedies against either Complete Flashings, Inc. or American Family …." (Dkt. # 34, 2d Am. Compl. ¶ 48.) However, this "consideration" was never discussed by the parties and was in no way bargained for by American Family. Mr. Wolowickli testified:

> Q: So, again, go back. You never offered as consideration for American Family paying beyond its two million dollar policy limit that the Stopkas would forgo suing Complete Flashings, true?
>
> A: Those words, true.
>
>       *   *   *
>
> Q: I'm talking about an actual agreement though. No agreement was ever entered into oral or in writing between you representing the Stopkas and Mr. Hayes representing American Family that in consideration for not suing Complete Flashings, American Family would bay beyond its policy limits of two million dollars, true?
>
> A: True.

(SOF ¶ 32; *see also* SOF ¶¶ 33-34.)

This testimony establishes that the parties never discussed the Stopkas delaying suit against American Family or Complete Flashings as consideration for any promise by American Family. Therefore, regardless of whether the Stopkas did in fact delay filing suit, the delay

cannot establish valid consideration where it was not bargained for. *See, e.g., First Nat'l Bank*, 366 N.E.2d at 941 ("The mere fact that the bank did in fact forbear is insufficient consideration if the such forbearance was not pursuant to an agreement between the parties for such forbearance").

It is apparent that there was no meeting of the minds between the Stopkas and American Family. The lack of a meeting of the minds, definite and certain terms, and bargained for consideration allows the Court to grant summary judgment in favor of American Family on the First Claim – Breach of Contract.

## III. The Stopkas' Promissory Estoppel Count Fails For Lack of an Unambiguous Promise, Reasonable Reliance, and A Detriment to the Plaintiffs.

"Promissory estoppel is not a doctrine designed to give a party . . . a second bite at the apple in the event it fails to prove a breach of contract." *All-Tech Telecom, Inc. v. Amway Corp.*, 174 F.3d 862, 869-870 (7th Cir. 1999). The doctrine, recognized both by Illinois and federal courts, requires that the plaintiff establish: (a) an unambiguous promise; (b) reasonable reliance on the promise; (c) foreseeability of reliance; and (d) actual reliance by the promisee to his or her detriment. *Quake Constr., Inc. v. Am. Airlines, Inc.*, 565 N.E.2d 990, 1004 (Ill. 1990); *Ziese v. Ramada Inns, Inc.* 463 F.2d 1058, 1060 (7th Cir. 1972) ("In order to be enforceable, the promise must be unequivocal.").

### A. The Plaintiffs Cannot Establish an Unambiguous Promise.

The Stopkas cannot establish an "unambiguous promise" by American Family sufficient to support a claim for promissory estoppel. In support of the promissory estoppel action, the Stopkas allege that American Family promised to "restore the Residence to its pre-fire condition" and that American Family would return the home to the condition it was in "five minutes before the fire started." (*See* Dkt. # 34, 2d Am. Compl. ¶¶ 67, 68.) These statements, on

7

their face, are not sufficiently definite to support an action for promissory estoppel. Further, through the course of discovery, the Stopkas have attempted to alter the nature of the promise allegedly made. For instance, in the course of the depositions of two American Family officers, the Stopkas' counsel represented the alleged "promise" as follows:

> Q:    Whose decision was it at American Family to renege on the promise that Hayes made to the homeowners to restore the home to its pre-fire condition irrespective of the two million dollars in limits of the policies?

(Dep. of James Saletri, *attached to* American Family's SOF as Ex "H," at 117:13-17.)

> Q:    Whose decision at American Family was it to renege on the promise that Hayes made to the Stopkas, to the homeowners, to restore the home to its pre-fire condition irrespective of the $2,000,000 limits of the American Family policies?

(Dep. of Jim Anderson, *attached to* American Family's SOF as Ex."I," at 147:22-148:2.)

