IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL STOPKA, MARILYN STOPKA, ) <br> and CHATEAU ARLINGTON, LLC ) <br> ) <br> Plaintiffs, ) <br> v. ) <br> ) <br> AMERICAN FAMILY MUTUAL INSURANCE ) <br> COMPANY, INC. a Wisconsin Corporation, ) <br> ) <br> Defendant. ) | Case No. 10-cv-6034 <br> Honorable John W. Darrah <br> Magistrate Martin C. Ashman |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT
AMERICAN FAMILY MUTUAL INSURANCE CO., INC'S AMENDED
MOTION FOR SUMMARY JUDGMENT**

Plaintiffs Michael Stopka, Marilyn Stopka, and Chateau Arlington LLC (collectively, "Stopka") by their attorneys Steven D. Pearson and Christopher S. Hennessy of Meckler Bulger Tilson Marick & Pearson, LLP, submit this Memorandum of Law in Opposition to American Family's Amended Motion for Summary Judgment (Doc. #100) and Memorandum of Law in Support of Amended Motion (Doc. #101).

**INTRODUCTION**

This is a case about a broken promise by a company in the business of making promises. On September 10, 2008, a catastrophic fire engulfed large portions of a single family home being constructed by plaintiffs Mike and Marilyn Stopka, a fire unquestionably caused by the negligence of Complete Flashings, a contractor performing work on the roof. On September 11, 2008, while the ashes of their dream home were still smoldering, Gerald Hayes of American Family accepted liability of American Family's insured and then made a promise to the Stopkas -- that American Family would restore the Stopka's home to the condition it was in "five minutes before the fire." Believing that American Family would honor that promise and fix all the

damage caused by its insured, the Stopkas accepted American Family's word. The reason this case resulted is because before making his promise, Gerald Hayes did nothing to estimate the costs of repair to the Stopka's home. Nor did he evaluate whether repair or wholesale demolition (total loss) was the most cost-effective. Yet, Hayes was American Family's self-proclaimed fire expert and the Stopkas relied on that expertise when Hayes made his promise.

Initially, every action of American Family was consistent with fulfilling its promise. American Family immediately took control of the fire-ravaged site, hired contractors to perform demolition, secured the site, and set about to remediate the home. Indeed, American Family's contemporaneous internal records establish that American Family accepted responsibility for the fire and agreed to remedy the Stopka's loss. Only later, apparently when it realized this could not be done within the limit of the policy American Family wrote for Complete Flashings and American Family's expenditures neared those policy limits, did American Family assert that its promise had strings attached to it.

In reality, we now know from discovery that American Family's initial promise was motivated purely out of its own financial self-interest. Facing the prospect of defending Complete Flashings in a case where liability had already been conceded -- thus incurring both the costs to defend Complete Flashings in a losing proposition <u>and</u> the costs to pay the Stopkas -- American Family gambled that it could save itself money by controlling the post-fire remediation through Hayes' chosen contractors. In addition, Mr. Hayes had a second motivation in his decisions with respect to the Stopka loss, which was to keep funneling work to his preferred contractors, including his son. So, when American Family's gamble looked like it would not pay off, American Family abandoned the remediation and walked away from its promise, and later fired Mr. Hayes. This suit followed.

Discovery has unquestionably established both the promise American Family made through Gerald Hayes, and American Family's breach of that promise. Discovery has also established that the Stopkas suffered damages as a result of American Family's failures. Undeterred, American Family has filed a Motion for Summary Judgment (Doc. #100) and supporting Memorandum of Law (Doc. #101) (collectively, "Motion") on all Claims in Plaintiffs' Second Amended Complaint (Doc. #34) ("Complaint"). Yet as discussed below, there is no question that a reasonable jury could find for Plaintiffs and against American Family on the allegations in the Stopka's Complaint. As such, American Family's Motion should be denied. In addition, there is no genuine issue of fact that American Family promised to restore Plaintiffs' home to the condition it was in "five minutes before the fire," and this Court should therefore enter an order pursuant to Fed. R. Civ. P. 56(g) treating that fact as established in this case.

