# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL STOPKA, MARILYN STOPKA, and CHATEAU ARLINGTON, LLC, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No.: 10-CV-6034 |
| | ) | Judge Darrah |
| AMERICAN FAMILY MUTUAL INSURANCE COMPANY, INC. a Wisconsin Corporation, | ) ) ) | Magistrate Ashman |
| | ) | |
| Defendant. | ) | |

**PLAINTIFFS' LOCAL RULE 56.1(b)(3) STATEMENT IN OPPOSITION TO AMERICAN FAMILY MUTUAL INSURANCE COMPANY'S STATEMENT OF FACTS IN SUPPORT OF ITS AMENDED MOTION FOR SUMMARY JUDGMENT**

Plaintiffs Michael Stopka, Marilyn Stopka, and Chateau Arlington LLC (collectively, "the Stopkas") by their attorneys Steven D. Pearson and Christopher S. Hennessy of Meckler Bulger Tilson Marick & Pearson, LLP, submit this Response to American Family Mutual Insurance Company, Inc.'s Statement of Facts in support of its Amended Motion for Summary Judgment (Doc. #102) pursuant to Local Rule 56.1(b)(3)(B), and Statement of Additional Facts pursuant to Local Rule 56.1(b)(3)(C).

## PRELIMINARY STATEMENT AND GENERAL OBJECTIONS

American Family's Statement of Facts in Support of its Amended Motion for Summary Judgment (Doc. #102) contains a number of allegations that are conclusory, argumentative, openly misleading, improperly supported, and irrelevant to the arguments raised in American Family's Amended Motion for Summary Judgment (Doc. #100) and supporting Amended Memorandum of Law (Doc. #101). Plaintiffs accordingly object to these statements. American Family has so blatantly misrepresented witness testimony such that none of its characterizations

of "fact" can reasonably be believed.[1]

Local Rule 56.1(a)(3) requires a party moving for summary judgment to file with the Court a "statement of material facts as *to which the moving part contends there is no genuine issue* and that entitle the moving party to a judgment as a matter of law." (emphasis added). A "material fact" is a fact that is outcome-determinative of an issue under the governing law. U.S. Neurosurgical, Inc. v. City of Chicago, No. 02 C 4894, 2006 WL 752970, *1 (N.D. Ill., March 21, 2006) citing Insolia v. Philip Morris Inc., 216 F.3d 596, 598-99 (7th Cir. 2000).

Local Rule 56.1 is designed to "isolate legitimately disputed facts and assist the court in its summary judgment determination." U.S. Neurosurgical, 2006 WL 752970, at *3. When properly prepared, a Rule 56.1 statement provides the Court with a "roadmap" to evidence that supports a party's contention that summary judgment is warranted. Waldridge v. American Hoechst Corp., 24 F.3d 918, 923 (7th Cir. 1994). A Rule 56.1 statement should not include legal conclusions or arguments. Cady v. Miss Paige, Ltd., No. 02 C 4867, 2004 WL 1144044, * 4 (N.D. Ill., April 30, 2004). Furthermore, a Rule 56.1 statement should be concise and it should not contain unsupported factual assertions or immaterial facts. U.S. Neurosurgical, 2006 WL 752970, at * 4. Finally, by its very definition, a Rule 56.1 statement should only contain material facts "as to which the moving party contends there is no genuine issue." LR56.1(a)(3).

In Buttron v. Sheehan, No. 00 C 4451, 2003 WL 21801222 (N.D. Ill., Aug. 4, 2003), the court struck numerous paragraphs from the parties' Rule 56.1 statements because many of the paragraphs, and the documents attached to the Rule 56.1 statement, were immaterial to the issues

---

[1] For example, in ¶ 21 of American Family's Statement (*infra*), American Family blatantly misrepresents the deposition testimony of Jerry Wolowicki, asserting that an unequivocal answer of "no" is actually a "yes." American Family's Statement contains numerous other examples where the record directly contradicts what American Family asserts is an undisputed fact. (See, e.g., ¶¶ 19, 28, 30, 32, 36). Plaintiffs reserve all their rights to move for sanctions pursuant to Fed. R. Civ. P. 11(c) and for attorney fees and costs pursuant to 28 U.S.C. § 1927 necessitated by American Family's conduct regarding its misrepresentations of the record.

before the court. The court struck other paragraphs that mischaracterized statements made by the parties. The court also criticized the parties for their failure to present concise statements of fact free from superfluous detail. Similarly, in U.S. Neurosurgical, because the parties' Rule 56.1 submissions included immaterial facts and were not sufficiently concise, the court stated that "the Local Rule 56.1 materials are so deficient that neither party has demonstrated that there are no genuine issues of material fact." U.S. Neurosurgical, 2006 WL 752970, at *4.

Here, American Family's Rule 56.1 submission contains numerous improper statements. Many of American Family's "statements of fact" are argumentative and conclusory. For example, the existence of a contract under Illinois law (¶¶ 26, 34, 35) is a legal conclusion. Barnes v. Peoples Gas Light and Coke Co., 243 N.E.2d 855, 857 (Ill. App. Ct. 1968). Others are wholly redundant (see, e.g., ¶¶ 29-30, 36, 37; ¶¶ 32-35) or have absolutely no relevance to the arguments raised in the memorandum (see, e.g., ¶¶ 41-44, ¶¶ 51-54). In fact -- excepting the six paragraphs having to do with venue and jurisdiction (¶¶ 1-6), and taking out the redundant paragraphs -- almost half the paragraphs set forth in American Family's Rule 56.1 statement (¶¶ 7-8, 10-11, 14-20, 41-44, 51-54) are not even referenced in its memorandum, and others are referenced merely in passing.

More troubling than the redundant or irrelevant contents of American Family's statement are numerous assertions which either mischaracterize (see, e.g., ¶¶ 15, 17, 20) or blatantly misrepresent (see, e.g., ¶¶ 19, 21, 28, 30, 32, 36) deposition testimony, requiring Plaintiffs to refute these inaccuracies and identify for this Court the actual contents of the depositions. American Family's Rule 56.1 statement is so deficient, this Court, like the court in U.S. Neurosurgical, should either outright deny American Family's motion for summary judgment due to the failure to make a proper Rule 56.1 submission, or strike American Family's Rule 56.1

statement altogether.

Without waiving these general objections to American Family's Rule 56.1 statement, set forth below are Plaintiffs' paragraph-by-paragraph responses pursuant to Local Rule 56.1(b)(3)(B).

### THE PARTIES

1.    Plaintiffs, Michael Stopka and Marilyn Stopka (hereinafter "the Stopkas"), are a married couple and are residents of Arlington Heights, Illinois. (2d. Am. Compl., *attached hereto as* Exhibit "A", ¶ 1.)

**RESPONSE:** Admitted

2.    Plaintiff, Chateau Arlington, LLC (hereinafter "Chateau Arlington"), is an Illinois limited liability company of which Michael and Marilyn Stopka are the sole members. (Ex. A, 2d Am. Compl. ¶ 2.)

**RESPONSE:** Admitted

3.    Defendant, American Family Mutual Insurance Company, Inc. (hereinafter "American Family"), is a Wisconsin corporation with a principal place of business in Madison, Wisconsin. (Ex. A, 2d Am. Compl. ¶ 3.)

**RESPONSE:** Admitted

4.    Third-Party Defendant, Augustine Custom Homes, Inc., (hereinafter "Augustine"), is an Illinois Corporation with, on information and belief, a principal place of business in Geneva, Illinois.

**RESPONSE:** Admitted

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the underlying suit based on diversity of citizenship. 28

U.S.C. § 1332.

**RESPONSE:** Admitted

6.      Venue is proper in the Northern District of Illinois as a substantial portion of the events

or omissions giving rise to the claim occurred in Barrington Hills, Illinois, which is

located within the Northern District of Illinois.  28 U.S.C. § 1391(a)(2).

