

# Forensic Analytical

**ENVIRONMENTAL HEALTH CONSULTANTS**

## Environmental Health Assessment

**Stopka Residence**
**10 Goose Lake Drive**
**Barrington, IL 60010**

**May 10, 2010**

**Prepared for:**

Mike Stopka
c/o Meckler Bulger Tilson Marick & Pearson LLP
123 N. Wacker Drive, Suite 1800
Chicago, IL 60606

**Prepared by:**

Ben Kollmeyer, MPH, CIH
Forensic Analytical Consulting Services
2959 Pacific Commerce Drive
Rancho Dominguez, CA 90221
310-668-5618 ♦ bkollmeyer@forensica.com

**FACS Project #PJ10567**

© *Forensic Analytical Consulting Services*

Exhibit J

## Table of Contents

Introduction ............................................................................................................................. 2

Methodology ........................................................................................................................... 2

Overview ................................................................................................................................. 2

Mold Growth ........................................................................................................................... 2

Smoke & Fire Contamination ................................................................................................. 4

Limitations .............................................................................................................................. 5

**APPENDIX A:** Ben Kollmeyer C.V.

**APPENDIX B:** Floor Plan and Photos from 3/18/10 Site Inspection

**APPENDIX C:** Laboratory Reports

**APPENDIX D:** FACS General Mold Remediation Guidelines

© *Forensic Analytical Consulting Services*
www.forensica.com

## Introduction

In March of 2010, Ben Kollmeyer, MPH, CIH of Forensic Analytical Consulting Services (FACS) was retained by Meckler Bulger Tilson Marick & Pearson to investigate environmental health conditions related to mold and smoke and fire damage at the Stopka Residence located at 10 Goose Lake Drive, Barrington, IL. A copy of Mr. Kollmeyer's C.V. is provided in Attachment A. This purpose of this report is to provide current findings and recommendations regarding the investigation.

## Methodology

In conducting the investigation, the following documents were reviewed:
- 9/25/08 Engineering Systems Inc. report (roofing)
- 10/8/08 Anderson & Fiene report (structural engineering)
- 10/30/08 Shelter Windows & Doors letter
- 4/6/09 Environmental Services Group Limited (EGSL) memorandum (mold)
- 9/25/09 EGSL indoor air quality report (mold)
- Photographs of the fire at the residence from the Daily Herald.

In addition, an inspection of the home (inclusive of sampling) was conducted by FACS on 3/18/10.

## Overview

Based on a review of the above documents and conversations with homeowner representatives, the following history was developed. On 9/10/08, a fire occurred in the home which burned a substantial amount of the attic and third floor east of the front entry. At the time of the fire the home was unoccupied and nearing the end of construction. The eastern portion of the home was subject to a substantial amount of water impact from the fire suppression effort. Following the fire, the entire structure was stripped down to wood framing members and a substantial portion of the wood framing members on the east side of the structure were removed due to fire and water damage. At the time of the 9/10/08 FACS inspection, the home was nearly rebuilt.

The history of events indicates that a decision was made to repair the structure following the fire as opposed to demolishing it. Once this decision was made, environmental health considerations come into play since remaining building materials may have been impacted by the fire and thus could subsequently impact future occupants. Specifically, the concerns presented are: 1) potential mold growth resulting from the water used in the fire suppression effort and 2) residual contaminants and odors from the burning of building materials. These two issues are discussed in greater detail below.

## Mold Growth

### Mold Growth from Fire Suppression Effort

On 4/1/09 EGSL conducted an initial assessment of the structure for mold concerns. The envelope was completed and rough framing was underway. No visible mold growth was observed, however interior mold spore levels were found to be substantially higher than outdoors. Further assessment and sampling immediately prior to the installation of insulation and drywall was recommended, however no recommendations for remedial actions outside of preventative practices were made.

On 9/14/09 EGSL conducted a follow-up assessment. Framing was completed and insulation and drywall were not yet installed. Again no visible mold growth was observed. Contrary to the first inspection, interior mold spore levels were found to be less than or similar to outdoor levels.

