UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL STOPKA;<br>MARILYN STOPKA; and<br>CHATEAU ARLINGTON, LLC,<br><br>     Plaintiffs,<br><br>     v.<br><br>AMERICAN FAMILY MUTUAL<br>INSURANCE CO., INC.,<br><br>     Defendant. | )<br>)<br>)<br>)<br>)<br>)  Case No. 10 C 6034<br>)<br>)  Judge John W. Darrah<br>)<br>)<br>)<br>) |

## MEMORANDUM OPINION AND ORDER

On March 1, 2011, Plaintiffs Michael Stopka ("Stopka"), Marilyn Stopka, and

Chateau Arlington, LLC (collectively, the "Plaintiffs") filed a Second Amended

Complaint against American Family Mutual Insurance Co., Inc, ("American Family"),

alleging claims for breach of contract (Count I), negligence (Count II),

declaratory judgment (Count III), and promissory estoppel (Count IV). Before the Court

is American Family's Motion for Summary Judgment.

### BACKGROUND

The following facts are taken from the Parties' statements of undisputed material

facts submitted in accordance with Local Rule for the Northern District of Illinois

("Local Rule") 56.1.[1] As a preliminary issue, Plaintiffs have filed a "Preliminary

---

[1] Local Rule 56.1(a)(3) requires the party moving for summary judgment to
provide "a statement of material facts as to which the moving party contends there is no
genuine issue." Rule 56.1(b)(3) then requires the nonmoving party to admit or deny each
factual statement proffered by the moving party and to concisely designate any material
facts that establish a genuine dispute for trial. *See Schrott v. Bristol-Myers Squibb Co.,*

Statement and General Objections" with their Local Rule 56.1(b)(3) statement, in which

Plaintiffs set forth a litany of generalized objections to American Family's

Local Rule 56.1(a)(3) statement. These "general" objections, which appear to be largely

duplicative of Plaintiffs' responses to the numbered paragraphs of American Family's

Local Rule 56.1(a)(3) statement, will not be considered. As Local Rule 56.1(b)(3)(b)

provides, such objections are properly made in "a response to each numbered paragraph

in the moving party's statement." Plaintiffs' request that the Court deny

American Family's Motion for Summary Judgment "due to the failure to make a proper

Rule 56.1 submission, or strike American Family's Local Rule 56.1(a)(3) statement" is

denied. (Dkt. No. 104 at 3.) Furthermore, both parties have failed to heed Local Rule

56.1(b)(3)'s requirement that parties file a "a *concise* response to the movant's

statement." In light of this failure, it is a burdensome task to determine whether the

parties admit or deny the opposing party's factual statement.[2]

Plaintiffs Michael and Marilyn Stopka (the "Stopkas") are married and live in

Arlington Heights, Illinois. (Def.'s 56.1(a)(3) ¶ 1.) Plaintiff, Chateau Arlington, LLC

("Chateau Arlington"), is an Illinois limited liability company of which the Stopkas are

---

403 F.3d 940, 944 (7th Cir. 2005). A litigant's failure to dispute the facts set forth in its opponent's statement in the manner required by Local Rule 56.1 results in those facts' being deemed admitted for purposes of summary judgment. *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003).

[2] Furthermore, both parties have failed to comply with Local Rule 5.2. Local Rule 5.2 requires the size of the text in the body of a brief to be 12 points and in footnotes, no less than 11 points. The size of the text of the body of Plaintiffs' Response appears to be less than 12 points. The size of the text in Defendants' footnotes is clearly less than 11 points. The parties' failure to comply with Local Rule 5.2 appears to be an attempt to exceed the fifteen-page limit set by Local Rule 7.1, without prior approval of this Court.

the sole members. (*Id.* ¶ 2.) American Family is a Wisconsin-based corporation with its principal place of business in Madison, Wisconsin. (*Id.* ¶ 3.) Third-Party Defendant Augustine Custom Homes, Inc. is an Illinois corporation with its principal place of business in Geneva, Illinois. (*Id.* ¶ 4.)

On September 10, 2008, while performing certain gutter installation work on the home being constructed for the Stopkas at 10 Goose Lake Drive, Barrington Hills, Illinois, 60010 ("the Residence") an employee of Complete Flashings, Inc. ("Complete Flashing"), started a fire on the roof while using a blow torch. (*Id.* ¶ 7.) As a result of the fire, the Residence was damaged and construction on the Residence was temporarily stopped. (*Id.* ¶ 8.)