Counsel's inclusion of the qualifier regarding the policy limits emphasizes the ambiguity in the alleged promises. Specifically, even if American Family did state that it would "restore the Residence to its pre-fire condition" or that it would return the home to its condition "five minutes before the fire started" these statements do not address the issue of the extent of American Family's financial commitment to do so. This is especially important because American Family responded to the Fire as an insurance company responding to a liability claim pursuant to an insurance policy issued to a subcontractor on the project, which carried specific limits. The Stopkas inability to establish a definite promise in this regard allows the Court to enter summary judgment in favor of American Family on the Fourth Claim – Promissory Estoppel (Pleading In The Alternative To First Claim).

### B.    **The Stopkas' Alleged Reliance Was Not Reasonable.**

As Judge Posner has noted, "the essence of the doctrine of promissory estoppel is not that the plaintiff have reasonably relied on the defendant's promise, but that he have reasonably

8

relied on its being a promise in the sense of legal commitment, and not a mere prediction or aspiration or bit of puffery." *Garwood Packaging, Inc. v. Allen & Company, Inc.*, 378 F.3d 698 705 (7th Cir. 2004); *see also All-Tech Telecom, Inc. v. Amway Corp.*, 174 F.3d 862, 869 (7th Cir. 1998) ("A promisee cannot be permitted to use the doctrine to do an end around the rule that puffing is not actionable as misrepresentation, or around the parol evidence rule."). That is, reliance on "empty superlatives on which no reasonable person would rely" is not reasonable and therefore will not support an action for promissory estoppel. *All-Tech Telecom, Inc.*, 174 F.3d at 868. "There are some kinds of talk which no sensible man takes seriously, and if he does he suffers from credulity." *Id.*

In this case, not only are the "promises" relied on by the Stopkas so ambiguous as to preclude the application of promissory estoppel, but they are also tantamount to "puffing" and therefore do not support reasonable reliance. The phrase "five minutes before the fire" is the type of superlative on which the Stopkas could not have *reasonably* relied. It is also unreasonable for the Stopkas to claim reliance on an insurance field adjuster's alleged promise to, in effect, waive the limits of American Family's insurance policy and bind the company to potentially limitless financial responsibility in order to place the Residence in the state it was "five minutes before the fire." (SOF ¶¶ 37-38.) The Stopkas are not "naïfs who got suckered into raising Chinchillas in the 1950s." *All-Tech Telecom, Inc.*, 174 F.3d at 868. Mr. Stopka is a successful businessman who, for the last 23 years, owned and operated a business that averaged $19.5 million in annual sales from 2006—2010. (SOF ¶ 12.) His agent, Jerry Wolowicki, is a certified public accountant who has owned and operated his own accounting firm for the past 25-30 years. (SOF ¶ 13.) It is unreasonable for either Mr. Stopka or Mr. Wolowicki to rely on a "promise" that American Family would waive its policy limits and assume an unlimited financial

obligation in an effort to return the Residence to the state it was in "five minutes before the fire."

As such, American Family is entitled to summary judgment on the Promissory Estoppel claim.

### C. **The Stopkas Fail to Establish Detrimental Reliance.**

Illinois courts have interpreted detrimental reliance as requiring an action or forbearance of a substantial character that generally is associated with the expenditure of funds or the incurring of legal liability. *Bank of Marion v. Robert "Chick" Fritz, Inc.*, 311 N.E.2d 138, 140 (Ill. 1974); *Bolden v. Gen. Accident Fire and Life Assurance Corp., Ltd.*, 456 N.E.2d 306, 309-310 (Ill. App. Ct. 1983); *see also S.M. Wilson & Co. v. Prepakt Concrete Co.*, 318 N.E.2d 722 (Ill. App. Ct. 1974) (applying promissory estoppel where plaintiff general contractor suffered financial loss as a result of relying on bid by subcontractor that later refused to perform); *Illinois Valley Asphalt, Inc. v. J.F. Edwards Constr. Co.*, 413 N.E.2d 209 (Ill. App. Ct. 1980) (same). Accordingly, Illinois courts have found promissory estoppel inapplicable in cases where the plaintiff's "detrimental reliance" consists of a delay in filing a lawsuit and the plaintiff is not precluded from filing suit based on the statute of limitations. *Bolden*, 456 N.E.2d at 310-11.