## STANDARD FOR SUMMARY JUDGMENT

Summary judgment is only proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). When considering the motion for summary judgment, all the evidence and the reasonable inferences that may be drawn from the evidence are viewed in the light most favorable to the Stopkas. Miller v. American Family Mutual Ins. Co., 203 F.3d 997, 1003 (7th Cir. 2000). Summary judgment should be denied if a "reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A defendant moving for summary judgment has the burden of showing "that there is an absence of evidence to support the [plaintiff's] case." Celotex, 477 U.S. at 325.

Moreover, under Fed. R. Civ. P. 56(g), a court considering a motion for summary

3

judgment may enter an order specifying uncontroverted material facts. Occidental Fire & Cas. Co. of N.C. v. Continental Bank N.A., 918 F.2d 1312, 1320 (7th Cir. 1990) (recognizing that "the district court may issue an order, similar to a pretrial order, listing the facts that are not in dispute"); See also National Union Fire Ins. Co. v. Ready Pac Foods, 782 F. Supp. 2d 1047, 1048 fn 3 (C.D. Cal. 2011). Significantly, while relief under Rule 56(g) is not made under separate motion (Arado v. General Fire Extinguisher Corp., 626 F. Supp. 506, 509 (N.D. Ill. 1985)), Rule 56(g) allows the court evaluating a motion for summary judgment to reduce the number of facts at issue at trial. National Union, 782 F. Supp. 2d at 1051-52.

## ARGUMENT

American Family cannot meet its initial burden that "there is an absence of evidence to support [Plaintiff's] claims." In fact, a reasonable jury could undoubtedly find for the Plaintiffs on the claims in their Complaint. In its Motion, American Family nevertheless argues that (1) there was no meeting of the minds or consideration to support an oral contract (Mot. at 2); (2) there was no unambiguous promise, reasonably relied upon by Plaintiffs to their detriment sufficient to support a claim for promissory estoppel (Mot. at 7); (3) that American Family was not negligent (Mot. at 12); and (4) that declaratory judgment is improper and unnecessary (Mot. at 13). Each of its arguments ignores the uncontroverted record and/or is based upon facts wholly irrelevant to the legal issues in the case.

### 1.     The Evidence Establishes The Elements Of A Contract

American Family first argues the Stopkas have failed to properly plead a breach of oral contract. (Mot. at 2-7). Specifically, American Family argues the Stopkas have failed to establish a meeting of the minds and consideration. (Mot. at 2). These arguments disregard both Illinois law and the factual record.

4

Under Illinois law, for an oral contract to exist, the parties must have a meeting of the minds on the terms, and the intent be bound. Podolsky v. Alma Energy Corp., 143 F.3d 364, 369 (7th Cir. 1998). An oral agreement is binding where there is "an offer, an acceptance, and a meeting of the minds regarding the terms of the agreement." Leavell v. Dep't of Natural Res., 923 N.E.2d 829, 841 (Ill. App. Ct. 2010). The issue of the "meeting of the minds" is the ultimate question of fact to be determined at trial (Edward M. Cohon & Assoc. v. First Nat'l Bank, 618 N.E.2d 676, 685 (Ill. App. Ct. 1993)), as is the existence or nonexistence of an oral contract itself. DeKalb Bank v. Purdy, 520 N.E.2d 957, 964 (Ill. App. Ct. 1988); Schrock v. Learning Curve Int'l, Inc., 744 F. Supp. 2d 768, 744 (N.D. Ill. 2010) (holding that material issues relating to the existence of an oral contract and the parties' intent are questions of fact to be determined by the trier of fact.)