**RESPONSE:** Admitted

## THE FIRE AT THE STOPKAS' RESIDENCE

7.      On September 10, 2008, during the course of performing certain gutter installation work

on the home being constructed for the Stopkas at 10 Goose Lake Drive, Barrington Hills,

Illinois, 60010 (hereinafter "the Residence"), an employee of Complete Flashings, Inc.,

started a fire on the roof while using a blow torch (hereinafter the "Fire" or the

"Incident". (Ex. A, *see also* Deposition of Michael J. Stopka, *attached hereto as* Exhibit

"B", at 34:2-4.)

**RESPONSE:** Admitted

8.      As a result of the fire, the Residence was damaged and construction on the residence was

temporarily stopped. (*See, generally,* Ex. A, 2d Am. Compl. ¶¶ 19-21.)

**RESPONSE:** Admitted

## APPLICABLE INSURANCE COVERAGE

9.      It is not disputed that at the time of the Fire, American Family insured Complete

Flashings, Inc. through a Commercial General Liability Insurance policy, Inc. subject to a

$1,000,000 policy limit and an umbrella policy subject to a $1,000,000 limit of liability.

(Ex. A, 2d Am. Compl. ¶¶ 22, 23, 58; *see also*, American Family Answer to Second Amended Complaint, *attached hereto as* Exhibit "C," at ¶¶ 22, 23, 58.)

**RESPONSE:** Objection. This statement has no relevance to the issues in American Family's Motion for Summary judgment with respect to American Family's potential liability to Plaintiffs for American Family's conduct. Subject to and without waiving this objection, admitted.

10. It is not disputed that at the time of the Fire, the Residence was insured through a homeowner's insurance policy issued by Allied Property & Casualty Insurance Company, a Nationwide Company (hereinafter "Allied/Nationwide").

**RESPONSE:** Objection. This statement has no relevance to the issues in American Family's Motion for Summary judgment with respect to American Family's potential liability to Plaintiffs for American Family's own conduct. Subject to and without waiving this objection, admitted.

**THE DAY OF THE FIRE**

11. After the fire, a number of people gathered at the Residence including Mr. Stopka, his accountant Jerry Wolowicki, his insurance broker, Luke Praxmarer, the general contractor, Todd Augustine, and a representative of Complete Flashings, Mark Rosal. (Ex. B. Mi. Stopka Dep. at 41:16-42:3; 46:10-12; 46:16-18; 81:23-82:4; Deposition of Todd Augustine, *attached hereto as* Exhibit "D", at 151:14-18.)

**RESPONSE:** Admitted

12. Mr. Stopka is a successful businessman with a degree in business management that has owned his own business for the last 23 years that has averaged $19.5 million in annual

sales from 2006—2010. (Ex. B, Mi. Stopka Dep. at 6:6-7:11.)

**RESPONSE:** Objection. This statement has no relevance to American Family's motion for summary judgment. Subject to and without waiving this objection, the statement is admitted.

13.    Mr. Wolowicki is a certified public accountant that has owned his own business for the past 25-30 years. (Deposition of Jerry Wolowicki, *attached hereto as* Exhibit "E" at 8:1-2; 8:24-9:5.)

**RESPONSE:** Objection. This statement has no relevance to American Family's motion for summary judgment. Subject to and without waiving this objection, the statement is admitted.

14.    Gerald Hayes was not present at the scene on the date of the fire, September 10, 2008. (*See* Ex. B, Mi. Stopka Dep. at 80:1-12.)

**RESPONSE:** Objection. This statement has no relevance to, and does not form the basis of, any argument raised in American Family's motion for summary judgment. Subject to and without waiving this objection, the statement is admitted.

15.    Very little was discussed among those present on the date of the fire. (Ex. B, Mi. Stopka Dep. at 68:11-14.)

**RESPONSE:** Objection. This statement has no relevance to, and does not form the basis of, any argument raised in American Family's motion for summary judgment. This statement also mischaracterizes the deposition testimony of Mr. Stopka (Ex. A, Dep. of Mike Stopka at 68:15-18) that he could not recall what was discussed.

7

16.     Issues related to insurance were not "even in the picture" of what the Stopkas were discussing on September 10, 2008. (Ex. B, Mi. Stopka Dep. at 71:21-72:3.)

**RESPONSE:** Objection. This statement has no relevance to, and does not form the basis of, any argument raised in American Family's motion for summary judgment. Subject to and without waiving this objection, the statement is admitted.


### THE FOLLOWING DAY (SEPTEMBER 11, 2008)

17.     The next day, September 11, 2008, the following parties met at the Residence: Michael Stopka, Gerry Hayes, Mark Rosal of Custom Flashings, Luke Praxmarer, Jerry Wolowicki, Chris Mason of Nationwide Insurance Company, Todd Augustine; and Dan Dowell of Miner & East. (Ex. B, Mi. Stopka Dep. at 81:1-18; 83:23-84:22; *see also* Deposition of Dan Dowell, *attached hereto as* Exhibit "F", at 23:13-22. )

**RESPONSE:** Objection. This statement has no relevance to, and does not form the basis of, any argument raised in American Family's motion for summary judgment. This statement mischaracterizes the testimony of Mr. Stopka, who did not state that Dan Dowell was present (Ex. A, Dep. of Stopka at 83:24-84:22) and did not state that Mr. Rosal was involved in any meeting (Ex. A, Dep. of Stopka at 84:11-22). This statement is also not supported by the deposition testimony of Mr. Dowell as cited to by American Family. (Ex. B, Miner & East Rule 30(b)(6) Designee Dan Dowell at 23:13-22). Subject to and without waiving this objection, the statement is admitted as to Mr. Stopka, Mr. Praxmarer, Mr. Wolowicki, Mr. Mason, Mr. Hayes, and Mr. Augustine.

18.     Mr. Wolowicki, through an oral agreement with the Stopkas, was authorized to enter into contracts relating to the fire loss on behalf of the Stopkas. (Ex. E, Wolowicki Dep. at 50:20-51:4.)

**RESPONSE:** Objection. This statement has no relevance to, and does not form the basis of, any argument raised in American Family's motion for summary judgment. Subject to and without waiving this objection, the statement is admitted.

19.     Mr. Stopka cannot recall exactly what was discussed at the September 11, 2008, meeting. (Ex. B, Mr. Stopka Dep. at 90:7-91:5.)

**RESPONSE:** Objection. This statement blatantly misrepresents the deposition testimony of Mr. Stopka as cited by American Family. In his deposition, Mr. Stopka testified that could not remember "exactly what was discussed" but only in reference to a discussion with Mr. Mason. (Ex. A, Dep. of Stopka at 90:7-10). Mr. Stopka testified very clearly that on September 11, 2008, Mr. Hayes stated "Mike, my job is to put this house back exactly where it was 5 minutes before the fire" (Ex. A, Dep. of Stopka at 89:15-20), a statement confirmed by the testimony of Mr. Praxmarer (Ex. C, Dep. of Praxmarer at 36:22 to 37:10), Mr. Wolowicki (Ex. D, Dep. of Wolowicki at 194:7-9), and Mr. Hayes (Ex, E, Dep. of Hayes at 59:17-23). Mr. Stopka did testify that he did not remember "exactly" what anybody else said at the meeting (Ex. A, Dep. of Stopka at 90:17-24), but proceeded to testify at length (upon further questioning from American Family's counsel) regarding what generally was discussed. (Ex. A, Dep. of Stopka at 91:1-96:10).

20.     At the first meeting between Mr. Wolowicki and Mr. Hayes on September 11, 2008, Mr. Hayes never offered to pay beyond the two million dollar limit applicable to the

American Family insurance policy. (Ex. E, Wolowicki Dep. at 75:21-24.)