Case: 1:10-cv-06034 Document #: 104-10 Filed: 04/03/12 Page 4 of 6 PageID #:1489

The difference between the 4/1/09 and 9/25/09 air sampling may be the result of remedial actions or sampling and environmental variability. The data reviewed does not provide a theory for the elevated mold spore levels initially found, nor does it indicate that any remedial actions were taken to reduce these levels. Owner representatives reported the existence of additional reports from EGSL between 4/1/09 and 9/14/09, however it is the understanding of FACS that such data has not been produced at this time. It is therefore unknown whether or not this data indicates that remedial actions were undertaken or otherwise provides an explanation for the elevated mold spore levels found on 4/1/09.

While the results obtained on 9/25/09 do not indicate the presence of a mold concern, it is important to understand what, if any, remediation activities occurred in the home and if an appropriate scope and method of removal was employed. Post-remediation visual assessment and sampling is intended to provide support demonstrating the effectiveness of an appropriate remediation. They are not intended to be the sole factor in concluding that a mold issue has been properly addressed.

*Recommendations:*

1. Obtain additional documentation regarding potential mold growth conditions and potential remedial actions taken in the residence. Have this information reviewed by an appropriately qualified environmental health professional and address outstanding issues as needed.

<u>Mold Growth from Subsequent Moisture Intrusion</u>

Owner representatives report that moisture intrusion through the building envelope has occurred in various locations during reconstruction and that some degree of mold growth has occurred as a result. In response, damaged building materials were removed by construction crews in various locations throughout the home. An accounting of specific locations and quantities of mold growth removed has not been provided to FACS at this time.

On 3/18/10, FACS conducted an assessment of various locations of reported moisture intrusion and drywall removal. The assessment included visual inspection, surface tape lift sampling and removal of small portions of drywall. A floor plan and photos from the inspection are provided in Appendix B. Laboratory reports are provided in Appendix C. Areas of observed mold growth are listed in the recommendations below.

*Recommendations:*

2. Take actions to correct current and prevent future moisture intrusion into the building envelope. If additional moisture intrusion does occur, dry impacted organic building materials within 24-48 hours in order to prevent future mold growth.

3. If mold growth does occur as a result of additional moisture intrusion, remediate following the FACS General Mold Remediation Guidelines provided in Appendix D.

4. Room 1.02, high windows at entry (photos 72-77, sample T-01). Clean minor amount of mold growth from wood structural members following the "M0" guidelines in Appendix D. Ensure the cause of moisture intrusion in this area has been addressed. In addition, a small amount of bird or bat feces was noted in this location and should be cleaned following appropriate safety measures to prevent hanta virus infection (e.g., use of dust mask, gloves, wet clean-up methods).

5. Room 2.02, ceiling at NE corner (photos 94-98, sample T-02). Clean minor amount of mold growth from wood structural members following the "M0" guidelines in Appendix D. Remove additional ceiling materials to each side of the impacted joist bay, remediate additional mold if found and continue removals beyond the end of visible mold growth. Increase the level of mold

STP00004

    remediation as appropriate per the guidelines in Appendix D. Ensure the cause of moisture intrusion in this area has been addressed.

6. Rooms 1.02 and 0.15, floor/ceiling at NE corner (photos 114-132, sample T-03). Clean mold growth from wood structural members following the "M1" guidelines in Appendix D. Conduct additional drywall removal in Room 1.02 to ensure the full extent of mold growth is found, increasing the remediation level as appropriate per Appendix D. Ensure the ongoing cause of moisture intrusion in this area has been addressed.

7. Develop an accounting of the quantities and locations of mold growth removed from the residence by construction crews. Evaluate the findings evaluated by an appropriately qualified environmental health professional to determine if additional mold spore air sampling and surface and air cleaning is needed.