At the time of the fire, American Family insured Complete Flashings through a Commercial General Liability Insurance Policy subject to a $1,000,000 policy limit and an umbrella policy subject to a $1,000,000 limit of liability (the "Complete Flashings Policy"). (*Id.* ¶ 9.) At the time of the fire, the Residence was insured through a homeowner's insurance policy issued by Allied Property & Casualty Insurance Company, a Nationwide Company ("Nationwide"). (*Id.* ¶ 10.)

After the fire, a number of people gathered at the Residence including: Stopka; his accountant, Jerry Wolowicki; his insurance broker, Luke Praxmarer; the general contractor, Todd Augustine; and a representative of Complete Flashings, Mark Rosal. (*Id.* ¶ 11.)

The next day, on September 11, 2008, the following parties met at the Residence: Stopka, Gerry Hayes of American Family, Praxmarer, Wolowicki, Chris Mason of Nationwide, and Augustine. (*Id.* ¶ 17.) Wolowicki, through an oral agreement with the

Stopkas, was authorized to enter into contracts relating to the fire loss on behalf of the Stopkas. (*Id.* ¶ 18.) Hayes explained his expertise in dealing with large fire losses at this meeting. (Pls.' 56.1(b)(3) ¶ 8.)

At this meeting, the Stopkas assert that Hayes promised Stopka that American Family would restore the Residence to the condition it was in "five minutes before the fire." (*Id.* ¶ 1.) Hayes further testified that there was no ambiguity in the representation he made to the Stopkas and that he "expected that the Stopkas and Wolowicki would rely on that representation." (*Id.* ¶ 16.) The Stopkas did rely on this representation made by Hayes, although the parties dispute the terms of that representation. (*Id.* ¶ 17.)

American Family admits that Hayes made this statement but assert that Hayes limited American Family's coverage to the $2 million coverage limit of the Complete Flashings Policy. Regarding this meeting, Hayes testified as follows at his deposition:

> Q: And isn't it a fact, sir, that shortly after the fire, you made representations to Mr. Wolowicki and Mr. Stopka that you would see to it that their home – that the Stopka home was restored to its pre-fire condition just as it had been five minutes prior to the fire?
>
> A: Yes.
>
> Q: You did make those representations?
>
> A: Yes.
>
> Q: You don't deny that?
>
> A: No.
>
> Q: You don't qualify that in any way, shape, or form, did you?
>
> A: Up to policy limits.

4

Q: Did you use those words?

A: Yeah.

Q: You did?

A: Yes, I did.

\*      \*      \*

Q: And it's your testimony that when you gave these assurances to Mr. Wolowicki and Mr. Stopka, it was always in conjunction with the limits on the policy?

A: Yes.

Q: No hesitation. You -- you state that affirmatively?

A: Mm-hmm yes.

(Dkt. No. 104, Ex. A, Hayes Dep. at 59:17-60:10, 107:11-18.)

By contrast, at his deposition, Wolowicki testified that Hayes did not inform him or the Plaintiffs of the $2 million policy limit.

Q: Reiterating that American Family had a two million dollar in liability coverage limits, correct?

A: Well, no, that's not the way I read it.

Q: This was discussed by Mr. Hayes prior to September 16, 2008, true?

A: Wait. It was disclosed?

Q: That American Family carried two million in liability coverage limits, true?

\*      \*      \*

A: No.

Q: You certainly were aware by September 16th that American Family carried two million in liability coverage limits, true?

5

A: No

*     *     *

Q: So you saw it on or about September 16, 2008, true?

A: Yes.

Q: And you knew that that statement or representation had been made prior to that time, true?

A: I knew that those words had been put on the piece of paper.

Q: No, no, no. You knew that the statement had been made by Mr. Hayes representing American Family that American Family by September 16, 2008 had disclosed that American Family carried two million in liability coverage limits, true?

A: No

*     *     *

Q: You would agree that there's documentation prior to December 2008 that you, in fact, knew of a two million dollar policy limit by American Family for Complete Flashings, true?

A: Prior to December of what?

Q: 2008.

A: If you consider a letter from Nationwide documentation, then I would say yes.

(Dkt. No. 104, Wolowicki Dep. at 240:4-11, 68:8-20, 69:7-70:9.)