In *Wells v. Lueber*, 358 N.E.2d 293 (Ill. App. Ct. 1976), the court considered whether a delay in filing a lawsuit satisfied the detrimental reliance element of a promissory estoppel action. In that case, subsequent to an automobile accident, negotiations between a purported defendant's insurance company and the plaintiff took place both prior to and subsequent to the expiration of the statute of limitations. In the course of these discussions the insurance company conceded liability to the plaintiff's attorney, made numerous settlement offers, and represented that the case could be settled without suit. *Wells*, 358 N.E.2d at 294-95. After explaining that generally, a mere delay in filing a lawsuit would not be sufficient to support a claim of estoppel, the court found that because the insurance company's representations were "calculated to lull the

plaintiff into a reasonable belief that the case would be settled without suit and that the defense of the statute of limitations would not be asserted," the insurance company would be estopped from later relying on the statute of limitations as a defense. *Id.*

*Bank of Napeville v. Catalano*, 408 N.E.2d 441 (Ill. App. Ct. 1980), is also instructive. In that case, the plaintiff-bank mistakenly made a payment to the defendants. The bank then filed a complaint for restitution against the defendants seeking to recover the mistaken payment. Defendants argued that the bank could not obtain restitution because the defendants detrimentally relied on the plaintiff-bank's payment by refraining from bringing suit against the bank. *Bank of Naperville*, 408 N.E.2d at 446. The appellate court disagreed and found that because the defendants' purported claim was not barred by the statute of limitations and could be brought at a later time that ther was not a change in position sufficient to avoid restitution. *Id.*

The Illinois Appellate Court reached a similar result in *Falco, Inc. v. Bates*, 334 N.E.2d 169 (Ill. App. Ct. 1975). In that case, the defendant provided a check to the plaintiff-hotel in order to satisfy an outstanding bill owed to the hotel by the third-party. The defendant later stopped payment on the check. On appeal, the court found that the plaintiff offered no evidence of detrimental reliance on the defendant's drawing of the check. *Id.* The plaintiff's decision not to pursue a civil or criminal suit did not constitute the type of "action or forbearance of a definite and substantial character" necessary to invoke the promissory estoppel doctrine. *Id.*

In this case, the Stopkas cannot establish the detrimental reliance.[2] Michael Stopka and Mr. Wolowicki both repeatedly testified that the Stopkas never refrained from doing anything with respect to other available insurance coverage based on any alleged promise by American

---

[2] The Second Amended Complaint is unclear regarding how the Stopkas detrimentally relied on American Family's purported "promise." The sole allegation addressing detrimental reliance in the Promissory Estoppel count is Paragraph 71. That provides, "To the detriment of the Plaintiffs, American Family breached its promise to Plaintiffs in one or more of the following ways …" (Dkt. #34, 2d Am. Compl. ¶ 71.)

Family. (SOF ¶¶ 22-24.) Further, to the extent that the Stopkas argue that they detrimentally relied on American Family's "promise" by not immediately filing a lawsuit, the argument must fail. Primarily, delay in filing a lawsuit does not qualify ad detrimental reliance where the statute of limitations for the underlying action has not expired. *Bolden*, 456 N.E.2d at 310-11; *Wells*, 358 N.E.2d at 294-95; *Bank of Naperville*, 408 N.E.2d at 446*; Falco*, 334 N.E.2d at 169. Here, five year statute of limitations for filing an action against Complete Flashings has not expired, since the fire took place on September 10, 2008. *See* 735 ILCS § 5/13-205. Accordingly, as the Stopkas have neither waived any rights against other insurers based on American Family's "promises," nor lost the ability to sue Complete Flashings, the Stopkas cannot establish detrimental reliance. Accordingly, the Court should grant summary judgment in favor of American Family on Fourth Claim – Promissory Estoppel.