In the present case, the record establishes the elements of an oral contract. Gerald Hayes admitted at deposition that he (on behalf of American Family) offered to the Stopkas that American Family would see to it that their home was restored to its pre-fire condition. (Pls.' LR56.1(b)(3)(C) Statement ¶ 1) ("Pls.' SMF"). There was no ambiguity in this statement:

> Q. When you made the representation to Mr. Wolowicki and Mr. Stopka that you intended based upon your experience to restore the Stopka residence to the state it was in five minutes prior to the fire, you knew full well what you were representing to them, didn't you?
> A: Yes
> Q: There was no ambiguity about that representation in your mind, was there?
> A: No

(Pls.' SMF ¶¶ 1, 14-15).

Mr. Stopka's deposition testimony likewise confirms exactly such a statement was made. (Pls.' SMF ¶ 1). American Family's Mr. Hayes understood exactly what he was promising (Pls. SMF ¶ 14), and he went about employing a specific plan regarding how American Family would

5

make good on that promise (Pls.' SMF ¶ 18) including the retention of contractors to perform demolition, stabilization of the building, and remediation. (Pls.' SMF ¶¶ 9-12, 18). As this Court has already found when denying American Family's motion to dismiss, this agreement by American Family to restore the home to its pre-fire condition "is sufficient to demonstrate that the parties had an understanding of the scope of American Family's obligations." (Doc. #71 at 6). Mr. Hayes' own testimony (given after this Court's ruling on the pleadings) amply supports this conclusion. Plaintiffs accepted the offer by American Family by allowing American Family to move forward through the efforts of contractors American Family retained and controlled. V&V Cement Contractors, Inc. v. LaSalle Nat'l Bank, 456 N.E.2d 655, 659 (Ill. App. Ct. 1983) (finding acceptance through post-agreement conduct). Thus, the uncontroverted record establishes both an offer by American Family and acceptance by Plaintiffs, as well as a meeting of the minds of the parties.

    Because American Family cannot credibly contest that there was a meeting of the minds regarding what Mr. Hayes promised, American Family now instead suggests that the agreement must inherently have had some limitation (Mot. at 5) and that Plaintiffs have failed to introduce any fact that the limitation was waived (Mot. at 5-6). American Family's revisionist argument plainly goes to the credibility of its own former employee, Mr. Hayes, who was since fired by American Family for engaging in the very behavior with other American Family accounts that he did with respect to the Stopkas. Moreover, this revisionist history directly contradicts the internal records of American Family. Within a month of the fire, American Family's own internal records demonstrate that it made the intentional decision not to put in writing either its acceptance of liability or any limitation on that acceptance, relying instead on Mr. Hayes. (Pls.' SMF ¶ 13). American Family cannot now credibly argue that the Stopkas are required to establish the

absence of a limitation, when American Family made the conscious decision to not articulate any such limitation in the first place.

Furthermore, American Family concedes that the Stopkas are not parties to the insurance contract between American Family and Complete Flashings (Mot. at 5). Nevertheless, American Family insists that Plaintiffs are somehow obligated to establish waiver in order to now establish the true scope of American Family's unfettered promise. (Mot. at 5-6). Under Illinois law, an insurance policy is a contract and "is subject to the same rules of interpretation that govern the interpretation of contracts." Erie Ins. Exchange v. Triana, 923 N.E.2d 861, 863 (Ill. App. Ct. 2010). Not only do contract terms only bind the parties (Gotham Holdings, LP v. Health Grades, Inc., 580 F.3d 664, 665 (7th Cir. 2009)), but parties to the contract cannot bind an entity not a party to the contract. In re Handy Andy Home Improvement Centers, Inc., No. 95 B 21655, 1997 WL 391772, at *6 (Bkrtcy. N.D. Ill., July 2, 1997); See also, Chicago College of Osteopathic Medicine v. George A. Fuller Co., 719 F.2d 1335, 1344-45 (7th Cir. 1983) (holding that a non-party to a contract must expressly agree to be bound by its terms).