**RESPONSE:** Objection. This statement mischaracterizes the deposition testimony of Mr. Wolowicki as cited by American Family. According to the testimony of Mr. Wolowicki, Mr. Hayes "did not say that [the limit of the American Family policy] was two million dollars" at the September 11 meeting. (Ex. D, Dep. of Wolowicki at 75:1-11). Mr. Wolowicki also testified that by the time Mr. Hayes identified the two million dollar policy limit, Mr. Hayes also stated that American Family would pay beyond it. (Ex. D, Dep. of Wolowicki at 76:12-16).

## THE STOPKAS' COVERAGE DECISION

21.   No later than September 16, 2008, the Stopkas' agent, Jerry Wolowicki, was aware that the American Family insurance policy carried $2,000,000 in liability coverage limits. (Ex. E, Wolowicki Dep. at 67:8-14; 69:7-10; 240:4-11; *see also* Mason (9-16-2008) Letter, *attached hereto as* Exhibit "M"; *see also* Deposition of Gerald Hayes, *attached hereto as* Exhibit "O", at 221:4-10 (testifying that within 24 to 48 hours, Mr. Hayes informed the Stopkas what coverage was available))

**RESPONSE:** Objection. This statement unquestionably relates to a fact over which the parties have an issue and thus is not appropriate under LR56.1(a)(3). As such, ¶ 21 should be stricken in its entirety. In addition, this statement blatantly misrepresents the deposition testimony of Mr. Wolowicki as cited by American Family. In his deposition -- including in the passages cited by American Family in ¶ 21 -- Mr. Wolowicki actually testified as follows:

Q:     Reiterating that American Family had a two million dollar in liability

10

coverage limits, correct?

A:     Well, no, that's not the way I read it.

(Ex. D, Dep. of Wolowicki at 67:8-11)

Q:     This was discussed by Mr. Hayes prior to September 16, 2008, true?

A:     Wait. It was disclosed?

Q:     That American Family carried two million in liability coverage limits, true?

*  *  *

A:     No.

Q:     You certainly were aware by September 16th that American Family carried two million in liability coverage limits, true?

A:     No

(Ex. D, Dep. of Wolowicki at 68:8-20)

Q:     So you saw it on or about September 16, 2008, true?

A:     Yes.

Q:     And you knew that that statement or representation had been made prior to that time, true?

A:     I knew that those words had been put on the piece of paper.

Q:     No, no, no. You knew that the statement had been made by Mr. Hayes representing American Family that American Family by September 16, 2008 had disclosed that American Family carried two million in liability coverage limits, true?

*  *  *

A:    No

(Ex. D, Dep. of Wolowicki at 69:7-70:9).

Q:    You would agree that there's documentation prior to December 2008 that you, in fact, knew of a two million dollar policy limit by American Family for Complete Flashings, true?

A:    Prior to December of what?

Q:    2008

A:    If you consider a letter from Nationwide documentation, then I would say yes.

(Ex. D, Dep. of Wolowicki at 240:4-11).

The clear deposition testimony of Mr. Wolowicki in the passages cited to by American Family does not even arguably support ¶ 21, much less actually support ¶ 21. Any suggestion otherwise is misleading. Where Mr. Wolowicki clearly denied or answered "no" to questions in his deposition (Ex. D, Dep. of Wolowicki at 68:20, 70:9), American Family suggests in ¶ 21 the exact opposite answer. Although Mr. Wolowicki conditionally answered "yes" in the last sequence cited by American Family (Ex. D, Dep. of Wolowicki at 240:11), that discussion related to December 2008, not September 16, 2008, as suggested by American Family in ¶ 21.

22.    As of November 21, 2008, the Stopkas had not made a decision regarding whether to pursue an insurance claim with Nationwide/Allied or with American Family. (Ex. B, Mi. Stopka Dep. at 115:9-12; 117:1-7; *see also* Nationwide/Allied Correspondence, collectively *attached hereto as* Exhibit "G".)

**RESPONSE:** Objection. Support for this assertion is not contained in the deposition testimony cited by American Family. (Ex. A, Dep. of Stopka at 115:9-12; 117:1-7). As of

September 11, 2008, Mr. Hayes had already promised to restore the home (Ex. A, Dep. of Stopka at 89:15-20) and Mr. Hayes had already brought in Miner & East to start work (Ex. A, Dep. of Stopka at 91:21). By November 21, 2008, American Family had already begun issuing checks directly to the Stopkas. (Pls.' SMF ¶ 34). Although the Stopkas had not determined by November 21, 2008, the role (if any) of Nationwide/Allied (as set forth in American Family's Rule 56.1 Ex. G), that is irrelevant to the issues raised in American Family's motion for summary judgment.

23.    Although the Stopkas had decided to allow American Family to "take the lead" in responding to the Incident, the Stopkas never waived rights against any other insurer, including Nationwide/Allied in case the limits of the American Family insurance policy were exhausted. (Ex. B, Mi. Stopka Dep. at 118:20-24; 121:20-123:6; 125:11-16; 129:21-24; Ex. E, Wolowicki Dep. at 83:13-18; 89:12-16; 90:15-91:5; 104:7-15; 118:12-24; 131:2-7; 239:23-240:3.)

**RESPONSE:** Objection. This statement misstates the record, as Mr. Stopka testified that he would not limit any of his rights in any way. (Ex. A, Dep. of Stopka at 121:5-8).

24.    The Stopkas, through their agent Mr. Wolowicki, never refrained from doing anything with respect to their other insurance, including Nationwide/Allied, based on representations by Mr. Hayes. (Ex. E, Wolowicki Dep. at 93:1-94:7; 239:23-240:3.)

**RESPONSE:** Objection. This statement misstates the complete record, as "refrained from doing anything" grossly overstates the testimony cited. The Stopkas' decision to allow American Family to take control of the remediation -- and to not seek indemnification

13

from Allied -- was based upon the actions of and representations by Mr. Hayes regarding his extensive experience with fire losses. (Ex. A, Dep. of Stopka at 99:5-12); (Ex. D, Dep. of Wolowicki at Ex. 4). The citations to the deposition of Mr. Wolowicki at 93:1-94:7 and 239:23-240:3, involved a discussion of the Stopkas not "giving up any rights" related to Allied.


## AMERICAN FAMILY NEVER ENTERED A CONTRACT WITH THE STOPKAS

25. The Stopkas never entered into a written contract with American Family relating to the fire on September 10, 2008. (Ex. E, Wolowicki Dep. at 65:9-12.)

**RESPONSE:** Admitted


26. Mr. Wolowicki admitted that he did not enter into any contract, written or oral, with American Family on behalf of the Stopkas related to the fire of September 10, 2008. (Ex. E, Wolowicki Dep. at 64:13-65:4.)

**RESPONSE:** Admitted


27. Mr. Wolowicki is not aware of the Stopkas entering into any contract, written or oral, with American Family relating to the fire of September 10, 2008. (Ex. E, Wolowicki Dep. at 65:5-8; 97:1-98:1.)

**RESPONSE:** Admitted


28. American Family never offered to Mr. Stopka to pay for anything beyond the $2,000,000 limits of its insurance policy. (Ex. B., Mi. Stopka Dep. at 131:11-16; *see also* Ex. O, Hayes Dep. at 60:4-19 (testifying that American Family would have only performed

work "[u]p to policy limits."); 105:9-15 (testifying that any agreement to attempt to remove smoke and char was always subject to the two million dollar limits applicable to the American Family insurance policy); 106:19-22 (testifying that "[e]verything is always predicated on policy limits"); 107:11-18 (testifying that any and all assurances provided to the Stopkas and Mr. Wolowicki were always made subject to the limitations of the two million dollar limits applicable to the American Family insurance policy); 218:17-219:1 (testifying that he did not agree to pay in excess of the policy limits because you can never pay more than the policy limits).)