## Smoke & Fire Contamination

Smoke is made up of a complex mixture of gases, vapors and fine particles (i.e., soot) produced when wood and other organic matter burn. Among the substances found are gases from partially burned hydrocarbons (e.g., carbon monoxide) and potentially toxic or irritant volatile organic compounds (e.g., acrolein, formaldehyde). If smoke contamination on surfaces is unaddressed, these constituents have potential to result in continued exposure or discomfort (i.e., undesirable odors) among future occupants. Unfortunately, in most cases sampling for the typical "smoke odor" in air is impractical and highly variable due to the great number of potential compounds involved. This type of sampling is generally found to have poor correlation with perceived odors.

A better correlation may be found between odors and the presence of combustion related particles. These particles are variously categorized as "soot" (which appear as small opaque particles) and "char" (small pieces of partially burned material). In general, the cleaning of surfaces with evidence of greater than background levels of combustion related particles is associated with a reduction in undesirable odors and potential health risk. In some instances, additional removal or treatment of materials is necessary to reduce odors to acceptable levels.

The data reviewed does not indicate that an assessment for the presence of soot and char contamination was performed in the Stopka residence or that any detail cleaning of the structure to eliminate such deposits was formerly undertaken. The 9/25/08 ESI report specifically notes that they were not retained to address smoke damage issues. As noted above, this type of assessment would be appropriate in a structure following a fire.

During the course of reconstruction, odors were noted by Mr. Stopka in two specific locations. These areas were visually assessed and sampled by FACS on 3/18/10. A floor plan and photos from the inspection are provided in Appendix B. Laboratory reports are provided in Appendix C. Findings are discussed below:

- Room 1.02, top of doorway to hall at east side of landing (photos 83-88, sample B-01). Burned material debris was found to have collected between wood structural members and a strong smoke odor was noted.

- Attic crawlspace SW of Room 3.02 (photos 101-113, sample B-02). Burned material debris was found to have collected between wood structural members and a strong smoke odor was noted.

Based on the above findings, it appears that combustion particulate from the fire remain in some areas of the home and is continuing to produce a characteristic smoke odor. The physical presence of this material indicates that a thorough and effective cleaning of the structure following the fire was not

© *Forensic Analytical Consulting Services*
www.forensica.com

conducted. Based on the history and findings, it appears that this material has collected between wood structural members left in place following the fire where original building materials were left in place that were adjacent to burned building materials. The current findings indicate that this interface occurs along the east wall of Room 1.02 (front entry room). Similar conditions may also exist in locations in the eastern portion of the residence where a similar interface of materials occurred. In addition, there may also be reservoirs of combustion particulate where water from the fire suppression carried and pooled such material on wood structural members.

*Recommendations*:

8. Clean areas exhibiting visible combustion particulate using a combination of HEPA vacuuming and wet wiping. If odors remain following cleaning, additional odor elimination measures in the areas may be required (e.g., encapsulation of building materials).

9. Utilizing individuals familiar with the history of construction of the home, identify locations where residual combustion particulate is likely to have accumulated (i.e., structural collection points where remaining materials interfaced with burned materials and where water likely pooled). Remove drywall and insulation in selected areas to facilitate visual inspection for the presence of combustion particulate. If such materials are found, clean as indicated above.

10. An appropriately qualified environmental health professional should be engaged to participate in the further investigative activities and to confirm that remaining reservoirs have been appropriately cleaned.

## Limitations

This investigation is limited to the conditions and practices observed and information made available to FACS. The methods, conclusions, and recommendations provided are based on FACS' judgment, experience and the standard of practice for professional service. They are subject to the limitations and variability inherent in the methodology employed. As with all environmental investigations, this investigation is limited to the defined scope and does not purport to set forth all hazards, nor indicate that other hazards do not exist.

Please do not hesitate to contact our office at 310-668-5600 if you have any additional questions or concerns. Thank you for the opportunity to assist your firm and clients in promoting a more healthful environment.

Respectfully,
FORENSIC ANALYTICAL

Digitally signed
by Ben Kollmeyer
Date: 2010.05.10
10:14:11 -07'00'

Ben Kollmeyer, MPH, CIH