The Stopkas do not have a written contract with American Family relating to the fire on September 10, 2008. (Def.'s 56.1(a)(3) ¶ 25.) Wolowicki admitted that he did not enter into any contract, written or oral, with American Family on behalf of the Stopkas relating to the fire of September 10, 2008. (*Id.* ¶ 26.) Nor is Wolowicki aware of the Stopkas' entering into any contract, written or oral, with American Family relating to the fire

of September 10, 2008. (*Id.* ¶ 27.) Furthermore, Hayes did not put anything in writing regarding whether he asserted the application of the Complete Flashings' Policy limit. (Pls.' 56.1(b)(3) ¶ 2.) Hayes acknowledged that it would be the best practice in the insurance industry, "when there's an issue with respect to application of policy limits," that a reservation of rights letter be issued by the insurer. (*Id.* ¶ 4.)

The parties dispute what Hayes said to Wolowicki regarding the elimination of ongoing smoke smell at the Residence. Wolowicki testified that Hayes represented to Wolowicki that American Family would eliminate the ongoing smoke smell at the Residence "100 percent to the Stopkas' satisfaction." (*Id.* ¶ 5.) In response, American Family asserts that Hayes testified that only one percent of the smoke odor could be eliminated. (Def.'s Resp. to Pl.'s 56.1(b)(3) ¶ 5.)

Subsequently, Hayes selected and hired contractors – Robinette Demolition, Miner & East, and Brouwer Brothers – to perform demolition work, to secure the site, and to perform remediation work. (Pls.' 56.1(b)(3) ¶ 9.) Hayes contacted Miner & East on September 11, 2008, to perform emergency repairs at the Residence. (*Id.* ¶ 10.) American Family retained a structural engineer to determine the structural integrity of the Residence. (Def.'s Resp. to Pl.'s 56.1(b)(3) ¶ 12.) The Stopkas' architect, Anderson & Fiene, was also involved in evaluating the structural integrity of the Residence. (*Id.*) The parties dispute whether Hayes instituted a plan regarding how the Residence would be restored. The Stopkas assert that Hayes instituted a plan for retaining contractors to perform demolition, stabilization, and fire-damage remediation. (*Id.* ¶ 18.) American Family asserts that the Stopkas' architect created the plan for

reconstruction, and Hayes simply managed the retention and relationship of the contractors. (Def.'s Resp. to Pl.'s 56.1(b)(3) ¶ 18.)

Regarding Hayes' involvement in the restoration of the Residence, he testified that Nationwide's adjuster hired a contractor to tarp up the roof. (Dkt. Nos. 104-5, 106-1.) Due to the damage of the roof, this contractor could not complete the work. After this, Hayes testified:

> A. I proposed that I would like to bring in Robinette, Miner & East to stabilize the building. Once we had it stabilized, I'd bring in a drying contractor to dry the building and prevent mold growth and that type of thing.
>
> Q. As part of your proposal to Mr. Stopka and Mr. Wolowicki, you explained to them that you had substantial expertise in dealing with fire losses of this magnitude.
>
> A. Yes.
>
> *       *       *
>
> Q. You would agree . . . that with regard to the work for which you engaged Miner & East, Brouwer Brothers, and Robinette Construction, you both hired and controlled those contractors?
>
> A. I hired them. They were under the control of the architect.
>
> *       *       *
>
> Q. When is it that you contend Mr. Stopka's architect became involved in that process?
>
> A. Within the first couple weeks. He was the one that determined damages or scope of – area of damages.

(Dkt. No. 104-5 at 79-80, Dkt. No. 106-1 at 108.)

American Family recognized that, after the loss caused by its insured, Complete Flashings, the Stopkas could have pursued claims directly against Complete

Flashings, including a lawsuit. (Pls.' 56.1(b)(3) ¶ 20.) Hayes acknowledged that the defense of a lawsuit against Complete Flashings would have required American Family to make payments outside the limits of the policy issued to Complete Flashings. (*Id.* ¶ 21.) Hayes is aware that there would be "no limit" to the amounts expended by American Family to resolve a litigated claim and that a claim with a $2 million policy could even cost American Family $10 million to adjust and defend. (*Id.* ¶ 22.)

The parties dispute whether Wolowicki told Hayes that the Stopkas would forgo suing Complete Flashings in consideration for American Family to pay beyond their policy limits in 2009. Wolowicki testified that he told Hayes in 2009 that the Stopkas would forgo suing Complete Flashings in consideration for American Family paying beyond its policy limits. (*Id.* ¶ 23.) American Family responds that Wolowicki denied this. Wolowicki testified as follows:

> Q. When did you tell Mr. Hayes that you would forgo suing Complete Flashings in consideration for American Family paying beyond its policy limits.
>
> A. It would have been in 2009.
>
> \*       \*       \*
>
> Q. So no such promise was ever given by the Stopkas, as far as you know, to forgo suing Complete Flashings in exchange for American Family paying beyond its two million dollar policy limit either oral or in writing, true?
>
> A. No. In my world of non-legalese, it's called a release. And was there the wording of lawsuits given up and this and that? It was a release; that's what was discussed between Gerry Hayes and myself.
>
> Q. And that was never finalized, right, the release was never finalized?
>
> A. That is correct.