## IV. **American Family was not Negligent.**

The Stopkas' negligence action also fails. The Stopkas have not alleged that American Family owed them a statutory or common law duty. Rather, Plaintiffs allege that "American Family undertook a duty to the Plaintiffs…." (Dkt. # 34, 2d Am. Compl. ¶ 53.) To the extent that the Stopkas rely on the voluntary undertaking doctrine, American Family's duty is strictly limited to the scope of the undertaking—to retain contractors and pay the contractors for the efforts spent remediating the fire damage. The Stopkas fail to offer any evidence that American Family breached either of these alleged obligations.

A duty assumed based on the voluntary undertaking doctrine must be strictly limited to the scope of that undertaking. *Gaines v. Illinois Cent. R.R.*, 23 F.3d 1170, 1172 (7th Cir. 1994). Again, it is important to consider that American Family is an insurance company that was paying expenses due to its obligations pursuant to an insurance agreement issued to a subcontractor

12

whose actions started the Fire. To the extent that American Family "took control of the claim," American Family took control of making payments to contractors for conducting repairs; it did not conduct repairs itself. (SOF ¶¶ 45-47.) There is no evidence that American Family was either negligent in retaining contractors or failed to make payments to the contractors. Moreover, American Family does not, and did not in this case, direct contractors regarding how their work should be performed. (SOF ¶ 45.) Therefore, the record fails to illustrate that American Family breached the duties that the Stopkas allege that it voluntarily assumed. The Stopkas failure to offer evidence that American Family breached the limited duty it assumed allows the Court to enter summary judgment on Count II - Negligence.

## V.   The Court Should Enter Summary Judgment In Favor of American Family on the Stopkas' Third Claim – Declaratory Judgment.

Section 2201 of the United States Code creates a cause of action for declaratory judgments. That section provides that "[i]n a case of actual controversy within its jurisdiction … any court of the United States, upon filing of an appropriate pleading, may declare the rights and other legal remedies of any party seeking declaration, whether or not such relief is or could be sought." 28 U.S.C. §2201(a). Although the Declaratory Judgment Act provides the courts a basis for declaratory actions, it does not provide a litigant an absolute right for a declaratory judgment; rather, it merely confers discretion on the courts. *Public Affairs Associates, Inc. v. Rickover*, 369 U.S. 111, 112 (1962) ( "The Declaratory Judgment Act was an authorization, not a command. It gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so.") The standards generally to be applied in deciding whether to exercise discretion to hear a declaratory judgment action are whether "a declaratory judgment will settle the particular controversy and clarify the legal relations in issue." *Nucor Corp. v. Aceros Y Maquilas de Occidente, S.A. de C.V.*, 28 F.3d 572, 579 (7th Cir. 1994) (quoting *Sears, Roebuck*

13

*& Co. v. American Mut. Liability Ins. Co.*, 372 F.2d 435, 438 (6th Cir. 1967)). In making this determination, the court should look to factors including:

> (1) whether the judgment would settle the controversy;
>
> (2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue;
>
> (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata";
>
> (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach on state jurisdiction; and
>
> (5) whether there is an alternative remedy that is better or more effective.

*Nucor Corp.*, 28 F.3d at 579.