American Family offers neither facts which support the conclusion that Plaintiffs somehow agreed to be bound by the terms of the American Family policy issued to Complete Flashings, nor law which suggests that the terms somehow automatically apply to American Family's conduct -- critical elements to support the argument that Plaintiffs have the burden of establishing waiver. Likewise, American Family cannot support the argument that American Family's promise is indefinite because it "fails to address the limits of American Family's liability with respect to its response to the Fire." (Mot. at 5). American Family plainly understood the scope of what was promised -- to restore the home to the condition it was in "five minutes before the fire" -- Gerald Hayes admitted exactly that in his deposition. (Pls.' SMF ¶

14). Moreover, Plaintiffs have sued American Family for American Family's failures (not living up to the promise made by Hayes), <u>not</u> the failures of Complete Flashings (starting their house on fire). (Doc. #34 2d Am. Compl. at 7-13). It is not Plaintiffs' obligation to establish waiver of the term of a contract between American Family and Complete Flashings in order to establish the existence of an unambiguous promise by American Family made to Plaintiffs, or the scope of American Family's liability. American Family offers nothing to the contrary.

American Family also attacks the elements of consideration, asserting that the consideration "was not bargained for." (Mot. at 6). Yet under Illinois law, "any act … that benefits one party … is sufficient consideration to support the formation of a contract." <u>Kalis v. Colgate-Palmolive Co.</u>, 787 N.E.2d 182, 183 (Ill. App. Ct. 2003). Furthermore, a change to one's detriment (or another's benefit) given in exchange for a promise is also consideration. <u>Land of Lincoln Sav. and Loan v. Michigan Ave. Nat'l Bank</u>, 432 N.E.2d 378, 384 (Ill. App. Ct. 1982).

Here, American Family unquestionably benefitted from the Stopkas' election not to pursue legal action against its insured, Complete Flashings, Inc. But for Hayes' promise, the Stopkas or their builder's risk insurer would have sued Complete Flashings and American Family would have then been required to additionally incur the costs to defend Complete Flashings, a cost in addition to its liability limits in its policy issued to Complete Flashings. (Pls.' SMF ¶¶ 21, 22). American Family understood fully that there was clear liability of Complete Flashings for the fire (Pls.' SMF ¶ 7). American Family understood that the Stopkas' options included a lawsuit against Complete Flashings for their damages. (Pls.' SMF ¶¶ 20-22). Mr. Wolowicki testified that he made an offer to Mr. Hayes to forego such a lawsuit. (Pls.' SMF ¶ 23). Mr. Wolowicki also testified that Mr. Hayes agreed to pay to repair the damage to the Stopka's home without regard to the limit of the Complete Flashings policy. (Pls.' SMF ¶ 36).

American Family recognized that its financial obligations to defend a suit could be well in excess of the limits of its policy. (Pls.' SMF ¶¶ 22, 24). The Stopkas' election to forego the pursuit of a lawsuit against Complete Flashings -- precisely what occurred here, and precisely what financially benefitted American Family -- is ample consideration to support the contract. Kalis, 787 N.E.2d at 183 (finding that forbearance to pursue a legal claim is adequate consideration to support a contract). This Court has so similarly found. (Doc. #71 at 7) ("Therefore, the Stopkas' decision to forego filing a lawsuit is sufficient consideration for the oral contract.")

### 2. The Evidence Supports A Claim For Promissory Estoppel

Pleading in the alternative to its claim for breach of contract, the Complaint includes a claim for promissory estoppel. Promissory estoppel is an action based upon detrimental reliance (Quake Construction, Inc. v. American Airlines, Inc., 565 N.E.2d 990, 1004 (Ill. 1990)), and a promise or declaration that "one will do … something specified." Derby Meadows Utility Co., Inc. v. Inter-Continental Real Estate, 559 N.E.2d 986, 995 (Ill. App. Ct. 1990). Promissory estoppel is a theory of equitable recovery where a promise is otherwise found to lack consideration. Prentice v. UDC Advisory Services, Inc., 648 N.E.2d 146, 150-51 (Ill. App. Ct. 1995); Quake Construction, 565 N.E.2d at 1004 (acknowledging a plaintiff's right to recover through promissory estoppel "despite the absence of a contract.")