**RESPONSE:** Objection. This statement unquestionably relates to a fact over which the parties most assuredly have an issue and thus is not appropriate under LR56.1(a)(3). As such, ¶ 28 should be stricken in its entirety. Furthermore, this statement completely ignores the deposition testimony of Mr. Wolowicki, through whom Mr. Hayes was communicating to the Stopkas. (Ex. A, Dep. of Stopka at 170:22-171:1). According to the testimony of Mr. Wolowicki, at the time Mr. Hayes identified the two million dollar policy limit, Mr. Hayes also stated that American Family would pay beyond it. (Ex. D, Dep. of Wolowicki at 76:12-16). Mr. Wolowicki also testified that he had a conversation "many times" with Mr. Hayes about promising to pay more than $2 million. (Ex. D, Dep. of Wolowicki at 131:23-132:10). Mr. Wolowicki "was told that the house would be renovated and rebuilt regardless of what the costs would be." (Ex. D, Dep. of Wolowicki at 72:15-17).

Q:     Did [Mr. Hayes] ever say don't worry about it, American Family will pay beyond its two million dollar limits?

A:     Yes.

(Ex. D, Dep. of Wolowicki at 132:7-10).

29.     American Family never stated in writing that it would pay anything above and beyond the $2,000,000 limits of its insurance policy. (Ex. B, Mi. Stopka Dep. at 132:1-5.)

**RESPONSE:** Objection. While Mr. Stopka testified in the portion of his deposition cited by American Family that he was not aware of a statement in writing, this statement ignores other portions of the record and is therefore not an undisputed fact. American Family's internal written records of October 8, 2008, confirm that American Family had "accepted liability for the claim," and had "taken control to mitigate the damage." Furthermore, American Family decided to "keep control and not accept liability in writing at this time." American Family stated that it would "pay the loss" and did not include a limitation on the amount of payment. Finally, American Family acknowledged that the loss may "go over our limits," and that if it did, American Family would "have to discuss the handling from that point on." (Ex. F, Dep. of Saletri at Ex. 4 p. AF00624).

30.     Mr. Hayes never offered, orally or in writing, that American Family would pay in excess of the two million dollar limits applicable to the American Family insurance policy. (Ex. E, Wolowicki Dep. at 79:15-23; *see also* Ex. O, Hayes Dep. at 60:4-19 (testifying that American Family would have only performed work "[u]p to policy limits."); 105:9-15 (testifying that any agreement to attempt to remove smoke and char was always subject to the two million dollar limits applicable to the American Family insurance policy); 106:19-22 (testifying that "[e]verything is always predicated on policy limits"); 107:11-18 (testifying that any and all assurances provided to the Stopkas and Mr. Wolowicki were always made subject to the limitations of the two million dollar limits applicable

to the American Family insurance policy); 217:18-219:1 (testifying that he did not agree to pay in excess of the policy limits because you can never pay more than the policy limits)).

**RESPONSE:** Objection. This statement unquestionably relates to a fact over which the parties most assuredly have an issue and thus is not appropriate under LR56.1(a)(3). As such, ¶ 30 should be stricken in its entirety. Furthermore, this statement misrepresents the deposition testimony of Mr. Wolowicki, as outlined in response to ¶ 28 above. According to the testimony of Mr. Wolowicki, at the time Mr. Hayes identified the two million dollar policy limit, Mr. Hayes also stated that American Family would pay beyond it. (Ex. D, Dep. of Wolowicki at 76:12-16). Mr. Wolowicki also testified that he had a conversation "many times" with Mr. Hayes about promising to pay more than $2 million. (Ex. D, Dep. of Wolowicki at 131:23-132:10). Mr. Wolowicki "was told that the house would be renovated and rebuilt regardless of what the costs would be." (Ex. D, Dep. of Wolowicki at 72:15-17).

31.    Mr. Wolowicki admitted that he cannot testify that, in 2008, Mr. Hayes ever offered to pay in excess of the two million dollar limits applicable to the American Family insurance policy. (Ex. E, Wolowicki Dep. at 78:16-79:7.)

**RESPONSE:** Objection. This statement misstates the record and is not supported by the citation provided. In the passage cited by American Family, Mr. Wolowicki admitted that he could not testify that in 2008, Mr. Hayes agreed to pay on behalf of American Family "specifically using the words beyond the two million dollar policy limits." (Ex. D, Dep. of Wolowicki at 79:1-7). According to the testimony of Mr. Wolowicki, at the time Mr.

Hayes identified the two million dollar policy limit, Mr. Hayes also stated that American Family would pay beyond it. (Ex. D, Dep. of Wolowicki at 76:12-16). Mr. Wolowicki also testified that he had a conversation "many times" with Mr. Hayes about promising to pay more than $2 million. (Ex. D, Dep. of Wolowicki at 131:23-132:10). Mr. Wolowicki "was told that the house would be renovated and rebuilt regardless of what the costs would be." (Ex. D, Dep. of Wolowicki at 72:15-17).

32. On behalf of the Stopkas, Mr. Wolowicki never offered to forego suing Complete Flashings as consideration for American Family offering to pay beyond its two million dollar policy limit. (Ex. E, Wolowicki Dep. at 80:21-81:1; 81:17-24; *see also* Ex. O, Hayes Dep. at 221:18-23 (testifying that Mr. Wolowicki never offered to forego suing American Family or Complete Flashings in exchange for American Family paying above the policy limits); 223:5-7 (testifying that neither Mr. Wolowicki nor Mr. Stopka ever said anything about foregoing suit against Complete Flashings.).)

**RESPONSE:** Objection. This statement unquestionably relates to a fact over which the parties most assuredly have an issue and thus is not appropriate under LR56.1(a)(3). As such, ¶ 32 should be stricken in its entirety. In addition, this statement blatantly misrepresents the deposition testimony of Mr. Wolowicki as cited to by American Family. Mr. Wolowicki actually testified as follows:

Q:     At no point did you ever offer as consideration for American Family's payment that you would forego suing Complete Flashings on behalf of Mr. Stopka, true?

\* \* \*

18

A:      False

Q:      When did you tell Mr. Hayes that you would forgo suing Complete

Flashings in consideration for American Family paying beyond its policy limits?

A:      It would have been in 2009.

(Ex. D, Dep. of Wolowicki at 79:24-80:15).

33.     Neither the Stopkas nor Mr. Wolowicki ever offered to forego pursuing insurance

coverage, other than that provided by American Family, in exchange for American

Family paying beyond its two million dollar policy limit. (Ex. O, Hayes Dep. at 221:24-

222:5; 222:22-223:1 (testifying that neither Mr. Wolowicki nor Mr. Stopka ever said

anything about foregoing suit against American Family.).)

**RESPONSE:** Admitted


34.     American Family and the Stopkas never entered an agreement whereby the Stopkas

would forego suing Complete Flashings if American Family would pay beyond the two

million dollar limit of the American Family policy. (Ex. E, Wolowicki Dep. at 99:2-9 *see

also* Ex. O, Hayes Dep. at 221:18-23 (testifying that Mr. Wolowicki never offered to

forego suing American Family or Complete Flashings in exchange for American Family

paying above the policy limits); 222:22-223:7 (neither Mr. Wolowicki nor Mr. Stopka

ever discussed foregoing filing a lawsuit against either Complete Flashings of American

Family.)

**RESPONSE:** Objection. This statement unquestionably relates to a fact over which the parties

most assuredly have an issue and thus is not appropriate under LR56.1(a)(3). As such, ¶

34 should be stricken in its entirety. In addition, this statement blatantly misrepresents the

deposition testimony of Mr. Wolowicki. Mr. Wolowicki testified as follows:

Q:      At no point did you ever offer as consideration for American Family's payment that you would forego suing Complete Flashings on behalf of Mr. Stopka, true?

* * *

A:      False

Q:      When did you tell Mr. Hayes that you would forgo suing Complete Flashings in consideration for American Family paying beyond its policy limits?

A:      It would have been in 2009.

(Ex. D, Dep. of Wolowicki at 79:24-80:15).