9

(Dkt. No. 104-4, Wolowicki Dep. at 79-80.)  By contrast, Hayes testified:

> Q:  Did Mr. Stopka or Mr. Wolowicki ever say to you, offer you something in exchange for paying above the policy limits, say, you know what, if you pay above the policy limits we won't sue American Family or we won't sue Complete Flashings?
>
> A:  No.

(Dkt. No. 106, Hayes Dep. at 221.)  The parties agree that American Family and the Stopkas never entered an agreement whereby the Stopkas would forgo suing Complete Flashings if American Family would pay beyond the $2 million limit of the American Family policy.  (Def.'s 56.1(a)(3) ¶ 35.)  Neither the Stopkas nor Wolowicki ever offered to forgo pursuing insurance coverage, other than that provided by American Family, in exchange for American Family paying beyond its $2 million policy limit.  (*Id.* ¶ 33.)

On October 8, 2008, in an internal American Family email regarding a Committee Meeting Summary, an American Family employee wrote:

> This is a large loss where our insured was doing torch work on flashing and gutters at an $8 million home and it started on fire.  Damages could reach our limit of coverage[,] which is 1 million on the CPP and 1 million on the umbrella . . .
>
> Jerry Hayes explained the scope and cause of the fire.  Our insured said they were doing torch work on the roof when the roof started on fire.  They climbed down and got a fire extinguisher and went up to try and put it out, but it had spread too far.
>
> Based on clear liability, Jerry took control of the claim, as the property owner was not confident in the adjuster for [N]ationwide.  Jerry secured the sight and had a temporary roof put on.

10

> Jerry talked to the contractor and he said it should take
> 5 months to get the home back to pre-fire condition.
>
> Dwight Gribble asked if we have accepted liability for the
> claim. Jerry said not in writing, but we have taken control
> to mitigate damage. It was decided we should keep control
> and not accept liability in writing at this time. We will pay
> the loss, but need to firm up everything as we need a
> release from our insured. Jerry will let us know if it
> appears this will go over our limits. If it does, we will have
> to discuss the handling from that point out.

(Dkt. No. 106-3 at 1.)

In an e-mail dated October 25, 2008, Hayes wrote to James Saletri, an employee

of American Family, among others, that, "Based on preliminary estimates and 35 years of

experience we have applied to this occurrence indicates that we will most likely exhaust

$2,000,000 in coverage." (Dkt. No. 106-7.) As of November 3, 2008, Augustine, the

Stopkas' general contractor, had taken back control of the Residence and started

rebuilding the Residence. (*Id.* ¶ 41.)

American Family knew that the fire loss delayed completion of the Stopka

Residence and that the Stopkas were incurring construction loan interest of at least

$14,000 a month for each month of delay, which Hayes had agreed to pay. (*Id.* ¶ 28.)

Hayes told Wolowicki that American Family would pay the Stopkas' ongoing

construction loan interest. (*Id.* ¶ 29.) American Family concedes these points but

responds that these agreements to pay were only up to the Complete Flashing Policy

limit. Praxmarer, the insurance broker, had told Stopka that the Nationwide

homeowner's policy would not pay for the ongoing construction loan interest. (*Id.* ¶ 30.)

By Spring 2009, there was an unmistakable smoke odor in the house; this was

communicated to Hayes. (*Id.* ¶ 31.) According to Stopka, the smoke smell "has been

there since the fire." (*Id.*) Stopka deferred to his consultant, Forensic Analytical Consulting Services, regarding the cause of the smoke smell and what remains for remediation. (*Id.*) American Family issued payments in excess of $2 million with regard to the Stopkas' fire-loss claim. (*Id.* ¶ 34.) The Stopkas have incurred additional costs associated with the fire loss, which were not paid by American Family. (*Id.* ¶ 35.)

By late 2009, Hayes "stopped communicating" with Wolowicki. (*Id.* ¶ 37.) Hayes' employment was terminated by American Family for making payments over his authority without approval. (Pl.'s 56.1(b)(3) ¶¶ 25-26.)

## LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying the evidence it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). If the moving party meets this burden, the nonmoving party cannot rest on conclusory pleadings but "must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial." *Serfecz v. Jewel Food Stores*, 67 F.3d 591, 596 (7th Cir. 1995) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986)). A mere scintilla of evidence is not sufficient to oppose a motion for summary judgment; nor is a metaphysical doubt as to the material facts. *Robin v. Espo Eng. Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000) (internal citation omitted). Rather, the evidence must be such "that a reasonable jury could return a verdict

for the nonmoving party." *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (*Anderson*)).

## ANALYSIS

### Breach of Contract (Count I)

Under Illinois law, to establish "a cause of action for breach of contract, a plaintiff must allege the essential elements, which are: (1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of the contract by the defendant; and (4) resultant injury to the plaintiff." *Gonzalzles v. Am. Exp. Credit Corp.*, 733 N.E.2d 345, 351 (Ill. App. Ct. 2000). A contract is valid and enforceable if: (1) there is a valid offer and acceptance; (2) the terms of the contract are definite and certain; and (3) there is consideration. *Zirp-Burnham, LLC v. E. Terrell Assocs., Inc.*, 826 N.E.2d 430, 439 (Ill. App. Ct. 2005).

Because the parties did not enter into a written contract, the Stopkas must prove the existence of an oral contract with American Family. "For an oral contract to exist, the parties must have had a meeting of the minds with respect to the terms of the agreement and must have intended to be bound to the oral agreement." *Podolsky v. Alma Energy Corp.*, 143 F.3d 364, 369 (7th Cir. 1998). "Oral agreements are binding so long as there is an offer, an acceptance, and a meeting of the minds regarding the terms of the agreement." *Leavell v. Dep't of Natural Res.*, 923 N.E.2d 829, 841 (Ill. App. Ct. 2010).

American Family argues that Plaintiffs' breach-of-contract claim fails because Plaintiffs have failed to establish a meeting of the minds with respect to the terms of the alleged contract and bargained-for consideration.

13

As a preliminary issue, in their response, Plaintiffs cite this Court's ruling, denying American Family's Motion to Dismiss (Dkt. No. 71), as dispositive of whether there was a meeting of the minds and sufficient consideration. For example, Plaintiffs argue:

> [T]his Court has already found that when denying American Family's motion to dismiss, this agreement by American Family to restore the home to its pre-fire condition 'is sufficient to demonstrate that the parties had an understanding of the scope of American Family's obligations.'
>
> This Court has . . . similarly found [that] the Stopkas' election to forego the pursuit of a lawsuit against Complete Flashings . . . is ample consideration to support the contract.

(Resp. at 6, 9.) Plaintiffs misunderstand the standard of review with respect to a motion to dismiss. "A decision that the plaintiff alleged facts sufficient to survive a motion to dismiss is not a ruling on the merits of her allegations. The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits." *Weiler v. Household Fin. Corp.*, 101 F.3d 519, 524 (7th Cir. 1996) (internal quotation and citation omitted). Furthermore, as this Court stated in its ruling, when a court rules on a motion to dismiss, it must accept the facts alleged in a plaintiff's complaint as true for the purposes of ruling on the motion to dismiss. *See Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th Cir. 2010).

American Family argues that Plaintiffs and American Family never came to a meeting of the minds as to whether American Family would waive its $2 million policy limit. Due to conflicting testimony, however, there is a material issue of fact as to

whether there was a meeting of the minds. American Family argues that Stopka testified as follows:

> Q: Mr. Hayes never stated that American Family would pay beyond their limits of $2 million, correct?
>
> A: He never mentioned anything ever about the $2 million, so the answer is yes. He never said it because it never came up ever.

American Family further argues that Wolowicki testified as follows:

> Q: Did you enter into any contract with American Family on behalf of the Stopkas related to the fire of September 10, 2008?
>
> A: No.

Plaintiffs argue that Stopka was communicating with Hayes through Wolowicki; therefore, Stopka's testimony is likely less accurate than Stopka's representative, Wolowicki. Furthermore, to the extent that Wolowicki (who is not an attorney) testified that he did not enter into a "contract," his testimony is not dispositive as to whether the parties had an oral contract with Hayes that American Family would restore the Residence to its "pre-fire condition," irrespective of the $2 million policy limits.

Importantly, Wolowicki's testimony must be considered in context with the rest of his testimony and in a light favorable to the Plaintiffs. *See Anderson*, 477 U.S. at 255 (holding that in ruling on a motion for summary judgment, the court must consider the record as a whole, in the light most favorable to the non-moving party, and draw all reasonable inferences in favor of the non-moving party.) Wolowicki also testified:

> Q. So, at some point after September 11, 2008, Mr. Hayes specifically said that American Family had two million dollar limits and would pay beyond that, is that true?
>
> A. Yes.