## A. **This case is not the type of case where the Court should exercise its discretion to issue a declaratory judgment.**

The Stopkas are not entitled to a declaratory judgment in this case. The Stopkas' declaratory judgment count does not ask the Court to interpret the American Family insurance policy and determine rights thereunder; rather, the Stopkas ask the Court to declare that American Family has "liability to the Plaintiffs for its own independent acts of negligence…." (Dkt. # 34, 2d Am. Compl. ¶ 65.) In this sense, the Stopkas ask the Court to find that American Family owed them a duty as a matter of law. Such a finding is properly reserved for the jury. Further, such a declaration would fail to advance the factors cited in *Nucor*. Primarily, the requested declaratory judgment would not resolve the controversy between the parties because the breach of contract, promissory estoppel, and negligence counts would remain. Second, a declaration that American Family is potentially subject to liability outside of the policy limits fails to clarify the relationship between the parties because the issue of whether the parties are in a contractual relationship remains unresolved. Finally, declaratory relief is not the proper remedy

in this case because this is not a coverage action. American Family's liability, if any, will arise out of the Stopkas' alleged breach of oral contract, negligence, and promissory estoppel counts. Accordingly, the case should be resolved on the basis of these counts; it should not be resolved, either in whole or in part, on a declaratory judgment action. Therefore, the Court should strike the Third Claim – Declaratory Judgment.

### B. Even if the Court considers the declaratory judgment, the issue is moot.

Even if the Court determines that it should entertain the declaratory judgment action, the issue is rendered moot by this motion. In the declaratory judgment action, the Stopkas' ask the Court to declare that "American Family's liability is not restricted by the $2,000,000 combined pre-occurrence limits" and that it has "liability to the Plaintiffs for its own independent acts of negligence …." (Dkt. # 34, 2d Am. Compl. ¶ 65.) However, as explained *supra*, the Stopkas cannot establish American Family is liable to the Stopkas under any theory alleged in the Second Amended Complaint. Accordingly, as no independent source of liability exists, the Stopkas' request for a declaration that American Family has liability to the Plaintiffs for its independent acts of negligence is moot. Therefore, the Court should strike the Stopkas' Third Claim – Declaratory Judgment.

## VI. CONCLUSION

WHEREFORE, Defendant American Family Mutual Insurance Company, respectfully requests grant summary judgment in favor of it and against the Plaintiffs Michael Stopka, Marilyn Stopka, and Chateau Arlington, LLC.

Respectfully submitted,

PRETZEL & STOUFFER, CHARTERED

By: _____/s/ Suzanne M. Crowley_____

15

Suzanne M. Crowley (IL Bar No. 6182765)
Edward B. Ruff, III (IL Bar No. 6181332 )
Michael A. Clarke (IL Bar No. 06197032)
Pretzel & Stouffer, Chartered
One South Wacker Drive - Suite 2500
Chicago, Illinois 60606
Telephone:                    (312) 578-7686
Fax:                          (312) 346-8242
E-Mail: scrowley@pretzel-stouffer.com
*Attorneys for American Family Mutual Insurance Company*

## CERTIFICATE OF SERVICE

The undersigned certifies **DEFENDANT AMERICAN FAMILY MUTUAL INSURANCE COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** was filed electronically this **17th day of February, 2012**. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's electronic system.

ATTORNEY FOR PLAINTIFF
Steven D. Pearson
Christopher S. Hennessy
Meckler Bulger Tilson Marick & Pearson LLP
123 N. Wacker Drive, Suite 1800
Chicago, IL 60606
(312)474-7900
chris.hennessy@mbtlaw.com
steve.pearson@mbtlaw.com

Attorney for Augustine Custom Homes, Inc.
John M. McGuirk
Hoscheit, McGurik, McCracken & Cuscaden PC
1001 East Main Street, Suite G
St. Charles, IL 60174
(630)513-8700
jmc@hmcpc.com

By: _____/s/ Suzanne M. Crowley_____
Suzanne M. Crowley (IL Bar No. 6182765)
Edward B. Ruff, III (IL Bar No. 6181332 )
Michael A. Clarke (IL Bar No. 06197032)
Pretzel & Stouffer, Chartered
One South Wacker Drive - Suite 2500
Chicago, Illinois 60606
Telephone:    (312) 578-7686
Fax:          (312) 346-8242
E-Mail: scrowley@pretzel-stouffer.com
*Attorneys for American Family Mutual Insurance*

17