Thus, while breach of contract and promissory estoppel may ultimately be mutually exclusive remedies, a plaintiff is unquestionably entitled to maintain an action for both breach of contract and promissory estoppel until there is either a party admission of a contract or a judicial finding of a contract. Prentice, 648 N.E.2d at 151; See also Cromeens, Holloman, Sibert, Inc. v. AB Volvo, 349 F.3d 376, 397 (7th Cir. 2002) ("[A] party is allowed to plead breach of contract, or if the court finds no contract was formed, to plead for quasi-contractual relief in the

9

alternative.") Thus even were this Court to find that no contract was formed, the Stopkas could proceed against American Family on the alternative theory of promissory estoppel.

The elements of promissory estoppel are an unambiguous promise, reasonably relied upon by a plaintiff to his detriment. Quake Construction, 565 N.E.2d at 1004. Here, the Stopkas have supported the allegations in the Complaint with substantive and uncontroverted factual testimony from Mr. Hayes, confirmed by independent witnesses. (Pls.' SMF ¶ 1). There is no question that American Family made the promise to the Stopkas. In addition, as noted above, by American Family's own admission, the promise was not ambiguous. (Pls.' SMF ¶¶ 14-15). Contrary to American Family's instant argument, that promise is not made ambiguous by leading questions from counsel during depositions (Motion at 8), which are not evidence (United States v. Cudlitz, 72 F.3d 992, 1002-03 (1st Cir. 1996)), and cannot alter the clear statement which Mr. Hayes admitted he made, under oath. In addition, based upon his stated experience in handling large fire-loss claims, Mr. Hayes intended for the Stopkas to rely on his promise (Pls.' SMF ¶¶ 8, 16). Finally, there can be no question that the Stopkas relied on that promise to their detriment, considering that post-fire remediation efforts were not properly performed and their home has not been restored to the condition it was in before the fire. (Pls.' SMF ¶¶ 31-33, 35).

Faced with the clear and unequivocal testimony of Mr. Hayes, American Family now resorts to undermining its own witness, who was fired after the Stopka loss was mishandled. In its Motion, American Family argues not only that the promise was ambiguous (Mot. at 7-8), but that it could not reasonably be believed (Mot. at 8-10). American Family even goes so far as to argue that the promise made by Mr. Hayes was little more than "empty superlatives" and "puffing." (Mot. at 9). In support of these absurd propositions, American Family relies almost exclusively on All-Tech Telecom, Inc. v. Amway Corp., 174 F.3d 862 (7th Cir. 1998) (Mot. at

10

9). In All-Tech, a company through its salesman represented that a certain technology product was "the best." On review, the Seventh Circuit found that such sales-related comments were puffery and could not be the basis of a claim of misrepresentation. 174 F.3d at 868. While the court also considered arguments related to promissory estoppel, the promises were unrelated to the puffery. Id. at 868-69. Ultimately, the Seventh Circuit upheld summary judgment on the promissory estoppel claim because it was duplicative of a warranty claim which had gone to the jury. Id. at 869-70.

American Family's reliance on All-Tech in this case is misplaced. In the present case, the day after the fire, Mr. Hayes promised Mr. Stopka that American Family would restore his home to its pre-fire condition (Pls.' SMF ¶ 1), and he took affirmative steps to carrying out that promise, including retaining contractors to perform the work. (Pls.' SMF ¶¶ 5-6, 9-12). Within three months of the fire, American Family had issued checks directly to Plaintiffs in excess of $280,000, and had issued direct payments to the contractors it had retained. (Pls.' SMF ¶ 34). In short, the conduct of Mr. Hayes and American Family was entirely consistent with -- and supported Plaintiffs' reasonable belief in -- the promise to restore the home to its pre-fire condition. American Family's clear, unequivocal promise and the steps to fulfill the promise, was hardly an "empty superlative" and American Family's arguments to the contrary are unsupported.