35.     American Family and the Stopkas never entered an agreement whereby the Stopkas would forego suing American Family if American Family would pay beyond the two million dollar limit of the American Family policy. (Ex. E, Wolowicki Dep. at 99:2-16 *see also* Ex. O, Hayes Dep. at 221:18-23 (testifying that Mr. Wolowicki never offered to forego suing American Family or Complete Flashings in exchange for American Family paying above the policy limits).)

**RESPONSE:** Admitted

36.     American Family never agreed to waive or forego the two million dollar limit applicable to the American Family insurance policy. (Ex. E, Wolowicki Dep. at 137:10-138:1; Deposition of James Saletri, *attached hereto as* Exhibit "H,". at 117:21-118:10; 137:2-24; *see also* Ex. O, Hayes Dep. at 60:4-19 (testifying that American Family would have only performed work "[u]p to policy limits."); 105:9-15 (testifying that any agreement to

attempt to remove smoke and char was always subject to the two million dollar limits applicable to the American Family insurance policy); 106:19-22 (testifying that "[e]verything is always predicated on policy limits"); 107:11-18 (testifying that any and all assurances provided to the Stopkas and Mr. Wolowicki were always made subject to the limitations of the two million dollar limits applicable to the American Family insurance policy); 218:17-219:1 (testifying that he did not agree to pay in excess of the policy limits because you can never pay more than the policy limits).)

**RESPONSE:** Objection. This statement unquestionably relates to a fact over which the parties most assuredly have an issue and thus is not appropriate under LR56.1(a)(3). As such, ¶ 36 should be stricken in its entirety. This statement misrepresents the deposition testimony of Mr. Wolowicki, as noted in response to ¶¶ 28 and 30 above. According to the testimony of Mr. Wolowicki, at the time Mr. Hayes identified the two million dollar policy limit, Mr. Hayes also stated that American Family would pay beyond it. (Ex. D, Dep. of Wolowicki at 76:12-16). Mr. Wolowicki also testified that he had a conversation "many times" with Mr. Hayes about promising to pay more than $2 million. (Ex. D, Dep. of Wolowicki at 131:23-132:10). Mr. Augustine testified similarly, that Mr. Hayes made the representation "many times" and never qualified it. (Ex. G, Dep. of Augustine at 173:21-174:22).

37. There is no documentation in the American Family file for the Stopkas' loss that indicates an agreement to pay beyond the applicable two million dollar policy limit. (Deposition of James Andersen, *attached hereto as* Exhibit "I," at 154:5-10.)

**RESPONSE:** Objection. This statement pertains only to the review of the American Family file

conducted by Mr. Andersen, as indicated in the testimony cited by American Family: "Was there anything in *your review* of the file …" (Ex. H, Dep. of Andersen at 154:5-6) (emphasis added). This testimony of Mr. Andersen was only that there was nothing from his review, not that there was no documentation. In addition, the testimony of Mr. Andersen cited by American Family at 154:5-10 states nothing about an "agreement." Finally, this assertion is contradicted by American Family's internal records, which reflect that American Family made the conscious decision <u>not</u> to communicate in writing the limits of the Complete Flashings policy. (Pls.' SMF ¶ 13).

### <u>GERALD HAYES LACKED AUTHORITY TO WAIVE THE POLICY LIMITS</u>

38.    As a Senior Commercial Farm Ranch adjuster, the maximum authority to pay or settle claims possessed by Gerald Hayes', the American Family field adjuster handling the claim arising out of the Fire, was $100,000. (Deposition of American Family (Susan Kinate) Pursuant to Rule 30(b)(6), *attached hereto as* Exhibit "N", at 20:11-14; 21:4-8; 22:23-23:1; 23:22-24:4; 24:16-18; *see also* Ex. O, Hayes Dep. at 24:6-25:5.)

**<u>RESPONSE:</u>** Objection. This statement is not relevant to any issue in American Family's motion for summary judgment, and is not supported by the complete record. According to the testimony of Mr. Andersen, "from the very beginning" American Family recognized that the Stopkas' fire loss was going to exceed the $100,000 authority of a field adjuster. (Ex. H, Dep. of Andersen at 63:4-8). Furthermore, the authority granted Mr. Hayes could be, and was, extended by his superiors, thus rendering his initial limits of authority irrelevant. (Ex. H, Dep. of Andersen at 124:8-15). Finally, to the extent this statement is offered to establish the conduct of Mr. Hayes, Mr. Hayes was terminated by

American Family in part for making payments outside his authority. (Pls.' SMF ¶26).

39.     Gerald Hayes, lacked the authority to unilaterally waive the limits of the American Family insurance policy or to agree to pay for any damages exceeding the two million dollar limits. (*See* Ex. I, Andersen Dep. at 31:14-19; 114:13-20; *see also* Ex. H, Saletri Dep. at 18:7-13: 18:22-19:2; 23:21-24:24; 117:21-24; 118:2-10; Ex. N, Am. Fam. 30(b)(6) Dep. at 106:10-13 (testifying that a claims adjuster would not have the authority to bind American Family beyond the terms of its contract with the insured).)

**RESPONSE:** Objection. The statement contained in this paragraph is not supported by the citations offered by American Family. The cited portions of the deposition of Mr. Andersen at 31:14-19 and 114:13-20 contain no testimony regarding "authority to unilaterally waive the limits" and do not reference policy limits of $2 million. The cited portion of the deposition of Mr. Saletri at 18:7-13 related to the present time, not the time Mr. Hayes handled the loss at issue here, and does not reference policy limits of $2 million. The cited portions of the deposition of Mr. Saletri at 18:22-19:2 and 23:21-24:24 likewise do not reference policy limits or $2 million. The cited portions of the deposition of Mr. Saletri at 117:21-24 and 118:2-10 make no mention of Mr. Hayes not having "authority" as suggested by American Family in ¶ 39. Finally, to the extent this statement is offered to establish the conduct of Mr. Hayes, Mr. Hayes was terminated by American Family in part for making payments outside his authority. (Pls.' SMF ¶26).

40.     American Family adjusters do not have the authority to waive policy limits, to agree to payments in excess of the policy limits. (Ex. I, Andersen Dep. at 148:10-18; 155:9-

156:1.)

**RESPONSE:** Objection. The statement contained in this paragraph is not supported by the citations indicated by American Family. The cited portion of Mr. Andersen's deposition at 148:10-18 contains no testimony regarding "waiver" of policy limits. The cited portion of Mr. Andersen's deposition testimony at 155:9-19 likewise contains no testimony regarding waiver, and constituted testimony offered subject to objection by Plaintiffs' counsel. (Ex. H, Dep. of Andersen at 155:18). Finally, to the extent this statement is offered to establish the conduct of Mr. Hayes, Mr. Hayes was terminated by American Family in part for making payments outside his authority. (Pls.' SMF ¶26).

## AMERICAN FAMILY IS NOT A CONTRACTOR
## AND DOES NOT PERFORM REPAIRS

41.    As of November 3, 2008, Mr. Augustine, the Stopkas' general contractor had taken back control of the Residence and started rebuilding the Residence. (Ex. B., Mi. Stopka Dep. at 134:9-16; 135:2-136:1; *see also* Augustine (11-3-2008) Email, *attached hereto as* Exhibit "J".)

**RESPONSE:** Objection. This statement is not relevant to the issues contained in American Family's motion for summary judgment. Subject to and without waiving this objection, this statement is admitted only insofar as it related to rebuilding the home and not to remediation of the smoke and other fire-related damage. (Ex. E, Dep. of Hayes at 214:12-15) (testifying that Mr. Augustine "had no responsibilities regarding remediation" at the project).

42.    As of November 3, 2008, Todd Augustine was in charge of the work being performed on

the Residence. (Ex. B, Mi. Stopka Dep. at 136:2-6; 136:10-14; Ex. E, Wolowicki Dep. at 111:21-112:18.)