> \*    \*    \*
>
> Q. Once you learned of the two million dollar limit from American Family, did you ever say to Mr. Hayes what if we reach the two million dollar limit?
>
> A. We had that conversation many times.
>
> Q. *And you've already told me Mr. Hayes never made a promise to go beyond the two million, true?*
>
> A. *No. I said he did.*
>
> Q. Did he ever say don't worry about it, American Family will pay beyond its two million dollar limits?
>
> A. Yes.

(Pls.' Resp. to Def.'s 56.1(a)(3) ¶ 28 (emphasis added).)

By contrast, Hayes testified:

> Q. [S]hortly after the fire you made representations to Mr. Wolowicki and Mr. Stopka that you would see to it that their home . . . was restored to its pre-fire condition just as it had been five minutes prior to the fire?
>
> A. Yes.
>
> \*    \*    \*
>
> Q. You don't qualify that in any way, shape, or form, did you?
>
> A. Up to the policy limits.
>
> Q. Did you ever use those words?
>
> A. Yeah.

(Def's. Resp. at Pl's 56.1(b)(3) ¶ 1.)

Here, there is a factual issue as to whether American Family waived the $2 million policy limit that precludes resolution on summary judgment. Furthermore,

Wolowicki's and Hayes' testimony should be considered in concert with the email

written by Saletri to other American Family employees, in which he wrote:

> It was decided that we should keep control and not accept
> liability in writing at this time. We will pay the loss . . . .
> Jerry will let us know if it appears this will go over our
> limits. If it does we will have to discuss the handling from
> that point on.

(Dkt. No. 106-3.)

It is the province of the jury to weigh the credibility of the testimony of

Wolowicki against that of Hayes and to consider inferences, if any, to draw from Saletri's

e-mail. Therefore, there is an issue of material fact that precludes the resolution on

summary judgment of whether there was a meeting of the minds between Plaintiffs and

American Family.

Next, American Family argues that Plaintiffs have failed to establish bargained-

for consideration. Plaintiffs allege that as consideration for American Family's offer to

restore the Residence to its pre-fire condition, Plaintiffs did not immediately pursue a

lawsuit against Complete Flashings or American Family. (Am. Compl. ¶ 48.) Under

Illinois law, "[a]ny act or promise that benefits one party or disadvantages the other is

sufficient consideration to support the formation of a contract." *Kalis v. Colgate-*

*Palmolive Co.,* 787 N.E.2d 182, 183 (Ill. App. Ct. 2003) (*Kalis*). Illinois courts hold that,

"a promise to forgo pursuit of a legal claim will be determined to be adequate

consideration to support formation of a contract even if the claim is invalid, provided that

it is asserted in good faith." *Cincinnati Ins. Co. v. Am. Hardware Mfrs. Ass'n*, 898

N.E.2d 216, 230, 325 (Ill. App. Ct. 2008); *cf. Kalis*, 787 N.E.2d at 183-84 (holding that

promise to forego right to seek reconsideration of summary judgment and right to appeal

provided sufficient consideration for settlement agreement). Here, American Family benefited from Plaintiffs' election not to pursue legal action against Complete Flashings. Had the Plaintiffs sued Complete Flashings, American Family would have been required to incur the costs of defending Complete Flashings, which is a cost in addition to the American Family's liability limits of the Complete Flashings Policy.

American Family argues that the consideration was never discussed by the parties and was not bargained for by American Family. American Family argues that Wolowicki testified that there was never an "actual agreement," oral or in writing, between Wolowicki (representing the Stopkas) and Hayes (representing American Family), that in consideration for not suing Complete Flashings, American Family would pay beyond its policy limits. However, Wolowicki's testimony, when read in its entirety, does not support American Family's argument. Wolowicki testified that he told Hayes in 2009 that he would forgo suing Complete Flashings in consideration for American Family paying beyond its policy limits. (Pls.' Resp. to Def.'s 56.1(a)(3) ¶ 32.) Wolowicki further testified that he discussed a release with Hayes but it was never finalized. (*Id.*) Based on this testimony, a reasonable juror could conclude that the Stopkas promised to forgo legal remedies against Complete Flashings and that this was adequate consideration for an enforceable contract.

Accordingly, American Family's Motion for Summary Judgment is denied as to Count I.