Finally, American Family argues that the Stopkas cannot establish detrimental reliance. (Mot. at 10-12). American Family bases its entire argument on the fact that the Stopkas can still file suit against Complete Flashings (Mot. at 10-11) and because of some speculative possibility of other potentially available insurance (Mot. at 11-12).[1] In fact, every case cited by American

---

[1] American Family is notably silent on who will pay for these efforts.

Family in its Motion limits detrimental reliance solely to the issue of the statute of limitations. (Mot. at 10-12). Again this argument completely ignores both fact and logic.

Plaintiffs have unquestionably relied on American Family's promise (Pls.' SMF ¶ 17), to their detriment. As alleged in the Complaint, and supported by documents disclosed in discovery, Plaintiffs have incurred costs to investigate, evaluate, and remediate the residence. (Pls.' SMF ¶ 35). In addition, Mr. Hayes insisted throughout that he could and would restore the home to its pre-fire condition, and he expended significant amounts of money in his failed attempts to do so. (Pls.' SMF ¶ 34). Despite being advised of ongoing smoke problems in the home and the continued need for remediation, Mr. Hayes abandoned all efforts to see through his promise. (Pls.' SMF ¶ 37). All the while, Plaintiffs incurred significant costs associated with the delays to construction (Pls.' SMF ¶¶ 28, 35), costs which American Family agreed to pay and which Plaintiffs have unquestionably now had to absorb and for which no speculative possibility of other available insurance would cover. (Pls.' SMF ¶¶ 29, 30). American Family cannot establish the lack of detrimental reliance based upon its own failure to see through on its promise.

Accordingly, this Court should reject American Family's arguments with respect to promissory estoppel, and deny American Family's motion for summary judgment as to Plaintiffs' Fourth Claim. Moreover, considering the undisputed record in this case, it is entirely appropriate and warranted for this Court to enter an order pursuant to Fed. R. Civ. P. 56(g), finding that there is no genuine issue in dispute regarding American Family's promise made to Plaintiffs to restore their home to its pre-fire condition "just as it had been five minutes prior to the fire," and thus American Family's promise is a "fact as established in the case." Fed. R. Civ. P. 56(g); Occidental Fire, 918 F.2d at 1320 ("the district court may issue an order, similar to a pretrial order, listing the facts that are not in dispute"); National Union, 782 F. Supp. 2d at 1051-

52 (finding that a court evaluating a motion for summary judgment can enter an order pursuant to Rule 56(g) which limits the number of facts at issue at trial).

### 3. The Stopkas' Negligence Claim Is Proper In Law And Supported By Fact

American Family argues that the Stopkas have failed to sufficiently establish either a duty or a breach of a duty. (Mot. at 12). This argument ignores both Illinois law with respect to the existence of a duty and the factual record which raises questions of fact regarding American Family's breach of that duty. As such, American Family's motion for summary judgment on Plaintiffs' negligence claim should also be denied.

First, to prevail on a negligence claim, a plaintiff must establish that the defendant owed a duty of care to the plaintiff, the defendant breached this duty, and the plaintiff incurred injury proximately caused by the breach. Adams v. Northern Illinois Gas Co., 809 N.E.2d 1248, 1257 (Ill. 2004). The existence of a duty is a question of law for a court to decide and the issues of breach and proximate cause are factual matters for a jury to decide. Id.

A duty on behalf of American Family is well supported under Illinois law, based upon the manner in which American Family elected to control the post-fire remediation efforts. Stefan v. State Farm Mutual Auto. Ins. Co., 672 N.E.2d 1329, 1334 (Ill. App. Ct. 1996) (holding that one who assumes to act, even though voluntarily, must perform the duty undertaken with "due care" and without negligence). Similarly, in Nelson v. Union Wire Rope Corp., 199 N.E.2d 769 (Ill. 1964), the Illinois Supreme Court (evaluating Florida law, but considering and citing to Illinois precedent) held that where a general contractor's liability insurer gratuitously undertook to make safety inspections to a construction site, that insurer had a duty to perform those inspections with due care, the insurer's control of the equipment in use at the time of injury being irrelevant:

> Defendant's duty ... arose ... by operation of law from defendant's own independent and gratuitous course of conduct. Moreover, plaintiff's charges of

13

> negligence are not based upon a defect in the equipment or upon conduct of [the contractor's] employees, but upon defendant's negligent performance of its gratuitous undertaking.