**RESPONSE:** Objection. This statement is not supported by the citations offered by American Family, and is controverted by the testimony of Mr. Hayes. First, the testimony of Mr. Stopka at 136:2-137:2 does not state that Mr. Augustine was "in charge of the work" and in fact states that the work of American Family's retained contractors was still proceeding (Ex. A, Dep. of Stopka at 136:15-19) and Mr. Augustine was not "formally a [general contractor] yet at that point." (Ex. A, Dep. of Stopka at 137:1-2). Second, the testimony of Mr. Wolowicki at 111:21-112:18 contains no reference to Mr. Augustine being "in charge of the work." Finally, the deposition testimony of Mr. Hayes at 212:4-8 establishes that remediation work continued beyond November 3, 2008, and the deposition testimony of Mr. Hayes at 214:12-15 establishes that Mr. Augustine "had no responsibilities regarding remediation" at the project. (Ex. E, Dep. of Hayes at 212:4-8, 214:12-15). As such, there is a genuine issue of fact regarding control.

43.     Prior to taking back control of the work being performed at the residence, Mr. Augustine conducted a "walk-through" of the residence and did not voice any concerns regarding work that had been performed to date. (Ex. E, Wolowicki Dep. at 141:9-12; 145:14-18.)

**RESPONSE:** Objection. This statement is not supported by the testimony cited to by American Family. First, the phrase "control of the work being performed" as used in ¶ 43 is not supported by the record, as noted in Plaintiffs' response to ¶ 42 above. Second, this statement does not constitute an accurate reflection of the complete record. Mr. Wolowicki testified in his deposition with respect to the "walk-thru" as follows:

Q:    And there were no concerns voiced either that you're aware of in writing or by Mr. Augustine when the walk-thru was performed, true?

A:    Not that I recall.

Q:    And there were no concerns voiced by Mr. Stopka after that walk-thru that you can recall now, true?

A:    Oh, there were a lot of concerns.

Q:    Regarding the remediation?

A:    Yes

Q:    Is there anything in writing, first of all, that reflects that?

A:    In writing, no.

Q:    So, this was expressed to Gerry Hayes?

A:    Yes

(Ex. D, Dep. of Wolowicki at 141:9-23).

Finally, although the passage cited to by American Family in ¶43 of Mr. Wolowicki's testimony at 145:14-18 states that Mr. Augustine did not put his concerns in writing, ¶ 43 states that Mr. Augustine did not "voice" any concerns, which he did according to the deposition testimony of Mr. Wolowicki at 145:19-20. ("Q: Anything verbally? A: Yes). (Ex. D, Dep. of Wolowicki at 145:19-20).

44.    From November 3, 2008, forward, Mr. Augustine had input into whether materials, including charred materials, were removed from the Residence or allowed to remain. (Ex. E, Wolowicki Dep. at 115:11-16.)

**RESPONSE:** Objection. This statement is not relevant to the issues in American Family's

motion for summary judgment. In addition, the testimony of Mr. Wolowicki as cited by American Family was made over objection (Ex. D, Dep. of Wolowicki at 115:15), and thus is not an undisputed fact. Finally, according to Mr. Hayes, Mr. Augustine "had no responsibilities regarding remediation." (Ex. E, Dep. of Hayes at 214:12-15). In addition, Todd Augustine testified that decisions over what materials could be salvaged after the fire were ultimately made by Mr. Hayes. (Ex. G, Dep. of Todd Augustine at 148:6-15).

45. Prior to Mr. Augustine assuming control of the project, Michael Stopka, Todd Augustine, Jerry Wolowicki and Gerald Hayes conducted a walk-through inspection of the property. (Ex. B, Mi. Stopka Dep. at 142:12-23.)

**RESPONSE:** Objection. Assumption of control of the project is ambiguous as noted in response to ¶¶ 41, 42, and 43 above. After the fire, Mr. Augustine only assumed control over rebuilding the home not the remediation of the fire damage. (Ex. E, Dep. of Hayes at 212:4-8, 214:12-15). The passage cited also does not include the word "inspection."

46. American Family is not a contractor and does not make repairs. (Ex. H, Saletri Dep. at 58:3-22; Ex. O, Hayes Dep. at 223:12-13.)

**RESPONSE:** Denied. American Family retained, directed, and controlled contractors who performed services as its agent. (See ¶¶ 44, 45, 47). For purposes of this case, those contractors under its control and direction were the alter egos of American Family and Mr. Hayes.

47. American Family never acted as a general contractor with respect to the remediation

27

and/or repairs to the Stopkas' Residence. (Ex. O, Hayes Dep. at 223:14-16.)

**RESPONSE:** Objection. This statement is not an undisputed fact and therefore is not appropriate under LR56.1(a)(3). As such, ¶ 47 should be stricken in its entirety. In addition, whether an entity "acted as a general contractor" is a conclusion. Furthermore, this statement is contradicted by the testimony of Dan Dowell of Miner & East, a contractor retained by American Family:

Q:      When Miner & East was working on the project, were they taking direction in terms of the scope of their work from anybody except Jerry Hayes?

A:      I would say Jerry was the lead. I mean, we were all there. He was the one that called all of us. I would say Jerry was the lead; but, I mean, we had input. He basically told us what he was trying to achieve, which was to try to protect the house from further damage; and then we tried to, you know, as a team achieve that.

(Ex. B, Dep. of Dowell at 65:14-24).

In addition, by the time Miner & East arrived at the project, Mr. Hayes had already retained Robinette to complete demolition work, and engaging subcontractors such as Robinette would "generally speaking" be the job of a general contractor. (Ex. B, Dep. of Dowell at 84:12-20). Similarly, Mr. Hayes had already given direction to Robinette regarding their work (Ex. B, Dep. of Dowell at 85:2-6), again a task which would normally be done by a general contractor. (Ex. B, Dep. of Dowell at 87:1-7). In addition, Todd Augustine testified that decisions over what materials could be salvaged after the fire were ultimately made by Mr. Hayes. (Ex. G, Dep. of Augustine at 148:6-15; 165:23-166:16). Mr. Augustine testified that Mr. Hayes made the decision to treat rather than

remove smoke-damaged wood. (Ex. G, Dep. of Augustine at 192:23-193:21). Mr.
Augustine also testified that Mr. Hayes approved line items and costs associated with the
rebuild. (Ex. G, Dep. of Augustine at 180:8-12).

48.    American Family never controlled the sequencing of work at the Stopkas' Residence.
       (Ex. O, Hayes Dep. at 223:17-19.)

**RESPONSE:** Objection. This statement is not an undisputed fact and therefore is not
appropriate under LR56.1(a)(3). As such, ¶ 48 should be stricken in its entirety. In
addition, whether an entity "controlled the sequencing of work" is a conclusion. As
outlined in response to ¶ 47, this statement is contradicted by the testimony of Mr.
Dowell.


49.    American Family never acted as a scheduler by controlling who could go in and out of
       the job site at the Stopkas' Residence. (Ex. O, Hayes Dep. at 224:2-4.)

**RESPONSE:** Objection. The statement in the paragraph is contradicted by the record as
outlined in response to ¶¶ 47 and 48 above, and is thus not an undisputed fact. In addition
to as noted above, Mr. Augustine testified that Mr. Hayes took control "over the entire
scene" and coordinated meetings at the site. (Ex. G, Dep. of Augustine at 155:4-15;
160:12-161:6). Mr. Hayes testified that he "sent back" Brouwer Brothers to the home on
several occasions to complete additional or follow-up work. (Ex. E, Dep. of Hayes at
103:3-20).


50.    American Family does not direct contractors it has retained regarding how to do their
       work or indicate how they should perform their work. (Ex. I, Andersen Dep. at 156:21-

157:9; Ex. H, Saletri Dep. at 133:23-134:7; Ex. O, Hayes Dep. at 224:12-16; 224:23-225:2.)