### *Promissory Estoppel (Count IV)*

To establish a claim based upon promissory estoppel, a plaintiff must allege and prove that: "(1) defendants made an unambiguous promise to plaintiff, (2) plaintiff relied

on such promise, (3) plaintiff's reliance was expected and foreseeable by defendants, and (4) plaintiff relied on the promise to its detriment." *Quake Constr., Inc. v. Am. Airlines, Inc.*, 565 N.E.2d 990, 1004 (Ill. 1990). American Family argues that Plaintiffs cannot establish an unambiguous promise, reasonable reliance, or a detriment to the Plaintiffs.

There is a material issue of fact as to whether the promise made by Hayes to the Stopkas was unambiguous. American Family argues that Hayes' promises to "restore the Residence to its pre-fire condition" and return the Residence to the condition it was in "five minutes before the fire started" "are not sufficiently definite to support an action for promissory estoppel." (Br. at 8.) However, as Plaintiffs argue, Hayes testified that his representation to Wolowicki and Stopka was unambiguous. Hayes testified as follows:

> Q. When you made the representation to Mr. Wolowicki and Mr. Stopka that you intended based on your experience to restore the Stopka residence to the state it was in five minutes prior to the fire, you knew full well what you were representing to them, didn't you?
>
> A. Yes.
>
> Q. There [was] no ambiguity about that representation in your mind, was there?
>
> A. No.

(Pl.'s 56.1(b)(3) ¶¶ 14-15.)

As stated above, there is a disputed issue of material fact as to whether this promise was limited to American Family's $2 million policy limit. But based on the above testimony, a reasonable juror could conclude that there was an unambiguous promise to restore the Residence to its pre-fire condition – either up to or above American Family's $2 million policy limit.

Next, American Family argues that the Stopkas cannot establish that their reliance on Hayes' promise was reasonable because Hayes' promise to restore the Residence to its pre-fire condition is "tantamount to 'puffing.'" (Br. at 9.) American Family argues that the phrase "'five minuets before the fire' is the type of superlative on which the Stopkas could not have *reasonably* relied." (*Id.* (emphasis in original).) But the element of reasonable reliance is generally a question for the trier of fact. *Accord First Nat'l Bank of Cicero v. Sylvester*, 554 N.E.2d 1063, 1070 (Ill. App. Ct. 1990) (noting that each element of a promissory estoppel claim "presents a question for the trier of fact").

American Family relies on *Garwood v. Packaging, Inc. v. Allen & Co., Inc.*, 378 F.3d 698 (7th Cir. 2004) (*Garwood*), in which the Seventh Circuit affirmed summary judgment for a defendant on a promissory estoppel claim. Plaintiff argued that it relied on defendant's representation that a deal would close "come hell or high water." But in *Garwood*, the closing of the deal depended on demands made by non-parties to the deal. *Id.* at 701, 704. The defendant could not control either of the non-parties' demands and so could not ensure that the deal would close. Because defendant lacked this control, the plaintiff's reliance on the defendant's representation was unreasonable as a matter of law. *Id.* at 704. But the Seventh Circuit noted: "Ordinarily the question whether a plaintiff reasonably understood a statement to be a promise is a question of fact and so cannot be resolved in summary judgment proceedings." *Id.* at 705.

By contrast here, Hayes, according to American Family, was an "insurance field adjuster." (Br. at 9.) A reasonable juror could conclude that Hayes was authorized on behalf of American Family to represent to the Stopkas that the Residence would be restored. Furthermore, in considering the Stopkas' reasonable reliance, Hayes'

20

representation should be considered with his representation regarding his experience in handling large fire-loss claims.

American Family's reliance on *All-Tech Telecom, Inc. v. Amway Corp.*, 174 F.3d 862, 869 (7th Cir. 1998) (*All-Tech*) is misplaced. There, the Court of Appeals affirmed summary judgment in favor of the defendant on plaintiff's promissory estoppel claim. But the Seventh Circuit upheld summary judgment because the promissory estoppel claim was duplicative of a warranty claim that went to the jury. *Id.* at 869. American Family quotes passages from *All-Tech* that relate to the plaintiff's claims of intentional and negligent misrepresentation; therefore, American Family's attempt to impose this language on Plaintiffs' promissory estoppel claim is unpersuasive.

Last, American Family argues that Plaintiffs' delay in filing this lawsuit is not sufficient to establish detrimental reliance. Rather, American Family argues that under Illinois law, a plaintiff must establish "an expenditure of funds or the incurring of legal liability." (Br. at 10.) Plaintiffs respond that they relied on Hayes' promise and, to their detriment, have incurred financial costs as a result. It is undisputed that the Stopkas have incurred additional costs associated with the fire loss, which were not paid by American Family. (Pl.'s 56.1(a)(3) ¶ 35.) It is furthermore undisputed that Plaintiffs incurred construction loan interest of at least $14,000 a month for each month of delay, for which Hayes agreed to pay. (*Id.* ¶ 28.) Plaintiffs argue that they have had to absorb these costs in light of American Family's "failure to see through on its promise." (Resp. at 12.)