Nelson, 199 N.E.2d at 779.

In the present case, Plaintiffs have not alleged negligence against American Family based upon the conduct of American Family's insured, Complete Flashings, but rather based on American Family's own independent negligent performance of American Family's own undertaking. (Doc. #34 2d Am. Compl.). In addition -- and contrary to American Family's assertions (Mot. at 13) -- there are obvious questions of fact regarding American Family's control of the post-fire remediation. (Pls.' SMF ¶¶ 6, 9-11, 13, 19). There is no question that American Family selected, hired, and paid its own contractors to remediate the fire damage. (Pls.' SMF ¶¶ 9, 34). There is certainly a question of fact regarding whether American Family directed and controlled all the contractors involved in the post-fire work at the home. (Pls.' SMF ¶ 19). The contractors at the site hired by American Family -- with whom Mr. Hayes had a long-standing relationship, including a relationship that contributed to his being fired (Pls.' SMF ¶¶ 25, 27) -- failed to properly perform the remediation. (Pls.' SMF ¶ 33). As such, a reasonable jury could conclude that American Family undertook to control the remediation, proceeded to control the remediation, and breached its duties to the Stopkas regarding the post-fire remediation which was improperly performed.

### 4. Declaratory Judgment Is Assuredly Proper In The Present Case

Finally, as American Family notes, declaratory judgment is appropriate under several different circumstances, most notably where it "will settle the particular controversy and clarify the legal relations in issue." Nucor Corp. v. Aceros Y Maquilas de Occidente, S.A. de C.V., 28 F.3d 572, 579 (7th Cir. 1994). Specifically, "if the declaratory judgment will clarify and settle

14

the disputed legal relationships and afford relief from the uncertainty and controversy that created the issues, it is usually resolved rather than dismissed." Id. at 578.

In the present case, Plaintiffs seek a declaration that American Family's liability to Plaintiffs is not restricted or limited to the per-occurrence limits of the policies American Family issued to Complete Flashings. (Doc. #34 2d Am. Compl. ¶64). Considering that American Family has founded its entire defense of the present case on the premise that its liability is so limited (Mot. at 4), a declaration by this Court of that issue would unquestionably "clarify and settle the disputed legal relationships" between Plaintiffs and American Family. While American Family also argues that Plaintiffs' Third Claim should be stricken because American Family is entitled to summary judgment on all other independent sources of liability in the Complaint (Mot. at 15), that argument places the cart before the horse. For the reasons stated above, American Family is not entitled to summary judgment on any portion of Plaintiffs' Complaint.

## CONCLUSION

Plaintiffs Michael Stopka, Marilyn Stopka, and Chateau Arlington LLC request that this Court enter an Order denying American Family's Amended Motion for Summary Judgment (Doc. #100) in its entirety for the reasons stated above, and granting such additional relief as this Court deems proper under the circumstances.

Respectfully submitted,

    /s/ Christopher S. Hennessy
One of the attorneys for Plaintiffs

Steven D. Pearson (# 6190506) (steven.pearson@mbtlaw.com)
Christopher S. Hennessy (# 6237293) (christopher.hennessy@mbtlaw.com)
MECKLER BULGER TILSON MARICK & PEARSON LLP
123 N. Wacker Drive, Suite 1800
Chicago, IL 60606
Telephone:   (312) 474-7900
Facsimile:   (312) 474-7898
M:\14185\pleading\Resp004.sp.docx

15