**RESPONSE:** Objection. The testimony of Mr. Saletri at 133:23-134:7 is subject to objection, and thus is not an undisputed fact. In addition, this statement is contradicted by the record as outlined in responses to ¶¶ 47, 48, and 49 above.

## AMERICAN FAMILY'S "CONTROL" OVER A CLAIM IS LIMITED BY ITS INSURANCE POLICY

51.    Where American Family "takes control" of a claim, American Family does not agree to waive any insurance policy limits or assume any obligation beyond any applicable insurance policy limits.  (Ex. I, Anderson Dep. At 103:1-6; 154:11-23; Ex. H, Saletri Dep. At 136:12-137:24.)

**RESPONSE:** Objection. This statement regarding when American Family "takes control" is a conclusion and thus inappropriate under LR56.1(a)(3). This statement is not supported by the record, as indicated within the responses to ¶¶ 42 and 44-50 above. In addition, this statement is not supported by American Family's own internal written records of October 8, 2008, which confirm that American Family had "taken control" and would "pay the loss" and did not include a limitation on the amount of payment. Finally, American Family acknowledged that the loss -- over which American Family had "taken control" -- may "go over our limits," and that if it did, American Family would "have to discuss the handling from that point on." (Ex. F, Dep. of Saletri at Ex. 4 p. AF00624).

52.    In instances where American Family "takes control" of a claim, American Family takes controls of payments, it does not perform repairs.  (Ex. H, Saletri Dep. at 57:23-58:22.)

30

**RESPONSE:** Objection. This statement regarding when American Family "takes control" is a conclusion and thus inappropriate under LR56.1(a)(3). This statement is not supported by the record, as indicated within the responses to ¶¶ 42 and 44-50 above. In addition, this statement is not supported by American Family's own internal written records of October 8, 2008, which confirm that American Family had "taken control" and does not limit that control to solely making payments. (Ex. F, Dep. of Saletri at Ex. 4 p. AF00624). Similarly, the issue of American Family's actual conduct is outlined in response to ¶¶ 47, 48, 49, and 50 above. Subject to and without waiving these objections, admitted to the extent that American Family does not itself perform repairs.

**NEGOTIATIONS REGARDING RELEASE**

53.    In September of 2009, the Stopkas began negotiating a release of American Family and Complete Flashings regarding the fire loss claim. (*See* Ex. B. Mi. Stopka Dep. at 161:18-162:1; *see also* Wolowicki (9/2/2009) Email and Wolowicki (9/22/2009) Email, *collectively attached hereto as* Exhibit "K".)

**RESPONSE:** Objection. This statement is inadmissible under Fed. R. Evid. 408 and also has no relevance to the issues in American Family's Motion for Summary judgment with respect to American Family's potential liability to Plaintiffs for American Family's conduct. Furthermore, the record as cited by American Family does not establish that "negotiating a release" began in September 2009. (Ex. A, Dep. of Stopka at 161:18-162:1). In addition, the initial document provided to the Stopkas (Ex. D, Dep. of Wolowicki at Ex. 14 p. STP00307-308) did not include Complete Flashings.

31

54.     In fact, the Stopkas signed the release after making changes and consulting with Mr. Wolowicki and an attorney.   (*See* Ex. B, Mi. Stopka Dep. at 162:11-162:9; *see also* Release for Property Damages, *collectively attached hereto as* Exhibit "L.")

**RESPONSE:** Objection. This statement is inadmissible under Fed. R. Evid. 408 and has no relevance to the issues in American Family's Motion for Summary Judgment with respect to American Family's potential liability to Plaintiffs for American Family's conduct. Furthermore, this statement ignores the complete record, including the deposition testimony of Mr. Wolowicki that the release between the Stopkas and American Family "was never finalized" (Ex. D, Dep. of Wolowicki at 81:14-16), were "always in the negotiating stage" (Ex. D, Dep. of Wolowicki at 82:4-6), and were subject to further negotiation with Mr. Hayes which broke down because the amounts which Mr. Hayes promised to pay for the release kept changing. (Ex. D, Dep. of Wolowicki at 203:19-206:8).


### PLAINTIFFS' LOCAL RULE 56.1(b)(3)(C) STATEMENT OF ADDITIONAL FACTS WHICH REQUIRE DENIAL OF AMERICAN FAMILY'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Local Rule 56.1(b)(3)(C), the following additional facts require the denial of American Family's Motion for Summary Judgment:

1.     Gerald Hayes promised Mike Stopka that American Family would restore the home to the condition it was in "five minutes before the fire." (Ex. E, Dep. of Hayes at 59:17-23); (Ex. C, Dep. of Praxmarer at 36:17-37:10); (Ex. A, Dep. of Stopka at 89:15-20).

2.     At the time Mr. Hayes made his representation to Mr. Stopka, Mr. Hayes did not indicate the limits of the American Family policy, nor did anyone inquire about the limits. (Ex. A,

Dep. of Stopka at 96:4-10).

3.   Mr. Hayes never put anything in writing where he asserted the application of the policy

    limits. (Ex. E, Dep. of Hayes at 230:16-19).

4.   Mr. Hayes acknowledged that it would be best practices in the insurance industry "when

    there's an issue with respect to application of policy limits," that a reservation of rights

    letter be issued by the insurer. (Ex. E, Dep. of Hayes at 230:20-231:1).

5.   Mr. Hayes represented to Mr. Wolowicki that American Family would eliminate the

    ongoing smoke smell at the residence "100 percent to the Stopkas' satisfaction." (Ex. D,

    Dep. of Wolowicki at 191:17-23).

6.   By the time Mr. Hayes arrived at the project with his contractors, he had "taken control"

    of the situation. (Ex. D, Dep. of Wolowicki at 196:5-9).

7.   The liability of Complete Flashings for the fire was "pretty clear-cut." (Ex. E, Dep. of

    Hayes at 75:13-17).

8.   On September 11, 2008, Mr. Hayes explained his expertise in dealing with large fire

    losses. (Ex. E, Dep. of Hayes at 79:23-80:8).

9.   Mr. Hayes selected and hired contractors to perform demolition work, to secure the site,

    and to perform remediation work. (Ex. E, Dep. of Hayes at 77:1-12; 79:16-80:10; 108:4-

    10). The contractors retained by Mr. Hayes -- Robinette Demolition, Miner & East, and

    Brouwer Brothers -- were all contractors with whom Mr. Hayes had a long-standing

    relationship. (Ex. E, Dep. of Hayes at 78:16-19; 89:14-16; 90:6-8; 92:13-15). Mr. Hayes'

    son worked for Brouwer Brothers, and it was Mr. Hayes who facilitated that employment.

    (Ex. E, Dep. of Hayes at 94:2-15).

10.  Mr. Hayes contacted Miner & East on September 11, 2008, to perform emergency repairs

at the residence. (Ex. B, Dep. of Dan Dowell at 23:23-24:7). Robinette was engaged before Miner & East, selected by American Family. (Ex. B, Dep. of Dowell at 25:17-20).

11.   Mr. Hayes met with representatives of Miner & East, Robinette, and Brouwer Brothers within a day or two of Miner & East being contacted (Ex. B, Dep. of Dowell at 32:20-33:2) to determine what steps to take with respect to their post-fire efforts. (Ex. B, Dep. of Dowell at 34:20-35:3).

12.   American Family retained a structural engineer to assist in the evaluation of the post-fire remediation efforts to ensure that the work of Miner & East and Robinette was "structurally sound." (Ex. B, Dep. of Dowell at 42:4-43:22).

13.   American Family's internal written records of October 8, 2008, confirm that American Family had "accepted liability for the claim," and had "taken control to mitigate the damage." Furthermore, American Family decided to "keep control and not accept liability in writing at this time." American Family stated that it would "pay the loss." Finally, American Family acknowledged that the loss may "go over our limits," and that if it did, American Family would "have to discuss the handling from that point on." (Ex. F, Dep. of Saletri at Ex. 4 p. AF00624).