Accordingly, there are questions of fact with respect to Plaintiffs' promissory estoppel claim that are not properly resolved on summary judgment.

*Negligence (Count II)*

American Family argues that Plaintiffs have failed to establish their negligence claim because they cannot show American family breached its duty. "To establish a valid claim for negligence in the state of Illinois, a party must demonstrate that the defendant owed him a duty, that the defendant breached this duty, and that he suffered an injury that was proximately caused by the defendant's breach." *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 702 (7th Cir. 2009) (citing *Cunis v. Brennan*, 308 N.E.2d 617, 618 (Ill. 1974)).

Plaintiffs rely on the voluntary-undertaking doctrine to establish American Family's duty. When a party voluntarily undertakes to act, it becomes subject to liability in negligence if it fails to exercise due care in the performance of that undertaking. *Wakulich v. Mraz*, 785 N.E.2d 843, 854 (Ill. 2003). "Any duty imposed on a defendant under this theory is limited to the extent of the undertaking." *Id.*

American Family argues that its duty is "strictly limited to the scope of the undertaking – to retain contractors and pay contractors for the efforts spent remediating the fire damage" and that the Plaintiffs "fail to offer any evidence that American Family breached either of these alleged obligations." (Br. at 12.)

There are issues of fact with respect to the scope of American Family's duty and whether American Family breached its duty. "Like other issues of duty, whether a defendant has voluntarily undertaken a duty to a plaintiff is a question of law for the court." *Lange v. Fisher Real Estate Dev. Corp.*, 832 N.E.2d 274, 282 (Ill. App. Ct. 2005). "However, though a question of law, if there is a dispute of material fact affecting the existence of an undertaking of a duty, summary judgment is improper." *Id.* (citing

22

*Prot. Ins. Co. v. Coleman*, 494 N.E.2d 1241, 1244 (1986)). American Family does not dispute that it had a duty to Plaintiffs pursuant to the voluntary-undertaking doctrine. In this case, there are questions of fact regarding whether American Family directed and controlled all the contractors involved in the post-fire remediation. (*See* Pls.' 56.1(b)(3) ¶ 19.)

There are also questions of fact as to whether American Family breached its duty. American Family argues that its duty is strictly limited to the duty to retain contractors and pay contractors for the efforts spent remediating the fire damage. But under the voluntary-undertaking doctrine, American Family is subject to liability if it fails to exercise due care in the *performance of the undertaking*. There are questions of fact with respect to whether the contractors hired by American Family properly performed the remediation. (*See id.* ¶¶ 25, 27, 33.)

Accordingly, American Family's Motion for Summary Judgment is denied with respect to Count II.

### Declaratory Judgment (Count III)

Plaintiffs seek a declaratory judgment pursuant to 28 U.S.C. §§ 2201(a) that:

> American Family's liability is not restricted by the $2,000,000 combined per-occurrence limits of the American Family policy or policies issued to Complete Flashings, Inc. and that American Family has liability to Plaintiffs for its own independent acts of negligence in connection with its direction and control of the remediation efforts following the fire at the Residence.

(Sec. Am. Compl. ¶ 65.)

In deciding whether to hear a declaratory judgment action, this court's discretion is broad and should be based on "practicality and wise judicial administration." *Wilton v.*

*Seven Falls Co.*, 515 U.S. 277, 288 (1995). "It is well settled that the federal courts have discretion to decline to hear a declaratory judgment action, even though it is within their jurisdiction." *Tempco Elec. Heater Corp. v. Omega Eng'r, Inc.,* 819 F.2d 746, 747 (7th Cir. 1987) (citations omitted). Here, the declaratory judgment count fails to present a claim that will not be decided by the other pending counts. Accordingly, the Motion for Summary Judgment is granted with respect to Count III. *See Amari v. Radio Spirits*, 219 F. Supp. 2d at 942, 944 (N.D. Ill. 2002) ("All of the issues in the declaratory judgment claim will be resolved by the substantive action, so the declaratory judgment serves no useful purpose.")

## CONCLUSION

For the reasons set forth above, American Family's Motion for Summary Judgment [93, 94] is denied as to Counts I, II, and IV and is granted with prejudice as to Count III.

Date: June 7, 2012

JOHN W. DARRAH
United States District Court Judge