14.   Mr. Hayes understood exactly what he was promising to the Stopkas regarding remediation of the home. (Ex. E, Dep. of Hayes at 232:6-12).

15.   Mr. Hayes did not consider his promise to be ambiguous. (Ex. E, Dep. of Hayes at 232:13-15).

16.   Mr. Hayes intended for the Stopkas to rely on his representation regarding returning the home to its pre-fire condition. (Ex. E, Dep. of Hayes at 232:23-233:2).

17.   The Stopkas relied on the representation made by Mr. Hayes. (Ex. D, Dep. of Wolowicki

at 194:13-15).

18.     Mr. Hayes instituted a specific plan regarding how American Family would restore the
        home to its pre-fire condition (Ex. E, Dep. of Hayes at 79:16-80:8), including retaining
        contractors to perform demolition, stabilization, and fire-damage remediation. (Ex. E,
        Dep. of Hayes at 77:1-12).

19.     Mr. Andersen, would not be surprised if contractors performing reconstruction work at
        the Residence "were asking Mr. Hayes permission to perform certain tasks or to incur
        certain costs." (Ex. H, Dep. of Andersen at 161:10-162:6).

20.     American Family recognized that, after the loss caused by its insured, Complete
        Flashings, that the Stopkas could have pursued claims directly against Complete
        Flashings, including a lawsuit. (Ex. H, Dep. of Andersen at 159:17-160:1); (Ex. F, Dep.
        of Saletri at 59:12-17). In fact, American Family "stepped up, accepted the liability as the
        negligence of [Complete Flashings]" so that the Stopkas did not have to pay to pursue
        Complete Flashings first. (Ex. H, Dep. of Andersen at 159:2-11).

21.     Mr. Hayes acknowledged that the defense of a lawsuit against Complete Flashings would
        have required American Family to make payments outside the limits of the policy issued
        to Complete Flashings. (Ex. E, Dep. of Hayes at 26:13-23).

22.     Mr. Hayes is aware that there would be "no limit" to the amounts expended by American
        Family to resolve a litigated claim, and that a claim with a $2 million policy could even
        cost American Family $10 million to adjust and defend. (Ex. E, Dep. of Hayes at 27:7-
        15).

23.     In 2009, Mr. Wolowicki told Mr. Hayes that the Stopkas would "forgo suing Complete
        Flashings in consideration for American Family paying beyond its policy limits." (Ex. D,

Dep. of Wolowicki at 79:24-80:15).

24.  By October 25, 2008, Mr. Hayes recognized that, based upon his 35 years of experience, the fire loss at the Stopka home would most likely exhaust the American Family policy (Ex. F, Dep. of Saletri at 67:3-16), a point with which Mr. Saletri did not disagree (Ex. F, Dep. of Saletri at 67:17-18). Nevertheless, Mr. Hayes chose not to communicate that opinion to anyone outside American Family. (Ex. E, Dep. of Hayes at 162:8-12). Indeed, at no time did Mr. Hayes ever put anything in writing where he asserted the application of the policy limits to his promise. (Ex. E, Dep. of Hayes at 230:16-19).

25.  Mr. Hayes was terminated from American Family for violating American Family's Conflict of Interest policy (Ex. E, Dep. of Hayes at 51:20-52:1). Mr. Hayes was also terminated for failing to follow guidelines of American Family. (Ex. I, Dep. of American Family Rule 30(b)(6) Designee Susan Kinate at 30:23-31:8, 38:5-9).

26.  Mr. Hayes was disciplined by and terminated from American Family for "making payments over authority without approval." (Ex, I, Dep. of Kinate at 50:6-18, 51:19-21, 56:19-23: Ex. 16 pp. AF11080-81, AF11057-58).

27.  At the time Brouwer Brothers was performing its work at the Residence, Brian Hayes, son of Gerald Hayes, was a Brouwer Brothers employee. (Ex. E, Dep. of Hayes at 11:24-12:17). Mr. Hayes did not disclose Brouwer Brothers on his American Family Conflict of Interest form (Ex. I, Dep. of Kinate at 67:13-16). It would be against American Family policy for Mr. Hayes to make payments to Brouwer Brothers where there was a non-disclosed conflict of interest. (Ex. I, Dep. of Kinate at 84:24-85:6). At the time he was terminated, Mr. Hayes was notified that payments made to Brouwer Brothers constituted a conflict of interest. (Ex. I, Dep. of Kinate at 70:1-5, 94:6-15).

28. American Family knew that the fire loss delayed completion of the Stopka residence (Ex. F, Dep. of Saletri at 86:8-10), and that the Stopkas were incurring construction loan interest of at least $14,000 a month for each month of delay which Mr. Hayes had agreed to pay. (Ex F, Dep. of Saletri at 86:11-87:4); (Ex. E, Dep. of Hayes at 91:21-92:4).

29. Mr. Hayes told Mr. Wolowicki that American Family would pay the Stopkas' ongoing construction loan interest. (Ex. E, Dep. of Hayes at 91:21-92:4).

30. Mr. Praxmarer told Mr. Stopka that the Allied/Nationwide homeowner's policy would not pay for the ongoing construction loan interest. (Ex. C, Dep. of Praxmarer at 31:1-32:21).

31. By Spring 2009, there was an unmistakable smoke odor in the house that was communicated to Mr. Hayes. (Ex. G, Dep. of Augustine at 197:1-13). According to Mr. Stopka, the smoke smell "has been there since the fire." (Ex. A, Dep. of Stopka at 20:1-17). Mr. Stopka deferred to his consultant, Forensic Analytical Consulting Services, regarding the cause of the smoke smell and what remains for remediation. (Ex. A, Dep. of Stopka at 20:18-21:3; 24:12-15). American Family chose not to depose Forensic Analytical.

32. At the request of the Stopkas, Forensic Analytical evaluated the home to assess the ongoing smoke damage, and found that areas were not properly treated. (Ex. A, Dep. of Wolowicki at 191:24-192:7).

33. On May 10, 2010, Forensic Analytical prepared a report for the Stopkas outlining their findings with respect to the ongoing smoke issues at the home. That report was provided to Mr. Hayes on August 23, 2010 and produced in discovery. (Ex. J, FACS Report (without exhibits) STP00001-06).

34.   American Family issued payments in excess of $2 million with regard to the Stopkas' fire loss claim. (Ex. K, AF00884-922).

35.   The Stopkas have incurred additional costs associated with the fire loss, which were not paid by American Family. (Ex. D, Dep. of Wolowicki at 156:10-158:13, Ex. 15 p. 3).

36.   According to the testimony of Mr. Wolowicki, at the time Mr. Hayes identified the two million dollar policy limit, Mr. Hayes also stated that American Family would pay beyond it. (Ex. D, Dep. of Wolowicki at 76:12-16). Mr. Wolowicki also testified that he had a conversation "many times" with Mr. Hayes about promising to pay more than $2 million. (Ex. D, Dep. of Wolowicki at 131:23-132:10). Mr. Wolowicki "was told that the house would be renovated and rebuilt regardless of what the costs would be." (Ex. D, Dep. of Wolowicki at 72:15-17).

37.   By late 2009, Mr. Hayes "stopped communicating" with Mr. Wolowicki. (Ex. D, Dep. of Wolowicki at 206:9-13).

Respectfully submitted,

By:   /s/ Christopher S. Hennessy
One of the attorneys for Plaintiffs

Steven D. Pearson (6190506) (steven.pearson@mbtlaw.com)
Christopher S. Hennessy (6237293) (christopher.hennessy@mbtlaw.com)
MECKLER BULGER TILSON MARICK & PEARSON LLP
123 N. Wacker Drive, Suite 1800
Chicago, IL 60606
Telephone:     (312) 474-7900
Facsimile:     (312) 474-7898
M:\14185\pleading\Response to AmFam Statement of Facts.docx

38